John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
KRUSE TECHNOLOGY PARTNERSHIP

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC; DAIMLER TRUCKS NORTH AMERICA LLC; MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and DAIMLER VANS MANUFACTURING LLC,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**KRUSE TECHNOLOGY PARTNERSHIP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>Date: June 20, 2011<br>Time: 1:30 p.m.<br>Location: Ctrm. 10C<br><br>Hon. James V. Selna |

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ................................................................................................ 1

II. Factual Background ........................................................................................... 3

    A. Kruse's November 15, 2010 Infringement Contentions ................... 3

    B. Defendants' Requests For Additional Information in the Contentions ........................................................................................ 5

    C. Kruse's Amendments To Add New Accused Engines .................... 6

    D. Defendants' Grounds for Opposing this Motion ............................. 8

III. ARGUMENT .................................................................................................... 10

    A. Legal Standard ............................................................................... 10

    B. Kruse Has Good Cause To Amend Its Infringement Contentions ..................................................................................... 11

        1. The Amended Contentions Reflect Kruse's Diligence ................................................................................ 11

            a. Kruse Diligently Responded to Defendants' Requests ................................................. 11

            b. Kruse Diligently Identified New Accused Engines ................................................................... 11

        2. The Amended Contentions Do Not Prejudice Defendants ................................................................................ 12

            a. Defendants Have Benefitted From the Amendments ................................................................ 12

            b. Defendants Should Not be Surprised By the New Accused Engines, and They Have Ample Time to Address Them ................................. 12

        3. The Sufficiency Objections of Detroit Diesel, DTNA and Western Star are Improper ............................... 15

        4. The Amended Contentions Reflect A Proper Motive ......................................................................................... 16

IV. CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page No(s).**

*CBS Interactive, Inc. v. Etilize, Inc.*,
  257 F.R.D. 195 (N.D. Cal. 2009) ................................................................10

*Comcast Cable Commc'ns Corp. v. Finisar Corp.*,
  No. C-06-04206, 2007 WL 716131 (N.D. Cal. Mar. 2, 2007) ......................11

*Computer Acceleration Corp. v. Microsoft Corp.*,
  503 F. Supp. 2d 819 (E.D. Tex. 2007) ..........................................................16

*Golden Hour Data Sys. v. Health Servs. Integration*,
  No. C-06-7477, 2008 U.S. Dist. LEXIS 75495
  (N.D. Cal. July 1, 2008) ........................................................................ 10, 12

*LG Elecs., Inc. v. Q-Lity Computer, Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) .................................................................10

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
  No. 2:06-cv-272, 2008 U.S. Dist. LEXIS 35577
  (E.D. Tex. Apr. 30, 2008).............................................................................11

*Mediostream, Inc. v. Microsoft Corp., et al.*,
  C 2:08-CV-369-CE, 2010 U.S. Dist. LEXIS 110420 (E.D. Tex.
  Oct. 18, 2010) ...............................................................................................12

*Nidec Corp., v. LG Innotek Co., Ltd*,
  No. 6:07-CV-108-LED-JDL, 2009 U.S. Dist. LEXIS 106667
  (E.D. Tex. Sept. 2, 2009)....................................................................... 11, 16

*O2 Micro Int'l Ltd. v. Monolithic Power Sys.*,
  467 F.3d 1355 (Fed. Cir. 2006)............................................................. 10, 16

*Quantum Corp. v. Riverbed Tech., Inc.*,
  Case No. C 07-04161 WHA, 2008 WL 2783227
  (N.D. Cal. July 15, 2008) .............................................................................13

*Sanofi-Aventis Deutschland Gmbh, v. Genentech, Inc.*,
  Case No. C 08-4909 SI, 2010 WL 1136479
  (N.D. Cal. Mar. 20, 2010) ............................................................................11

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Sunpower Corp. Sys. v. Sunlink Corp.*,
   No. C-08-2807, 2009 U.S. Dist. LEXIS 85425 (N.D. Cal. June 12, 2009) ............................................................................................................... 11

*Zoltar Satellite Alarm Sys., Inc. v. Motorola, Inc.*,
   No. C-06-00044, 2008 WL 913326 (N.D. Cal. Apr. 2, 2008) ........................ 10

**OTHER AUTHORITIES**

Local Rule 3-1 ........................................................................................... passim

Local Rule 3-6 ........................................................................................ 2, 10, 11

Kruse Technology Partnership ("Kruse") submits this memorandum in support of its motion for leave to amend its N.D. Cal. Patent Local Rule 3-1 Disclosures of Asserted Claims and Infringement Contentions for seven Defendants. Kruse has repeatedly revised its contentions at the request of Defendants but has been unable to reach a stipulation for leave to amend. This motion is supported by Declarations of David G. Jankowski and Marko R. Zoretic filed herewith. A proposed order is being lodged for the Court's consideration.

## I. INTRODUCTION

On November 15, 2010, Kruse timely served Defendants with infringement contentions fully compliant with N.D. Cal. Patent Local Rule 3-1. Shortly thereafter, several Defendants objected to the contentions as deficient, requesting additional information. Defendants also refused, and continue to refuse, to allow discovery on engines not identified as Accused Engines in the infringement contentions, interpreting the Patent Local Rules to preclude patentees from using discovery to learn of, or develop infringement evidence for, additional products. This is unfair and beyond the purpose of the disclosure requirements of the Patent Local Rules, which are intended to avoid surprise by preventing parties from belatedly adopting entirely new theories of infringement or invalidity.

Kruse informed Defendants that its contentions were compliant. But, to address Defendants' concerns and avoid burdening the Court, Kruse voluntarily prepared amended contentions with additional information. Defendants then objected to the amended contentions. This pattern of Kruse amending and Defendants objecting extended from December 2010 through May 2011. Collectively, Defendants have received forty-eight amended sets of contentions. Kruse's months and months of effort have been partially successful, as four of the seven Defendants have dropped their objections to the sufficiency of the amended contentions. But Defendants Detroit Diesel, DTNA, and Western Star remain resolutely opposed.

To address Defendants' refusal to allow discovery on engines not identified as Accused Engines, Kruse promptly acquired vehicles equipped with new engines, tested the engines, determined that they infringed, and provided Defendants with amended contentions including the newly tested engines. Defendants Daimler AG, Mercedes-Benz USA, Volkswagen AG and Volkswagen Group of America object to the addition of these engines because the new engines were publicly available when Kruse filed its Complaint and, in their view, Kruse could and should have tested the engines in time to include them in its initial contentions on November 15, 2010. These Defendants believe that the initial infringement contentions set the scope of the accused products in stone, with no opportunity for discovery of or infringement allegations against new products.

Good cause exists for the Court to grant Kruse leave to amend its contentions. The amendments do not reflect any change in Kruse's theory of infringement; they address Defendants' requests for information and Kruse's testing of new engines in response to Defendants' refusal to provide discovery. Kruse's amended contentions do not prejudice Defendants in any way; in fact they have already benefited from receiving the amendments.

Kruse respectfully requests that the Court deem effective under N.D. Cal. Patent Local Rules 3-1 and 3-6 Kruse's most recent set of amended contentions provided to each of these seven Defendants. This includes the following Amended Contentions:

- [Proposed] Seventh Amended Contentions to Daimler AG (dated May 12, 2011) (attached as Jankowski, Ex. 1);
- [Proposed] Seventh Amended Contentions to Mercedes-Benz USA (May 12, 2011) (Jankowski, Ex. 2);
- [Proposed] Sixth Amended Contentions to Daimler Trucks North America (May 12, 2011) (Jankowski Ex. 3);

/ / /

- [Proposed] Fifth Amended Contentions to Detroit Diesel (May 12, 2011) (Jankowski, Ex. 4);
- [Proposed] Fifth Amended Contentions to Western Star Truck Sales (May 12, 2011) (Jankowski, Ex. 5);
- [Proposed] Ninth Amended Contentions to Volkswagen Group of America (May 17, 2011) (Jankowski, Ex. 6); and
- [Proposed] Ninth Amended Contentions to Volkswagen AG (May 17, 2011) (Jankowski, Ex. 7).

## II. FACTUAL BACKGROUND

Kruse contends that the Defendants directly and indirectly infringe U.S. Patent Nos. 5,265,562 ("the '562 patent"), 6,058,904 ("the '904 patent") and 6,405,704 ("the '704 patent").[1] The asserted claims are directed to methods of operating internal combustion engines that are not readily discernable from a simple inspection of the engines or from a review of user manuals or other public literature. Rather, infringement is assessed from information on the detailed manner in which the engine introduces and combusts fuel within the engine's combustion chamber during an engine cycle. Such information may be obtained by undertaking sophisticated engine dynamometer testing of the engine, or from reviewing confidential technical documents and files maintained by the engine manufacturer, designer, or related parties.

A. **Kruse's November 15, 2010 Infringement Contentions**

Pursuant to the case schedule proposed by the parties and subsequently entered by the Court (Docket No. 129), on November 15, 2011 Kruse served each of the Defendants with its N.D. Cal. Patent Local Rule Disclosures of Asserted Claims and Infringement Contentions ("initial contentions"). For purposes of this motion, Kruse's initial contentions comprise the following documents:

---

[1] The '562 patent, '904 patent, and '704 patent are attached as Exhibits 41, 42 and 43 to the Zoretic Decl., respectively.

-3-

*1*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*2*         to Daimler AG (attached as Jankowski, Ex. 8);
*3*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*4*         to Mercedes-Benz USA (Jankowski, Ex. 9);
*5*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*6*         to Daimler Trucks North America (Jankowski, Ex. 10);
*7*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*8*         to Detroit Diesel (Jankowski, Ex. 11);
*9*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*10*         to Western Star Truck Sales (Jankowski, Ex. 12);
*11*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*12*         to Volkswagen Group of America (Jankowski, Ex. 13); and
*13*     • Kruse's Disclosure of Asserted Claims and Infringement Contentions
*14*         to Volkswagen AG (Jankowski, Ex. 14).

Kruse's November 15, 2010 disclosures were compliant with the N.D. Cal. Patent Local Rules and included, among other things, an identification of the asserted claims and Accused Engines; test results from dynamometer testing performed on the Accused Engines; an explanation of Kruse's theories of direct and indirect infringement; and detailed infringement claim charts for the Accused Engines for the '562, '904, and '704 patents.

Kruse's initial contentions were based on testing of four engines: an "OM642" engine made by Daimler, a "DD13" engine made by Detroit Diesel, and 2.0-Liter and 3.0-Liter "TDI" engines made by VW. Some Defendants make engines, others assemble them into vehicles, and still others sell vehicles equipped with the engines. The chart on the next page relates the Accused Engines to the November 2010 infringement contentions to which they applied.

/ / /

/ / /

-4-

| Kruse's November 15, 2010 Infringement Contentions | Accused Engines |
|---|---|
| Daimler AG | OM642, DD13 |
| Mercedes-Benz USA | OM642 |
| Daimler Trucks North America | OM642, DD13 |
| Detroit Diesel | DD13 |
| Western Star | DD13 |
| Volkswagen Group of America | 2.0L TDI, 3.0L TDI |
| Volkswagen AG | 2.0L TDI, 3.0L TDI |

(Jankowski, Ex. 8 at 1–2; Ex. 9 at 1–2; Ex. 10 at 1–2; Ex. 11 at 1–2; Ex. 12 at 1–2; Ex. 13 at 1–2; Ex. 14 at 1–2.)

**B.     Defendants' Requests For Additional Information in the Contentions**

After receiving Kruse's initial contentions, Defendants began requesting that Kruse provide more information. (Zoretic ¶¶ 5–7, 12; Exs. 15–17.) Over the past six months, Kruse has responded to and addressed these requests and has served Defendants with a series of amended contentions. (Zoretic ¶¶ 8–9, 11–19, 22–31, 33–53; Exs. 18, 19–23, 26–40.)

Additional information requested by Defendants includes: (1) charts plotting temperature versus crank angle; (2) details regarding the testing performed on the Accused Engines; (3) additional details on the theories of direct and indirect infringement; (4) additional details on infringement under the doctrine of equivalents; (5) additional details on how Kruse was reading claim elements onto the test results for the Accused Engines; (6) converting volume values during the engine cycle into crank angle values; (7) additional engine operating conditions beyond the exemplary conditions provided in Kruse's initial contentions; (8) examples of the Accused Engines operating under conditions that Kruse does not contend to be infringing; and (9) examples of prior art engine

-5-

operation that Kruse does not contend to be infringing. Defendants also requested that Kruse produce the test data associated with the dynamometer testing shown in its infringement contentions.

The amended contentions provided to the Defendants between December and May included the above information and more. But the path to getting there has not been easy or straight. By way of example, Kruse's initial infringement contentions did not include temperature vs. crank angle plots, though it did include temperature versus volume plots, the same format presented in the asserted patents (*see*, *e.g*., '562 patent (Zoretic Ex. 41) at Figs. 4(B) and 8(B). Defendants insisted that Kruse amend its contentions to include temperature versus crank angle plots, even after Kruse provided them with data allowing them to create the plots for themselves. To move the case forward and avoid burdening the Court, Kruse amended its contentions to present temperature versus crank angle plots for the Accused Engines. (Zoretic ¶¶ 31, 35.)

Upon receiving the amended contentions, Defendants then objected to the manner in which Kruse presented the new plots, requesting that Kruse present the plots on a different vertical scale. Kruse did so. (Zoretic ¶ 42.) Defendants then objected to the location of the plots, requesting that Kruse present them on a different page, next to other plots. Kruse did so. (Zoretic ¶ 50.)

Defendants' insistence on more has resulted in Kruse providing the seven Defendants opposing this motion with, collectively, forty-eight [proposed] amended infringement contentions between December and May 2011.

### C.     Kruse's Amendments To Add New Accused Engines

Kruse served Defendants with its first round of discovery in mid-November 2010, around the same time it served its infringement contentions. (Zoretic ¶¶ 1–4.) Kruse's discovery sought information on certain engines not identified as Accused Engines in Kruse's initial infringement contentions, including Daimler's "OM647" engine, Detroit Diesel's "Series 60" engine, and Volkswagen 1.9-Liter

"TDI" engine. In mid-December 2010, Defendants served Kruse with objections including a refusal to provide responses for engines not identified as Accused Engines in Kruse's Rule 3-1 disclosures. (*Id.*; Zoretic Ex. 15; ¶ 5.)

On January 19, 2011, Kruse met-and-conferred with Defendants on this issue, informing them that the Rule 3-1 disclosures were not intended to define the scope of discovery. (Zoretic ¶¶ 10, 20–22, 27, 28; Exs.19, 24, 25, 30, and 31.) Kruse also sought to compromise with Defendants, narrowing the universe of engines upon which it sought discovery. (Zoretic ¶¶ 20–22; Exs. 24, 25, 31.) Defendants maintained their objections, and, faced with Defendants' resolve, Kruse promptly set out to acquire and test additional engines. (Zoretic ¶ 22.)

Acquiring infringement evidence for a new engine requires significant time and effort, including finding and acquiring a vehicle equipped with the appropriate engine (which can take several weeks or more), preparing the engine for testing (which can takes several days or weeks), performing sophisticated dynamometer testing on the engine (which takes a day or more at a dynamometer testing facility), and analyzing the dynamometer results. (Zoretic ¶ 32.) The cost is also substantial, from about $25,000 to $100,000 or more per vehicle tested. During the first few months of 2011 Kruse spent substantial resources on these tasks, culminating in the preparation of particularized infringement contentions for the Defendants identifying four new Accused Engines.

On February 11, 2011, Kruse provided amended contentions to Volkswagen AG and VWGoA adding a newly tested "1.9-L TDI" engine. Three days later, on February 14, 2011, Kruse provided amended contentions to Detroit Diesel, DTNA, and Western Star adding the newly tested "Series 60" engine. On March 18, 2011, Kruse provided amended contentions to Daimler AG, MBUSA, and DTNA adding the newly tested "OM647" engine. The following week, on March 24, 2011, Kruse provided amended contentions to Volkswagen AG and VWGoA adding a second 1.9-L TDI engine. (Zoretic ¶¶ 31, 35, 42.) During this

-7-

same timeframe, Kruse also dropped one Accused Engine from its infringement contentions, Detroit Diesel's DD13 engine, based on learning additional technical information on the operation of that engine. (Zoretic ¶ 30.)

Through this concerted effort, by March 2011 Kruse doubled the number of Accused Engines identified in Defendants' infringement contentions from four to eight. The chart below relates the Accused Engines to Kruse's [proposed] amended infringement contentions as of March 24, 2011. (Zoretic ¶ 42.)

| Kruse's [Proposed] Infringement Contentions as of March 24, 2011 | Accused Engines (Added engines highlighted) |
|---|---|
| Daimler AG | OM642, ***OM647*** |
| Mercedes-Benz USA | OM642, ***OM647*** |
| Daimler Trucks North America | OM642, ***OM647***, ***Series 60*** |
| Detroit Diesel | ***Series 60*** |
| Western Star | ***Series 60*** |
| Volkswagen Group of America | ***1.9L TDI***, 2.0L TDI, 3.0L TDI |
| Volkswagen AG | ***1.9L TDI***, 2.0L TDI, 3.0L TDI |

In the two months since Kruse provided infringement contentions based on the engines identified above, no new engines have been added to the contentions. Kruse has amended its contentions for DTNA to remove the OM642 and OM647 engines based on documents reviewed and representations of DTNA's counsel that DTNA has never made, purchased, sold, or operated vehicles equipped those engines. (Zoretic ¶ 47.) With this one exception, the chart above accurately reflects the Accused Engines for each Defendant in Kruse's latest set of [proposed] amended infringement contentions.

D.     **Defendants' Grounds for Opposing this Motion**

Three Defendants still object to the sufficiency of Kruse's amended contentions, while the other four have dropped their objections on that ground. Four Defendants object to the addition of new Accused Engines as untimely,

-8-

while three Defendants do not. The Defendants objecting to new engines on timeliness grounds contend that all of the newly added engines have been publicly available, and that Kruse could and should have tested them all prior to November 15, 2010, and included them in its initial infringement contentions. The Defendants' positions are set forth below. (Zoretic ¶ 53.)

| Defendant | Objecting to the sufficiency of Kruse's amended contentions | Objecting to the timeliness of adding a new Accused Engine |
|---|---|---|
| Daimler AG | No | Yes (OM647) |
| Mercedes-Benz USA | No | Yes (OM647) |
| Daimler Trucks North America | Yes | No |
| Detroit Diesel | Yes | No |
| Western Star | Yes | No |
| Volkswagen Group of America | No | Yes (1.9L TDI) |
| Volkswagen AG | No | Yes (1.9L TDI) |

Detroit Diesel, Western Star, and DTNA object to Kruse's amended contentions on the grounds that Kruse should produce all test data acquired for the accused Series 60 engine, regardless of whether the data relates to Kruse's infringement contentions. This objection was raised for the first time on May 18, 2011. (*Id.*)

These defendants also object to Kruse's amended contentions on the grounds that Kruse should drop its direct infringement allegations because, according to these Defendants (1) Kruse's contentions only apply to the Series 60 engine operating in "regeneration mode[2]," and (2) the Defendants have never operated the Series 60 engine in that mode. (*Id.*)

---

[2] Regeneration mode is a special engine operating mode implemented in diesel engines to facilitate the cleaning of a "diesel particulate filter" which removes soot from the engine's exhaust gas.

-9-

# III. ARGUMENT

## A. Legal Standard

N.D. Cal. Patent Local Rule 3-6 allows a plaintiff to amend its infringement contentions upon a timely showing of good cause. The good cause inquiry "first considers whether plaintiff was diligent in amending its contentions and then considers prejudice to the non-moving party." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366–68 (Fed. Cir. 2006)). The party seeking to amend its contentions bears the burden of establishing diligence. *Id.* (citing *O2 Micro*, 467 F.3d at 1366–67). Courts allow parties with good cause to amend because "[i]f a local patent rule required the final identification of infringement and invalidity contentions to occur at the outset of the case, shortly after the pleadings were filed and well before the end of discovery, it might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regimen created by the Federal Rules." *O2 Micro,* 467 F.3d at 1366.

Rule 3-6 goes hand in hand with Rule 3-1, which provides for early disclosure of infringement contentions. Requiring good cause to amend contentions serves the objectives of crystallizing the plaintiff's theories of infringement early in the litigation and preventing changes in those theories at a late stage. *LG Elecs., Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002). However, if proposed amendments do not alter the theories of infringement, are proposed well in advance of claim construction or are proposed when discovery is still in its early stages, then the amendments do not undermine the policies underlying Rule 3-1. *Golden Hour Data Sys. v. Health Servs. Integration*, No. C-06-7477, 2008 U.S. Dist. LEXIS 75495, *13–14 (N.D. Cal. July 1, 2008). Judges in the Northern District "have recognized that the Patent Local Rules are 'not a straightjacket into which litigants are locked from the moment their contentions are served.'" *Zoltar Satellite Alarm Sys., Inc. v.*

-10-

*Motorola, Inc.*, No. C-06-00044, 2008 WL 913326, *2 (N.D. Cal. Apr. 2, 2008) (quoting *Comcast Cable Commc'ns Corp. v. Finisar Corp.*, No. C-06-04206, 2007 WL 716131, *2 (N.D. Cal. Mar. 2, 2007)).

### B. Kruse Has Good Cause To Amend Its Infringement Contentions

Kruse has been diligent in amending its contentions, the amendments were made early in discovery, and they do not prejudice Defendants. As such, good cause exists for Kruse to amend.

#### 1. The Amended Contentions Reflect Kruse's Diligence

The good cause inquiry of Patent Local Rule 3-6 begins with an analysis of the amending party's diligence. *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807, 2009 U.S. Dist. LEXIS 85425, *5–6 (N.D. Cal. June 12, 2009). Here, Kruse has exhibited diligence both in adding information at the request of Defendants and in adding new Accused Engines to the case.

##### a. Kruse Diligently Responded to Defendants' Requests

Kruse moved quickly in striving to address Defendants' many requests for added information. Indeed, Kruse's effort in this regard—done in the hopes of avoiding Court involvement—has been ongoing for six months. Defendants have never asserted that Kruse has delayed in providing requested information, nor could they reasonable do so.

##### b. Kruse Diligently Identified New Accused Engines

Courts regularly grant motions to amend infringement contentions when plaintiffs diligently add additional products. *See Sanofi-Aventis Deutschland Gmbh, v. Genentech, Inc.*, Case No. C 08-4909 SI, 2010 WL 1136479, *1 (N.D. Cal. Mar. 20, 2010) (permitting plaintiff to add an additional product tested after service of the initial contentions); *Nidec Corp., v. LG Innotek Co., Ltd*, No. 6:07-CV-108-LED-JDL, 2009 U.S. Dist. LEXIS 106667, *5–6 (E.D. Tex. Sept. 2, 2009) (permitting plaintiff to add 190 new products where defendants refused to respond to discovery on products not explicitly accused of infringement); *Mass*

*Engineered Design, Inc. v. Ergotron, Inc.*, No. 2:06-cv-272, 2008 U.S. Dist. LEXIS 35577, *14-*15, (E.D. Tex. Apr. 30, 2008) (granting leave to amend where defendant was uncooperative as to discovery of products not explicitly listed in the original contentions); *Mediostream, Inc. v. Microsoft Corp., et al.*, C 2:08-CV-369-CE, 2010 U.S. Dist. LEXIS 110420, *23 (E.D. Tex. Oct. 18, 2010) (permitting plaintiff to add new products more than a year after serving its initial contentions).

Here, Kruse acted diligently by promptly acquiring and testing new engines as soon as it learned that Defendants objected to providing discovery on engines not expressly identified as Accused Engines in Kruse's infringement contentions. Kruse first learned of Defendants' position on this issue in mid-December 2010. Kruse met-and-conferred with Defendants in mid-January and sought, unsuccessfully, to reach a compromise. Kruse promptly took the steps necessary to acquire and test four additional engines, and it provided Defendants with infringement contentions based on those engines in mid-February and mid-March.

### 2. The Amended Contentions Do Not Prejudice Defendants

#### a. Defendants Have Benefitted From the Amendments

Kruse's proposed Amended Contentions do not alter Kruse's theories of infringement, but instead only increase the level of the contentions' specificity, as requested by Defendants. Indeed, because of Kruse's Amended Contentions, Defendants now know more information regarding the theories of infringement presented in Kruse's original infringement contentions. Rather than prejudicing Defendants, the amendments have bestowed Defendants with a benefit.

#### b. Defendants Should Not be Surprised By the New Accused Engines, and They Have Ample Time to Address Them

"The Patent Local Rules were designed, among other reasons, to prevent the parties from shifting their theories late in discovery, leaving the opposing party with little time to conduct discovery on a new theory." *Golden Hour*, 2008

-12-

U.S. Dist. LEXIS 75495 at *13; *see Quantum Corp. v. Riverbed Tech., Inc.*, Case No. C 07-04161 WHA, 2008 WL 2783227 (N.D. Cal. July 15, 2008) (court permitted amendments to contentions where no claim construction has been issued and discovery remained open). There is no such danger here, as Defendants received notice of the new Accused Engines early in discovery.

Defendants have been on notice of Kruse's interest in the added engines since its November 15, 2010 infringement contentions, which expressly stated that the Series 60 engine, the OM647 engine, and the 1.9L TDI engine (and other engines) were "likely to infringe Kruse's patents," and on that basis Kruse was pursuing discovery of those engines. (*See* Jankowski, Ex. 8 at 3; Ex. 11 at 2; Ex. 13 at 2.)

Kruse's subsequent testing confirmed that the newly added engines do practice the claimed inventions under the same theory set forth in Kruse's initial infringement contentions. As an example, the two figures below show exemplary average cylinder temperature versus volume plots for an engine cycle from Kruse's infringement contentions for Daimler's OM642 engine (included in Kruse's initial contentions) and the OM647 engine (an added engine).



(Jankowski, Ex. 1 at 55 (Ex. A-2b).)





(Jankowski, Ex. 1 at 105 (Ex. B-1b).)

The labels "[E]" and "[F]" on the figures correlate the features in the test plots to claim elements in the particularized claim charts in Kruse's infringement contentions. As may be seen from the figures above, the OM642 and OM647 engines operate in the same general manner, and Kruse is reading the claims on the engine operation in the same way.

While the Defendants cannot claim unfair surprise based on the addition of the new engines, neither can they claim prejudice based on the case schedule. The timeline below shows the current case timeline.

The dates that Kruse provided Defendants with amended contentions based on new Accused Engines are shown, together with the claim construction period and the non-expert discovery cut-off date. (*See* Stipulation and Order Regarding

-14-

Revised Case Schedule (Docket No. 200).) As may be seen from the timeline, Defendants have had ample notice of Kruse's infringement theory as it relates to these engines, and they should have no difficulty preparing for claim construction and taking whatever discovery they deem necessary. Expert discovery does not close until March 9, 2012, opening expert reports are not due until December 16, 2011. Trial is scheduled for July 10, 2012. (Docket No. 200.) Under this case schedule Defendants cannot reasonably claim prejudice.

### 3. **The Sufficiency Objections of Detroit Diesel, DTNA and Western Star are Improper**

Detroit Diesel, Western Star, and DTNA object to Kruse's amended contentions on two grounds, neither of which is proper. First, these Defendants assert that Kruse should produce all test data acquired for the accused Series 60 engine, including data unrelated to Kruse's infringement contentions. This is not a challenge to the sufficiency of Kruse's articulation of its infringement theory, it is a request for information separate and apart from that theory, and it is not a proper basis for opposing the present motion.

Second, these Defendants assert that Kruse should drop its direct infringement allegations because they contend that the test data supporting Kruse's infringement contentions only apply to the Series 60 engine operating in regeneration mode, and they further contend that they have never operated the Series 60 engine in that mode. Yet Kruse contends that the Series 60 engine practices the claimed inventions when operating in regeneration mode and also when operating in its normal mode. Kruse also contends that these Defendants have each operated the Series 60 engine in a way that practices the claimed inventions when operating in both the regeneration and normal modes. While Defendants may dispute these contentions, that is not a proper basis for opposing Kruse's amended contentions, and these issues must now be litigated on the merits.

-15-

### 4. The Amended Contentions Reflect A Proper Motive

There is no gamesmanship behind the amendments sought by Kruse. This Court adopted the N.D. Cal. Patent Local Rules for the purpose of employing case management rules that would expedite discovery and facilitate resolution of the case on the merits. Patent Local Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 n.8 (Fed. Cir. 2006); *Nidec Corp.,* 2009 U.S. Dist. LEXIS 106667, at *3 (quoting *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007)). Kruse is conducting itself accordingly. Defendants appear to view the Patent Local Rules as a vehicle for delaying progress in the case and limiting the scope of discovery.

## IV. CONCLUSION

For the above reasons, Kruse respectfully requests that the Court grant its motion for leave to amend its N.D. Cal. Patent Local Rule 3-1 disclosures and deem effective its most recent set of Amended Contentions.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 23, 2011        By: */s/ David G. Jankowski*
　　　　　　　　　　　　　　　John B. Sganga, Jr.
　　　　　　　　　　　　　　　Karen Vogel Weil
　　　　　　　　　　　　　　　Jon W. Gurka
　　　　　　　　　　　　　　　David G. Jankowski
　　　　　　　　　　　　　　　Marko R. Zoretic

　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　KRUSE TECHNOLOGY PARTNERSHIP

11277548