# EXHIBIT 1

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, | Civil Action No. SACV 10-1066 JVS (RNBx) |
| Plaintiff, | **KRUSE TECHNOLOGY** |
| v. | **PARTNERSHIP'S [PROPOSED] SEVENTH AMENDED DISCLOSURE OF ASSERTED** |
| DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC,; DAIMLER TRUCKS NORTH AMERICA LLC,; MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and DAIMLER VANS MANUFACTURING LLC, | **CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DAIMLER AG** |
| Defendants. | |
| AND RELATED COUNTERCLAIM | |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

**Page 4**                                  **Exhibit 1**

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Seventh Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Daimler AG, and accompanying document production.   Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  <u>DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)</u>

**<u>N.D. Cal. Patent L.R. 3-1(a)</u>**

Kruse asserts that Daimler AG ("Daimler") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Daimler infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

**<u>N.D. Cal. Patent L.R. 3-1(b)</u>**

Kruse contends that Daimler performs the methods recited in each of the asserted claims of Kruse's patents when Daimler or others operating on its behalf operate the OM642 and OM647 diesel engines (the "Accused Engines") at speed and load operating conditions that introduce fuel fractions and result in combustion processes such that every claim element is satisfied.  The asserted claims are method claims, and Daimler directly infringes Kruse's patents when it or others operating on its behalf operate the Accused Engines through

- 1 -

operational testing of the engines or operation of vehicles equipped with the engines.

Kruse contends that Daimler operates the Accused Engines in the United States in connection with certifying the Accused Engines for compliance with the United States Environmental Protection Agency ("EPA") and with California Air Resources Board ("CARB") regulations. Daimler directs the activities of its subsidiaries Mercedes-Benz USA ("MBUSA") and Mercedes-Benz Research and Development North America ("MBRDNA") to operationally test and certify the engines with the appropriate government regulatory agencies. MBRDNA tests engines for EPA compliance at a facility in Ann Arbor, Michigan. Testing is performed under Daimler's supervision and control, as evidenced by the EPA Applications for Certification for the Accused Engines, which list representatives from Daimler AG. CARB Executive Orders for the Accused Engines likewise list Daimler AG as the applicant.

The Accused Engines are certified by the EPA to allow the engines to be sold and operated in the United States. The following chart identifies the Accused Engines by EPA Engine Family:

| Daimler/Mercedes-Benz | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _MBXH2.69DJA | 2004 | _MBXT03.0U2B | 2009–2011 |
| _MBXH2.69DJB | 2004–2006 | _MBXT03.0HD1 | 2010–2011 |
| _MBXV03.0BN8 | 2007–2009 | _MBXT03.0HD2 | 2010–2011 |
| _MBXT03.0B10 | 2007–2008 | _MBXV03.0U2B | 2011 |
| _MBXH3.00DJB | 2007–2009 | _MBXT03.0U2A | 2009–2011 |

In addition to EPA and CARB testing and certification, the Accused Engines undergo road testing in the United States under the supervision and control of Daimler, including hot weather testing in the western United States.

- 2 -

1    Discovery is in its early stages and Kruse's investigation is ongoing.
2   Kruse reserves the right to amend these contentions and disclosures as new facts
3   are learned in discovery.

4   **N.D. Cal. Patent L.R. 3-1(c)**

5    Exhibits A and B provide claim charts and exemplary dynamometer test
6   results that relate the limitations of the asserted method claims to the operation
7   of the OM642 and OM647 engines.  Exhibit A provides exemplary test results
8   for Daimler/Mercedes-Benz's OM642 diesel engines (as incorporated in a 2009
9   Dodge Sprinter, VIN WD0PE7AC695418216).  Exhibit B provides exemplary
10  test results for Daimler/Mercedes-Benz's OM647 diesel engines (as
11  incorporated in a 2006 Dodge Sprinter, VIN WD0PD644365943828).

12   A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis
13  Dynamometer, was used during testing.  The Mustang dynamometer is an
14  electric-type dynamometer having a set of rollers arranged to engage the drive
15  wheels of vehicles and to apply loads to those wheels.  The Mustang
16  dynamometer includes a workstation that allows a user to control operation of
17  the dynamometer and to display operational parameters of the dynamometer
18  during use, such as wheel speed (mph), horsepower, torque, engine RPM, and
19  other parameters.

20   The test results were obtained using an AVL IndiModul and IndiCom
21  software.  One channel of the AVL IndiModul was connected to an AVL angle
22  encoder.  The angle encoder was mounted to the front end of each engine by
23  way of a custom-designed mounting bracket.  Thus, the angle encoder would
24  measure the rotation of the crankshaft of the engine.  Another channel of the
25  AVL IndiModul was connected to an AVL FlexIFEM charge amplifier, which
26  in turn was connected to an in-cylinder pressure sensor (AVL Model No.
27  GH13P) that was used to measure in-cylinder pressure.  The pressure sensor
28  was mounted in the combustion chamber of one cylinder.  Other channels of the

- 3 -

AVL IndiModul were connected to probes, which, in turn, were connected to power wires of the fuel injector mounted to the same cylinder as the pressure sensor, which allowed for detection of the electronic signals issued to the fuel injectors during operation.  Traces of these signals are shown in Exhibits A and B.

For each engine, the test procedure followed the same general protocol. First, engine parameters were input into the AVL IndiModul, including the compression ratio, stroke, and rod length.  The engine was then "motored" to allow identification of the top dead center ("TDC") position of the instrumented cylinder and to establish a motoring pressure curve for the AVL IndiModul. After the TDC determination was complete, the AVL IndiModul was used to chart signals as a function of crank angle relative to TDC.

Dynamometer data was collected at certain engine operating speeds (RPM) and engine loads (percentage of maximum load).  The specific engine speeds and loads tested are reflected in the test data.

For each engine speed and load tested, the Mustang Dynamometer was set to apply to the vehicle wheels the calculated horsepower corresponding to the test load of interest.  The test vehicle was operated to drive the wheels (and the dynamometer rollers) at the test RPM of interest.  Once the engine reached a steady state of operation in each tested condition, the AVL IndiModul was triggered to record the signals for one-hundred consecutive combustion cycles. Heat release and average cylinder temperature data were derived from the recorded data using standard library functions from the AVL software.

Exemplary cylinder pressure versus crank angle plots are provided in Exhibits A and B.  Plots of heat release were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibits A and B. Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V

- 4 -

                 Exhibit 1

1  plots are provided in Exhibits A and B.

2      Plots of temperature versus crank angle are provided in Exhibits A and B

3  at the request of the defendants in this action.  Defendants have repeatedly

4  demanded that Kruse provide temperature versus crank angle plots in its

5  infringement contentions, and Kruse has refused to do so.  Kruse has provided

6  these plots to defendants to move the case forward in a spirit of cooperation, and

7  to avoid the need for Court involvement on this dispute.  To be clear, Kruse is

8  not relying upon the temperature versus crank angle plots provided herein to

9  assess whether an engine is practicing a substantially isothermal combustion

10  process (as is recited in Claim 1 of the '562 patent and Claim 9 of the '904

11  patent) or is limiting the maximum combustion temperature (as is recited in

12  Claim 1 of the '704 patent).  Kruse is relying upon temperature versus volume

13  plots to assess (1) whether an engine is practicing a substantially isothermal

14  combustion process, and (2) whether an engine is limiting the maximum

15  combustion temperature.  Kruse reserves its right to object to the use of the

16  temperature versus crank angle plots presented herein for purposes of claim

17  construction, non-infringement, invalidity, or any other purpose.

18      The test data related to Exhibits A and B has been produced at KRUSE-

19  DAG000001–03.

20      Kruse contends that operation of the OM642 engine infringes the asserted

21  method claims under at least the following speed and load conditions:

22

| 25% Load | 50% Load | 75% Load | 100% Load |
| --- | --- | --- | --- |
| 2400 RPM | 1600 RPM | 1600 RPM | 1600 RPM |
| 2600 RPM | 1800 RPM | 1800 RPM | 2000 RPM |
| 2800 RPM | 2000 RPM | 2000 RPM | 2200 RPM |
| 3000 RPM | 2200 RPM | 2200 RPM | 2400 RPM |
| 3200 RPM | 2400 RPM | 2400 RPM | 2600 RPM |

28

- 5 -

| 25% Load | 50% Load | 75% Load | 100% Load |
|---|---|---|---|
| | 2600 RPM | 2600 RPM | 2800 RPM |
| | 2800 RPM | 2800 RPM | 3000 RPM |
| | 3000 RPM | 3000 RPM | 3200 RPM |
| | 3200 RPM | 3200 RPM | 3400 RPM |
| | 3400 RPM | 3600 RPM | 3900 RPM |
| | 3600 RPM | | |

Kruse further contends that operation of the OM647 engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load | 100% Load |
|---|---|---|---|
| 2400 RPM | 2400 RPM | 2400 RPM | 3000 RPM |
| 2500 RPM | 2500 RPM | 2500 RPM | 3200 RPM |
| 2600 RPM | 2600 RPM | 2600 RPM | 3400 RPM |
| 2700 RPM | 2700 RPM | 2700 RPM | |
| 2800 RPM | 2800 RPM | 2800 RPM | |
| 2900 RPM | 2900 RPM | 2900 RPM | |
| 3000 RPM | 3000 RPM | 3000 RPM | |
| 3200 RPM | 3100 RPM | 3200 RPM | |
| 3300 RPM | 3200 RPM | 3300 RPM | |
| | 3300 RPM | 3400 RPM | |
| | 3400 RPM | | |

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle manufacturers that produce vehicles equipped with the Accused Engines, such as Daimler Vans Manufacturing, LLC ("Daimler Vans"), Mercedes-Benz U.S. International, Inc. ("MBUSI"), and Daimler Trucks North America, LLC, directly infringe Kruse's patents when they operate the Accused

- 6 -

Engines under one or more speed and load conditions.  Likewise, vehicle dealers and vehicle customers who purchase vehicles equipped with Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1.   Inducement (35 U.S.C. § 271(b))

Daimler designs and manufactures the Accused Engines.  As shown in Exhibits A and B, operation of the Accused Engines directly infringes the Kruse patents.   Daimler actively induces others, such as vehicle manufacturers, dealers, and vehicle customers, to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.  Daimler knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, result in direct infringement of the asserted claims.  Daimler's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicle manufacturers with the Accused Engines that practice the claimed methods when used under normal operating conditions.  Kruse contends that Daimler had knowledge of the asserted patents during the development phase of the accused OM642 and OM647 engines.

On February 7, 1994, Doug Kruse sent a letter to Robert Eaton, then Chairman of the Chrysler Corporation, enclosing the '562 patent and offering a coordinated program to develop the patented technology.   Mr. Kruse sent similar letters to Francois Castaing, then Vice President of Vehicle Engineering at Chrysler Corporation, and Michael Fisher of the Outside Suggestions Department.  In November 1994, Mr. Kruse received a response from Charles R. Cheney of the aforementioned Outside Suggestions Department informing Mr. Kruse that Chrysler Corporation had "completed [their] evaluation" of the patent and declining the opportunity to acquire any rights to it.  At least by

                    Exhibit 1

1998, Daimler gained knowledge of the '562 patent when it merged with Chrysler Corporation and the two entities combined their business operations into a single "merger of equals."   Daimler's name at that point became DaimlerChrysler.  The business files of the pre-merger Chrysler Corporation, including its intellectual property files and files of Chrysler's Outside Suggestions Department, became business files of Daimler (then-called DaimlerChrysler).

Shortly thereafter, in 1999, Daimler (then-called Daimler-Benz) was assigned the rights to U.S. Patent Application No. 09/325,653 ("the '653 application"), a patent application directed to a method for changing the operating mode of a direct injection internal combustion engine.  Daimler gained knowledge of the asserted '904 patent when, during the examination of the '653 application, the patent examiner cited the '904 patent as prior art to Daimler's pending '653 application.  Daimler's '653 application subsequently issued in March 2001 as U.S. Patent No. 6,196,183.  In 2008, shortly after DaimlerChrysler announced the sale of an 80.1% stake in Chrysler Group, DaimlerChrysler assigned the '183 patent to Daimler AG.

In 2003 Daimler gained further knowledge of the asserted patents when Mr. Malcolm White contacted Daimler (then-called DaimlerChrysler) and Mercedes-Benz in connection with Mr. White's efforts to license Mr. Kruse's patented technology.  Daimler and its subsidiaries informed Mr. White that they had forwarded his offer to the appropriate persons for review.  Daimler and its subsidiaries communicate regularly with each other in the ordinary course of business on issues relating to engine research, development, and manufacture as the need arises.

At least as early as September 2010, Daimler AG gained further knowledge of each of the asserted patents upon being served with the Complaint in this action.

- 8 -

Daimler has conducted its business operations, including providing engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

## 2.    Contributory Infringement (35 U.S.C. § 271(c))

Daimler designs and manufactures the Accused Engines to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.  Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.  As discussed above, Daimler has conducted its business operations, including providing engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

## N.D. Cal. Patent L.R. 3-1(e)

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.  Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

- 9 -

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.  N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.  N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP20860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.  N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

- 10 -

**D.** **N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.** **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.** **CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 12, 2011        By:  */s/ David G. Jankowski*

John B. Sganga, Jr.
Karen Vogel Weil
Jon W. Gurka
David G. Jankowski
Marko R. Zoretic

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

11227272

- 11 -

# PAGES 16 THROUGH 122

# FILED UNDER SEAL

# EXHIBIT 2

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br>    Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC.; DAIMLER TRUCKS NORTH AMERICA LLC,, MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and DAIMLER VANS MANUFACTURING LLC, <br>    Defendants. <br><br> AND RELATED COUNTERCLAIM | ) <br> ) Civil Action No. <br> ) SACV 10-1066 JVS (RNBx) <br> ) <br> ) <br> ) <br> ) **KRUSE TECHNOLOGY** <br> ) **PARTNERSHIP'S [PROPOSED]** <br> ) **SEVENTH AMENDED** <br> ) **DISCLOSURE OF ASSERTED** <br> ) **CLAIMS AND INFRINGEMENT** <br> ) **CONTENTIONS TO DEFENDANT** <br> ) **MERCEDES-BENZ USA, LLC** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

**Page 123**                **Exhibit 2**

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Seventh Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Mercedes-Benz USA, LLC, and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I. DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Mercedes-Benz USA, LLC ("MBUSA") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that MBUSA infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse contends that MBUSA performs the methods recited in each of the asserted claims of Kruse's patents when MBUSA or others operating on its behalf operate  the OM642 and OM647 diesel engines (the "Accused Engines") at speed and load operating conditions that introduce fuel fractions and result in combustion processes such that every claim element is satisfied.  The asserted claims are method claims, and MBUSA directly infringes Kruse's patents when it or others operating on its behalf operate the Accused Engines through

1  operational testing of the engines or operation of vehicles equipped with the
2  engines.

3       Kruse contends that MBUSA operates the Accused Engines in the United
4  States in conjunction with Daimler AG in connection with certifying the
5  Accused Engines for compliance with the United States Environmental
6  Protection Agency ("EPA") and with California Air Resources Board
7  ("CARB") regulations.  MBUSA and Daimler AG perform operational testing
8  for certification of the engines with the appropriate government regulatory
9  agencies, and/or directs the activities of Mercedes-Benz Research and
10 Development North America ("MBRDNA") to perform the same.  MBRDNA
11 tests engines for EPA compliance at a facility in Ann Arbor, Michigan.  Testing
12 is performed under MBUSA's supervision and control, as evidenced by the EPA
13 Applications for Certification for the Accused Engines, which list
14 representatives from MBUSA.

15      The Accused Engines are certified by the EPA to allow the engines to be
16 sold and operated in the United States.  The following chart identifies the
17 Accused Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _MBXH2.69DJA | 2004 |
| _MBXH2.69DJB | 2004–2006 |
| _MBXV03.0BN8 | 2007–2009 |
| _MBXT03.0B10 | 2007–2008 |
| _MBXH3.00DJB | 2007–2009 |
| _MBXT03.0U2A | 2009–2011 |
| _MBXT03.0U2B | 2009–2011 |
| _MBXT03.0HD1 | 2010–2011 |
| _MBXT03.0HD2 | 2010–2011 |

| EPA Engine Family | Model Year |
|---|---|
| _MBXV03.0U2B | 2011 |

In addition to EPA and CARB testing and certification, the Accused Engines undergo road testing in the United States under the supervision and control of Daimler AG and MBUSA, including hot weather testing in the western United States.

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibits A and B provide claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of each of the Accused Engines. Exhibit A provides exemplary test results for Daimler/Mercedes-Benz's OM642 diesel engines (as incorporated in a 2009 Dodge Sprinter, VIN WD0PE7AC695418216). Exhibit B provides exemplary test results for Daimler/Mercedes-Benz's OM647 diesel engines (as incorporated in a 2006 Dodge Sprinter, VIN WD0PD644365943828).

A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis Dynamometer, was used during testing. The Mustang dynamometer is an electric-type dynamometer having a set of rollers arranged to engage the drive wheels of vehicles and to apply loads to those wheels. The Mustang dynamometer includes a workstation that allows a user to control operation of the dynamometer and to display operational parameters of the dynamometer during use, such as wheel speed (mph), horsepower, torque, engine RPM, and other parameters.

The test results were obtained using an AVL IndiModul and IndiCom software. One channel of the AVL IndiModul was connected to an AVL angle

1   encoder.  The angle encoder was mounted to the front end of each engine by
2   way of a custom-designed mounting bracket.  Thus, the angle encoder would
3   measure the rotation of the crankshaft of the engine.  Another channel of the
4   AVL IndiModul was connected to an AVL FlexIFEM charge amplifier, which
5   in turn was connected to an in-cylinder pressure sensor (AVL Model No.
6   GH13P) that was used to measure in-cylinder pressure.  The pressure sensor
7   was mounted in the combustion chamber of one cylinder.  Other channels of the
8   AVL IndiModul were connected to probes, which, in turn, were connected to
9   power wires of the fuel injector mounted to the same cylinder as the pressure
10   sensor, which allowed for detection of the electronic signals issued to the fuel
11   injectors during operation.  Traces of these signals are shown in Exhibits A and
12   B.

13       For each engine, the test procedure followed the same general protocol.
14   First, engine parameters were input into the AVL IndiModul, including the
15   compression ratio, stroke, and rod length.  The engine was then "motored" to
16   allow identification of the top dead center ("TDC") position of the instrumented
17   cylinder and to establish a motoring pressure curve for the AVL IndiModul.
18   After the TDC determination was complete, the AVL IndiModul was used to
19   chart signals as a function of crank angle relative to TDC.

20       Dynamometer data was collected at certain engine operating speeds
21   (RPM) and engine loads (percentage of maximum load).  The specific engine
22   speeds and loads tested are reflected in the test data.

23       For each engine speed and load tested, the Mustang Dynamometer was
24   set to apply to the vehicle wheels the calculated horsepower corresponding to
25   the test load of interest.  The test vehicle was operated to drive the wheels (and
26   the dynamometer rollers) at the test RPM of interest.  Once the engine reached a
27   steady state of operation in each tested condition, the AVL IndiModul was
28   triggered to record the signals for one-hundred consecutive combustion cycles.

1   Heat release and average cylinder temperature data were derived from the
2   recorded data using standard library functions from the AVL software.

3    Exemplary cylinder pressure versus crank angle plots are provided in
4   Exhibits A and B.  Plots of heat release were generated by the IndiCom
5   software, and exemplary heat release plots are provided in Exhibits A and B.
6   Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder
7   Temperature versus Volume were generated, and exemplary P-V plots and T-V
8   plots are provided in Exhibits A and B.

9    Plots of temperature versus crank angle are provided in Exhibits A and B
10  at the request of the defendants in this action.  Defendants have repeatedly
11  demanded that Kruse provide temperature versus crank angle plots in its
12  infringement contentions, and Kruse has refused to do so.  Kruse has provided
13  these plots to defendants to move the case forward in a spirit of cooperation, and
14  to avoid the need for Court involvement on this dispute.  To be clear, Kruse is
15  not relying upon the temperature versus crank angle plots provided herein to
16  assess whether an engine is practicing a substantially isothermal combustion
17  process (as is recited in Claim 1 of the '562 patent and Claim 9 of the '904
18  patent) or is limiting the maximum combustion temperature (as is recited in
19  Claim 1 of the '704 patent).  Kruse is relying upon temperature versus volume
20  plots to assess (1) whether an engine is practicing a substantially isothermal
21  combustion process, and (2) whether an engine is limiting the maximum
22  combustion temperature.  Kruse reserves its right to object to the use of the
23  temperature versus crank angle plots presented herein for purposes of claim
24  construction, non-infringement, invalidity, or any other purpose.

25   The test data related to Exhibits A and B has been produced at KRUSE-
26  MBUSA000001–03.

27   Kruse contends that operation of the OM642 engine infringes the asserted
28  method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load | 100% Load |
|---|---|---|---|
| 2400 RPM | 1600 RPM | 1600 RPM | 1600 RPM |
| 2600 RPM | 1800 RPM | 1800 RPM | 2000 RPM |
| 2800 RPM | 2000 RPM | 2000 RPM | 2200 RPM |
| 3000 RPM | 2200 RPM | 2200 RPM | 2400 RPM |
| 3200 RPM | 2400 RPM | 2400 RPM | 2600 RPM |
|  | 2600 RPM | 2600 RPM | 2800 RPM |
|  | 2800 RPM | 2800 RPM | 3000 RPM |
|  | 3000 RPM | 3000 RPM | 3200 RPM |
|  | 3200 RPM | 3200 RPM | 3400 RPM |
|  | 3400 RPM | 3600 RPM | 3900 RPM |
|  | 3600 RPM |  |  |

Kruse further contends that operation of the OM647 engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load | 100% Load |
|---|---|---|---|
| 2400 RPM | 2400 RPM | 2400 RPM | 3000 RPM |
| 2500 RPM | 2500 RPM | 2500 RPM | 3200 RPM |
| 2600 RPM | 2600 RPM | 2600 RPM | 3400 RPM |
| 2700 RPM | 2700 RPM | 2700 RPM |  |
| 2800 RPM | 2800 RPM | 2800 RPM |  |
| 2900 RPM | 2900 RPM | 2900 RPM |  |
| 3000 RPM | 3000 RPM | 3000 RPM |  |
| 3200 RPM | 3100 RPM | 3200 RPM |  |
| 3300 RPM | 3200 RPM | 3300 RPM |  |
|  | 3300 RPM | 3400 RPM |  |
|  | 3400 RPM |  |  |

/ / /

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle manufacturers that produce vehicles equipped with the Accused Engines, such as Daimler Vans Manufacturing, LLC ("Daimler Vans") and Mercedes-Benz U.S. International, Inc. ("MBUSI") directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions.  Likewise, vehicle dealers and vehicle customers who purchase vehicles equipped with Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1.   Inducement (35 U.S.C. § 271(b))

Daimler AG, MBUSA's parent company, designs and manufactures the Accused Engines.  As shown in Exhibits A and B, operation of the Accused Engines directly infringes the Kruse patents.  MBUSA actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.  MBUSA knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, result in direct infringement of the asserted claims.  MBUSA's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, marketing and distributing vehicles equipped with Accused Engines that practice the claimed methods when used under normal operating conditions.  Kruse contends that MBUSA, as well as its parent company Daimler AG, had knowledge of the asserted patents during the development phase of the accused OM642 and OM647 engines.

On February 7, 1994, Doug Kruse sent a letter to Robert Eaton, then Chairman of the Chrysler Corporation, enclosing the '562 patent and offering a coordinated program to develop the patented technology.  Mr. Kruse sent similar letters to Francois Castaing, then Vice President of Vehicle Engineering

1  at Chrysler Corporation, and Michael Fisher of the Outside Suggestions
2  Department.  In November 1994, Mr. Kruse received a response from Charles
3  R. Cheney of the aforementioned Outside Suggestions Department informing
4  Mr. Kruse that Chrysler Corporation had "completed [their] evaluation" of the
5  patent and declining the opportunity to acquire any rights to it.  At least by
6  1998, Daimler AG gained knowledge of the '562 patent when it merged with
7  Chrysler Corporation and the two entities combined their business operations
8  into a single "merger of equals."  Daimler AG's name at that point became
9  DaimlerChrysler.  The business files of the pre-merger Chrysler Corporation,
10  including its intellectual property files and files of Chrysler's Outside
11  Suggestions Department, became business files of Daimler AG (then-called
12  DaimlerChrysler).

13      Shortly thereafter, in 1999, Daimler AG (then-called Daimler-Benz) was
14  assigned the rights to U.S. Patent Application No. 09/325,653 ("the '653
15  application"), a patent application directed to a method for changing the
16  operating mode of a direct injection internal combustion engine.  Daimler AG
17  gained knowledge of the asserted '904 patent when, during the examination of
18  the '653 application, the patent examiner cited the '904 patent as prior art to
19  Daimler's pending '653 application.  Daimler's '653 application subsequently
20  issued in March 2001 as U.S. Patent No. 6,196,183.  In 2008, shortly after
21  DaimlerChrysler announced the sale of an 80.1% stake in Chrysler Group,
22  DaimlerChrysler assigned the '183 patent to Daimler AG.

23      In 2003, MBUSA and Daimler AG gained further knowledge of the
24  asserted patents when Mr. Malcolm White contacted Daimler AG (then-called
25  DaimlerChrysler) and Mercedes-Benz in connection with Mr. White's efforts to
26  license Mr. Kruse's patented technology.  Daimler and its subsidiaries informed
27  Mr. White that they had forwarded his offer to the appropriate persons for
28  review.  Daimler AG, MBUSA, and Daimler's other subsidiaries communicate

regularly with each other in the ordinary course of business on issues relating to engine research, development, and manufacture as the need arises.

At least as early as July 2010, MBUSA further gained knowledge of the asserted patents upon being served with the Complaint in this action.  MBUSA has conducted its business operations, including marketing, distributing, and selling vehicles equipped with engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

### 2.   Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.   Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

At least as early as July 2010, MBUSA gained knowledge of each of the asserted patents upon being served with the Complaint in this action.  MBUSA may have gained knowledge of the asserted patents earlier from Daimler AG. MBUSA has conducted its business operations, including marketing, distributing, and selling vehicles equipped with engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

### N.D. Cal. Patent L.R. 3-1(e)

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.  Defendants have not provided a clear

presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents:  KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629,

KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP20860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.     N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.     N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.     N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.   CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT
L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 12, 2011          By:  */s/ David G. Jankowski*
                                      John B. Sganga, Jr.
                                      Karen Vogel Weil
                                      Jon W. Gurka
                                      David G. Jankowski
                                      Marko R. Zoretic

                                      Attorneys for Plaintiff/Counterdefendant
                                      KRUSE TECHNOLOGY PARTNERSHIP

11228153

# PAGES 135 THROUGH 241

# FILED UNDER SEAL

# EXHIBIT 3

1  John B. Sganga, Jr. (CSB # 116,211)
   jsganga@kmob.com
2  Karen Vogel Weil (CSB # 145,066)
   kweil@kmob.com
3  Jon W. Gurka (CSB # 187,964)
   jgurka@kmob.com
4  David G. Jankowski (CSB # 205,634)
   djankowski@kmob.com
5  Marko R. Zoretic (CSB # 233,952)
   mzoretic@kmob.com
6  KNOBBE, MARTENS, OLSON & BEAR, LLP
7  2040 Main Street, Fourteenth Floor
   Irvine, CA 92614
8  Telephone:  (949) 760-0404
   Facsimile:  (949) 760-9502
9

10  Attorneys for Plaintiff/Counterdefendant
    KRUSE TECHNOLOGY PARTNERSHIP
11

12            **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                      **SOUTHERN DIVISION**

| | |
|---|---|
| 15  KRUSE TECHNOLOGY | ) Civil Action No. |
| 16  PARTNERSHIP, | ) SACV 10-1066 JVS (RNBx) |
| | ) |
| 17       Plaintiff, | ) **KRUSE TECHNOLOGY** |
| | ) **PARTNERSHIP'S [PROPOSED]** |
| 18       v. | ) **SIXTH AMENDED DISCLOSURE** |
| | ) **OF ASSERTED CLAIMS AND** |
| 19  DAIMLER AG; MERCEDES-BENZ | ) **INFRINGEMENT CONTENTIONS** |
|     USA, LLC; DETROIT DIESEL | ) **TO DEFENDANT DAIMLER** |
| 20  CORPORATION; WESTERN STAR | ) **TRUCKS NORTH AMERICA LLC** |
|     TRUCK SALES, INC.; | ) |
| 21  VOLKSWAGEN AG; | ) |
|     VOLKSWAGEN GROUP OF | ) |
| 22  AMERICA, INC., d/b/a AUDI OF | ) |
|     AMERICA, INC.; CHRYSLER | ) |
| 23  GROUP LLC,; DAIMLER TRUCKS | ) |
|     NORTH AMERICA LLC,, | ) |
| 24  MERCEDES-BENZ, U.S. | ) |
|     INTERNATIONAL, INC.; and | ) |
| 25  DAIMLER VANS | ) |
|     MANUFACTURING LLC, | ) |
| 26 | ) |
|         Defendants. | ) |
| 27 | ) |
| 28  AND RELATED COUNTERCLAIM | ) |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Sixth Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Daimler Trucks North America, LLC, ("DTNA") and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Daimler Trucks North America, LLC ("DTNA") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that DTNA infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that DTNA performs the methods recited in each of the asserted claims of Kruse's patents at least when DTNA operates its vehicles equipped with the Series 60 family of diesel engines ("Accused Engines") from Detroit Diesel Corporation ("Detroit Diesel").  The asserted claims are method claims, and DTNA directly infringes Kruse's patents when it (or others on DTNA's behalf) operates vehicles equipped with the Series 60 family of engines

- 1 -

under one or more engine speed and load conditions through operational testing of vehicles equipped with the engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States.  The following charts identify the Accused Engines by EPA Engine Family and Model Year:

| Detroit Diesel | |
| --- | --- |
| EPA Engine Family | Model Year |
| _DDXH14.0ELY | 2007–2009 |
| _DDXH14.0ELC | 2008 |
| _DDXH14.0ELD | 2009 |

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibit A  provides claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines.  Exhibit A provides exemplary test results for Series 60 diesel engines (as incorporated in a 2008 Freightliner CL 120, VIN 1FUJA6CK48DZ82131).

A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis Dynamometer, was used during testing.  The Mustang dynamometer is an electric-type dynamometer having a set of rollers arranged to engage the drive wheels of vehicles and to apply loads to those wheels.  The Mustang dynamometer includes a workstation that allows a user to control operation of

- 2 -

the dynamometer and to display operational parameters of the dynamometer during use, such as wheel speed (mph), horsepower, torque, engine RPM, and other parameters.

The test results were obtained using an AVL IndiModul and IndiCom software. One channel of the AVL IndiModul was connected to an AVL angle encoder. The angle encoder was mounted to the front end of each engine by way of a custom-designed mounting bracket. Thus, the angle encoder would measure the rotation of the crankshaft of the engine. Another channel of the AVL IndiModul was connected to an AVL FlexIFEM charge amplifier, which in turn was connected to an in-cylinder pressure sensor (AVL Model No. GH13P) that was used to measure in-cylinder pressure. The pressure sensor was mounted in the combustion chamber of one cylinder. Other channels of the AVL IndiModul were connected to probes, which, in turn, were connected to power wires of the fuel injector mounted to the same cylinder as the pressure sensor, which allowed for detection of the electronic signals issued to the fuel injectors during operation. Traces of the in-cylinder pressure measured as a function of crank angle are shown in Exhibit A.

The Series 60 engine includes one fuel injector per cylinder. The injector is called the E3 Electronic Unit Injector ("E3 EUI"), and it includes two solenoids. (*See*, *e.g.*, Series 60 Workshop Manual (KTP112660–113695) at KTP113156.) A fuel metering unit is positioned under a plunger. The E3 has an inwardly opening of a solenoid valve that controls the beginning of injection and the end of injection. (*Id.*) The solenoid valve closing point defines the beginning of injection and the solenoid valve opening point defines the end of injection. (*Id.*) Pressure is generated by the downward movement of the plunger in combination with the closed solenoid valve. Fuel quantity is metered by the length of time the solenoid valve remains closed. A magnetic core is incorporated into the module, and electrical leads from the core are brought to

- 3 -

an external position on the injector through a modular four-pin connector socket.  (*Id*.)  A diagram of the electronic fuel injector is provided below.  (*See* Series 60 Manual at Fig. 2-3 (KTP113157).)



**Cross-section Diagram of the E3 Electronic Unit Injector**

The metering and timing of fuel introduction is determined by a Motor Control Module ("MCM") that sends an electronic signal that activates the injector solenoid.  (*Id*. at KTP113157.)  The E3 EUI performs four functions, including metering and injecting the exact amount of fuel needed for the engine cycle.  (*Id*. at KTP113158.)  Engine combustion is obtained when the E3 EUI injects under pressure a small quantity of accurately metered and finely atomized fuel into the cylinder.  (*Id*.)

During operation, a plunger operates up and down in the body bore of the injector.  The motion of the injector rocker arm is transmitted to the plunger and follower that bears against a follower spring.  As the piston of the Series 60

- 4 -

1   engine moves approximately two-thirds of the way up in the cylinder on the
2   compression stroke, an injector cam lobe begins to lift causing the injector
3   rocker arm to push down on the follower and the plunger.  Just before injection
4   begins, the MCM sends an electronic pulse that turns on the injector solenoid.
5   The energized solenoid creates a magnetic force that closes the control valve
6   and traps fuel under the plunger and passages leading down to the needle valve.
7   The fuel pressure increases as the plunger continues its downward stroke.  This
8   fuel pressure acts on the needle valve, and when it creates a force high enough
9   to overcome the valve spring force holding the needle on its seat, the needle
10  valve moves up, allowing the high pressure fuel to spray into the combustion
11  chamber.  The high pressure of the fuel passing through the small holes in the
12  nozzle creates a finely atomized spray for combustion within the cylinder.  (*Id.*
13  at KTP113159.)

14          After the pulse width time has passed, the MCM turns off the current to
15  the injector solenoid.  The de-energized solenoid allows a spring to open the
16  control valve, permitting the trapped fuel to spill down, dropping the pressure
17  within the injector. When the pressure is low enough the needle valve closes and
18  ends injection.  The MCM controls the beginning of injection and metering of
19  the fuel in relation to the crankshaft position, with injection beginning soon after
20  the control valve is closed.  The valve closing point, known as the injector
21  response time, is returned to the MCM.  This information is used to monitor and
22  adjust injection timing, thus removing injector-to-injector variation influences
23  on timing. The amount of fuel injected depends on the pulse width stored in the
24  calibration which determines how long the control valve remains closed; the
25  larger the pulse width the longer the valve is closed and the more fuel is
26  injected.  When the injector rocker arm has completed its downward travel the
27  injector follower spring returns it to the starting position. As the plunger moves
28  up fuel enters the injector pumping cavity for another injection cycle.  (*Id.*)

- 5 -

To test the operation of the Series 60 engine, two current probes were electrically coupled to the E3 fuel injector via the wiring harness shown above as element 11.  Specifically, the current probes were connected to a violet wire and a red wire of the E3 fuel injector.  These connections are shown in the photograph below.



**Current Probe Connections to the E3 Electronic Unit Injector**

The fuel injector and in-cylinder pressure sensor were mounted to the same cylinder.  The electronic signals measured from the red and violet wires of the E3 EUI are shown in Exhibit A.  The current probe measurements of the Series 60 reveal that the fuel injector is operated in two different modes: a

- 6 -

1  single-injection mode and a multiple-injection mode.  Examples of the violet

2  and red wire signals are shown below for single-injection and multiple-injection

3  operation, respectively.





20      Detroit Diesel touts the ability of its Series 60 engine to implement

21  multiple injections of fuel per cycle.  *See*, *e.g.*, Detroit Diesel Series 60

22  operation video (KTP112659 (animation describing and depicting two injections

23  of fuel per cycle).)  When the engine is operating in multiple injection mode,

24  "[j]ust before the piston reaches top dead center, the SMART Injector releases a

25  pilot injection of diesel fuel. This is the first of two injections." (*Id.*)

26      Detroit Diesel has a history of designing fuel injection systems that are

27  capable of multiple injections of fuel and rate-shaped introductions of fuel per

28  cycle, and it has sought widespread patent protection for technology in these

- 7 -

areas.  *See*, *e.g.*, U.S. Patent Nos. 5,445,128 and 6,516,782; U.S. Patent Nos. 6,227,175 and 7,097,115 (systems that use pilot injections and fuel rate-shaping); U.S. Patent No. 6,848,414 (systems that switch between single-injection and multiple-injection modes of operation); and U.S. Patent No. 7,628,139 (systems using piezo-electric actuators to control multiple injections of fuel per cycle).

To test the operation of the Series 60, engine parameters were input into the AVL IndiModul, including the compression ratio, stroke, and rod length. The engine was then "motored" to allow identification of the top dead center ("TDC") position of the instrumented cylinder and to establish a motoring pressure curve for the AVL IndiModul.  After the TDC determination was complete, the AVL IndiModul was used to chart signals as a function of crank angle relative to TDC.

Dynamometer data was collected at certain engine operating speeds (RPM) and engine loads (percentage of maximum load).  The specific engine speeds and loads tested are reflected in the test data.  In some conditions, the load is represented as a percentage of maximum load for the specified operating speed.  In other conditions, the load is represented by a horsepower value (HP).

For each engine speed and load tested, the Mustang Dynamometer was set to apply to the vehicle wheels the calculated horsepower corresponding to the test load of interest.  The test vehicle was operated to drive the wheels (and the dynamometer rollers) at the test RPM of interest.  Once the engine reached a steady state of operation in each tested condition, the AVL IndiModul was triggered to record the signals for one-hundred consecutive combustion cycles. Dynamometer testing was also conducted on transient modes of operation for the Series 60.  For testing of transient conditions, testing was initiated at a steady engine speed and the vehicle was accelerated through a range of engine speeds.  One-hundred combustion cycles were recorded during the transition

- 8 -

from the starting speed to the ending speed.  For both steady-state conditions and transient conditions, heat release and average cylinder temperature data were derived from the recorded data using standard library functions from the AVL software.

Exemplary cylinder pressure versus crank angle plots are provided in Exhibit A.  Plots of heat release were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibit A.  Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibit A.

Plots of temperature versus crank angle are provided in Exhibit A at the request of DTNA and the other defendants in this action.  Defendants have repeatedly demanded that Kruse provide temperature versus crank angle plots in its infringement contentions, and Kruse has refused to do so.  Kruse has provided these plots to defendants to move the case forward in a spirit of cooperation, and to avoid the need for Court involvement on this dispute.  To be clear, Kruse is not relying upon the temperature versus crank angle plots provided herein to assess whether an engine is practicing a substantially isothermal combustion process (as is recited in Claim 1 of the '562 patent and Claim 9 of the '904 patent) or is limiting the maximum combustion temperature (as is recited in Claim 1 of the '704 patent).  Kruse is relying upon temperature versus volume plots to assess (1) whether an engine is practicing a substantially isothermal combustion process, and (2) whether an engine is limiting the maximum combustion temperature.  Kruse reserves its right to object to the use of the temperature versus crank angle plots presented herein for purposes of claim construction, non-infringement, invalidity, or any other purpose.

The test data related to Exhibit A is produced at KRUSE-DTNA000002.

/ / /

- 9 -

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase or take possession of DTNA vehicles equipped with the Accused Engines directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions. DTNA's engine suppliers, such as Detroit Diesel, also directly infringe Kruse's patents at least when operationally testing each engine, and through that operational testing, perform the claimed methods.

### 1.   Inducement (35 U.S.C. § 271(b))

DTNA actively induces vehicle dealers and vehicle customers to infringe the asserted methods by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. DTNA's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicles equipped with the Accused Engines that practice the claimed methods when used under normal operating conditions to vehicle dealers and customers.

### 2.   Contributory Infringement (35 U.S.C. § 271(c))

DTNA has manufactured, offered for sale, and sold vehicles containing the Accused Engines. The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions. Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines. Defendants have asserted that certain claim

- 10 -

elements are not literally present.  Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents:  KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618,

- 11 -

KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.   N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.   N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–20977.

**E.   N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.   CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  May 12, 2011          By:  */s/ David G. Jankowski*
                                   John B. Sganga, Jr.
                                   Karen Vogel Weil
                                   Jon W. Gurka
                                   David G. Jankowski
                                   Marko R. Zoretic

                                 Attorneys for Plaintiff/Counterdefendant
                                 KRUSE TECHNOLOGY PARTNERSHIP

11227395

- 12 -

# PAGES 255 THROUGH 307

# FILED UNDER SEAL

# EXHIBIT 4

1 | John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
2 | Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
3 | Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
4 | David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
5 | Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
6 | KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
7 | Irvine, CA 92614
8 | Telephone:  (949) 760-0404
Facsimile:   (949) 760-9502
9 |

10 | Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP
11 |

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC,; DAIMLER TRUCKS NORTH AMERICA LLC,; MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and DAIMLER VANS MANUFACTURING LLC, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Civil Action No. SACV 10-1066 JVS (RNBx) <br><br> **KRUSE TECHNOLOGY PARTNERSHIP'S [PROPOSED] FIFTH AMENDED DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DETROIT DIESEL CORPORATION** |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

**Page 308**                                    **Exhibit 4**

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Fifth Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Detroit Diesel Corporation, and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Detroit Diesel Corporation ("Detroit Diesel") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Detroit Diesel infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Detroit Diesel performs the methods recited in each of the asserted claims of Kruse's patents when Detroit Diesel operates its Series 60 family of diesel engines (the "Accused Engines").  The asserted claims are method claims, and Detroit Diesel directly infringes Kruse's patents when it (or others on Detroit Diesel's behalf) operates the Series 60 family of engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the engines, and through that

- 1 -

1   operation, performs the claimed methods.

2       Kruse understands that the Accused Engines are certified by the

3   Environmental Protection Agency ("EPA") to allow the engines to be sold and

4   operated in the United States.  The following chart identifies the Accused

5   Engines by EPA Engine Family and Model Year:

| EPA Engine Family | Model Year |
|---|---|
| _DDXH14.0ELY | 2007–2009 |
| _DDXH14.0ELC | 2008 |
| _DDXH14.0ELD | 2009 |

10      Discovery is in its early stages and Kruse's investigation is ongoing.

11  Kruse reserves the right to amend these contentions and disclosures as new facts

12  are learned in discovery.

13  **N.D. Cal. Patent L.R. 3-1(c)**

14      Exhibit A provides claim charts and exemplary dynamometer test results

15  that relate the limitations of the asserted method claims to the operation of the

16  Accused Engines.  Exhibit A provides exemplary test results for Series 60 diesel

17  engines  (as  incorporated  in  a  2008  Freightliner  CL  120,  VIN

18  1FUJA6CK48DZ82131).

19      A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis

20  Dynamometer, was used during testing.  The Mustang dynamometer is an

21  electric-type dynamometer having a set of rollers arranged to engage the drive

22  wheels  of  vehicles  and  to  apply  loads  to  those  wheels.   The  Mustang

23  dynamometer includes a workstation that allows a user to control operation of

24  the dynamometer and to display operational parameters of the dynamometer

25  during use, such as wheel speed (mph), horsepower, torque, engine RPM, and

26  other parameters.

27      The test results were obtained using an AVL IndiModul and IndiCom

28  software.  One channel of the AVL IndiModul was connected to an AVL angle

- 2 -

1   encoder.  The angle encoder was mounted to the front end of each engine by

2   way of a custom-designed mounting bracket.  Thus, the angle encoder would

3   measure the rotation of the crankshaft of the engine.  Another channel of the

4   AVL IndiModul was connected to an AVL FlexIFEM charge amplifier, which

5   in turn was connected to an in-cylinder pressure sensor (AVL Model No.

6   GH13P) that was used to measure in-cylinder pressure.  The pressure sensor

7   was mounted in the combustion chamber of one cylinder.  Traces of the in-

8   cylinder pressure measured as a function of crank angle are shown in Exhibit A.

9       The Series 60 engine includes one fuel injector per cylinder.  The injector

10  is called the E3 Electronic Unit Injector ("E3 EUI"), and it includes two

11  solenoids.  (*See*, *e.g*., Series 60 Workshop Manual (KTP112660–113695) at

12  KTP113156.)  A fuel metering unit is positioned under a plunger.  The E3 has

13  an inwardly opening of a solenoid valve that controls the beginning of injection

14  and the end of injection.  (*Id*.)  The solenoid valve closing point defines the

15  beginning of injection and the solenoid valve opening point defines the end of

16  injection.  (*Id*.)  Pressure is generated by the downward movement of the

17  plunger in combination with the closed solenoid valve.  Fuel quantity is metered

18  by the length of time the solenoid valve remains closed.  A magnetic core is

19  incorporated into the module, and electrical leads from the core are brought to

20  an external position on the injector through a modular four-pin connector

21  socket.  (*Id*.)  A diagram of the electronic fuel injector is provided below.  (*See*

22  Series 60 Manual at Fig. 2-3 (KTP1113157).)

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

- 3 -



**Cross-section Diagram of the E3 Electronic Unit Injector**

The metering and timing of fuel introduction is determined by a Motor Control Module ("MCM") that sends an electronic signal that activates the injector solenoid. (*Id*. at KTP113157.) The E3 EUI performs four functions, including metering and injecting the exact amount of fuel needed for the engine cycle. (*Id*. at KTP113158.) Engine combustion is obtained when the E3 EUI injects under pressure a small quantity of accurately metered and finely atomized fuel into the cylinder. (*Id*.)

During operation, a plunger operates up and down in the body bore of the injector. The motion of the injector rocker arm is transmitted to the plunger and follower that bears against a follower spring. As the piston of the Series 60 engine moves approximately two-thirds of the way up in the cylinder on the compression stroke, an injector cam lobe begins to lift causing the injector rocker arm to push down on the follower and the plunger. Just before injection

- 4 -

1  begins, the MCM sends an electronic pulse that turns on the injector solenoid.
2  The energized solenoid creates a magnetic force that closes the control valve
3  and traps fuel under the plunger and passages leading down to the needle valve.
4  The fuel pressure increases as the plunger continues its downward stroke.  This
5  fuel pressure acts on the needle valve, and when it creates a force high enough
6  to overcome the valve spring force holding the needle on its seat, the needle
7  valve moves up, allowing the high pressure fuel to spray into the combustion
8  chamber. The high pressure of the fuel passing through the small holes in the
9  nozzle creates a finely atomized spray for combustion within the cylinder.  (*Id.*
10  at KTP113159.)

11     After the pulse width time has passed, the MCM turns off the current to
12  the injector solenoid.  The de-energized solenoid allows a spring to open the
13  control valve, permitting the trapped fuel to spill down, dropping the pressure
14  within the injector. When the pressure is low enough the needle valve closes and
15  ends injection.  The MCM controls the beginning of injection and metering of
16  the fuel in relation to the crankshaft position, with injection beginning soon after
17  the control valve is closed. The valve closing point, known as the injector
18  response time, is returned to the MCM.  This information is used to monitor and
19  adjust injection timing, thus removing injector-to-injector variation influences
20  on timing. The amount of fuel injected depends on the pulse width stored in the
21  calibration which determines how long the control valve remains closed; the
22  larger the pulse width the longer the valve is closed and the more fuel is
23  injected.  When the injector rocker arm has completed its downward travel the
24  injector follower spring returns it to the starting position. As the plunger moves
25  up fuel enters the injector pumping cavity for another injection cycle.  (*Id.*)

26     To test the operation of the Series 60 engine, two current probes were
27  electrically coupled to the E3 fuel injector via the wiring harness shown above
28  as element 11.  Specifically, the current probes were connected to a violet wire

- 5 -

and a red wire of the E3 fuel injector. These connections are shown in the photograph below.



**Current Probe Connections to the E3 Electronic Unit Injector**

The fuel injector and in-cylinder pressure sensor were mounted to the same cylinder. The electronic signals measured from the red and violet wires of the E3 EUI are shown in Exhibit A. The current probe measurements of the Series 60 reveal that the fuel injector is operated in two different modes: a single-injection mode and a multiple-injection mode. Examples of the purple

- 6 -

and red wire signals are shown below for single-injection and multiple-injection operation, respectively.





Detroit Diesel touts the ability of its Series 60 engine to implement multiple injections of fuel per cycle.  *See*, *e.g.*, Detroit Diesel Series 60 operation video (KTP112659 (animation describing and depicting two injections of fuel per cycle).)  When the engine is operating in multiple injection mode, "[j]ust before the piston reaches top dead center, the SMART Injector releases a pilot injection of diesel fuel. This is the first of two injections." (*Id.*)

Detroit Diesel has a history of designing fuel injection systems that are capable of multiple injections of fuel and rate-shaped introductions of fuel per cycle, and it has sought widespread patent protection for technology in these

- 7 -

1  areas.  *See*, *e.g.*, U.S. Patent Nos. 5,445,128 and 6,516,782; U.S. Patent Nos.

2  6,227,175 and 7,097,115 (systems that use pilot injections and fuel rate-

3  shaping); U.S. Patent No. 6,848,414 (systems that switch between single-

4  injection and multiple-injection modes of operation); and U.S. Patent No.

5  7,628,139 (systems using piezo-electric actuators to control multiple injections

6  of fuel per cycle).

7       To test the operation of the Series 60, engine parameters were input into

8  the AVL IndiModul, including the compression ratio, stroke, and rod length.

9  The engine was then "motored" to allow identification of the top dead center

10  ("TDC") position of the instrumented cylinder and to establish a motoring

11  pressure curve for the AVL IndiModul.  After the TDC determination was

12  complete, the AVL IndiModul was used to chart signals as a function of crank

13  angle relative to TDC.

14       Dynamometer data was collected at certain engine operating speeds

15  (RPM) and engine loads (percentage of maximum load).  The specific engine

16  speeds and loads tested are reflected in the test data.  In some conditions, the

17  load is represented as a percentage of maximum load for the specified operating

18  speed.  In other conditions, the load is represented by a horsepower value (HP).

19       For each engine speed and load tested, the Mustang Dynamometer was

20  set to apply to the vehicle wheels the calculated horsepower corresponding to

21  the test load of interest.  The test vehicle was operated to drive the wheels (and

22  the dynamometer rollers) at the test RPM of interest.  Once the engine reached a

23  steady state of operation in each tested condition, the AVL IndiModul was

24  triggered to record the signals for one-hundred consecutive combustion cycles.

25  Dynamometer testing was also conducted on transient modes of operation for

26  the Series 60.  For testing of transient conditions, testing was initiated at a

27  steady engine speed and the vehicle was accelerated through a range of engine

28  speeds.  One-hundred combustion cycles were recorded during the transition

- 8 -

1   from the starting speed to the ending speed.  For both steady-state conditions
2   and transient conditions, heat release and average cylinder temperature data
3   were derived from the recorded data using standard library functions from the
4   AVL software.

5        Exemplary cylinder pressure versus crank angle plots are provided in
6   Exhibit A.  Plots of heat release were generated by the IndiCom software, and
7   exemplary heat release plots are provided in Exhibit A.  Plots of Cylinder
8   Pressure versus Volume and (calculated) Average Cylinder Temperature versus
9   Volume were generated, and exemplary P-V plots and T-V plots are provided in
10  Exhibit A.

11       Plots of temperature versus crank angle are provided in Exhibit A at the
12  request of Detroit Diesel and the other defendants in this action.  Defendants
13  have repeatedly demanded that Kruse provide temperature versus crank angle
14  plots in its infringement contentions, and Kruse has refused to do so.  Kruse has
15  provided these plots to defendants to move the case forward in a spirit of
16  cooperation, and to avoid the need for Court involvement on this dispute.  To be
17  clear, Kruse is not relying upon the temperature versus crank angle
18  plots provided herein to assess whether an engine is practicing a substantially
19  isothermal combustion process (as is recited in Claim 1 of the '562 patent and
20  Claim 9 of the '904 patent) or is limiting the maximum combustion temperature
21  (as is recited in Claim 1 of the '704 patent).  Kruse is relying upon temperature
22  versus volume plots to assess (1) whether an engine is practicing a substantially
23  isothermal combustion process, and (2) whether an engine is limiting the
24  maximum combustion temperature.  Kruse reserves its right to object to the use
25  of the temperature versus crank angle plots presented herein for purposes of
26  claim construction, non-infringement, invalidity, or any other purpose.

27       The test data related to Exhibit A is produced at KRUSE-DD000002.
28  ///

- 9 -

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle manufacturers that produce vehicles equipped with the Detroit Diesel Accused Engines, such as Western Star Truck Sales, Inc. ("Western Star") and Daimler Trucks North America LLC ("Daimler Trucks"), directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions. Likewise, vehicle dealers and vehicle customers who purchase vehicles equipped with Detroit Diesel Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1.    Inducement (35 U.S.C. § 271(b))

Detroit Diesel actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. Detroit Diesel knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims. Detroit Diesel's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicle manufacturers with Accused Engines that practice the claimed methods when used under normal operating conditions.

### 2.    Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have

- 10 -

a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.   Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.   Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.   To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.   Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Detroit Diesel's infringement of Kruse's patents has been and continues to be willful, intentional, and deliberate with full knowledge of the '562 Patent, the '904 Patent, and the '704 Patent.  At least as early as July 1998 Detroit

- 11 -

Diesel was aware of the '562 Patent.  On July 9, 1998, Mr. Douglas C. Kruse sent separate letters to Detroit Diesel personnel, including Roger S. Penske, Ludvik F. Koci, Charles G. McClure, David F. Merrion, John F. Farmer, Mark F. Bara, and Dennis J. Jarvi, offering to license Limited Temperature Cycle technology to Detroit Diesel.  Enclosed with each of these letters was a cooperative research proposal identifying U.S. Patent No. 5,265,562, among other patents and pending applications, relating to the Limited Temperature Cycle technology.

On September 11, 1998, Mr. Kruse made a presentation to a number of Detroit Diesel directors and engineers in Detroit, Michigan.  During this presentation, Mr. Kruse again disclosed the '562 Patent, among others, to Detroit Diesel personnel and proposed a cooperative research partnership.  Mr. Kruse showed the presentation attendees how Detroit Diesel could use the Limited Temperature Cycle concept to meet or exceed EPA emissions requirements.  Subsequently, David F. Merrion of Detroit Diesel included the Limited Temperature Cycle technology in Detroit Diesel's list of proposed demonstration projects presented to the EPA.

In October 1998, Detroit Diesel signed a consent decree with the EPA in response to Civil Action No. 98-2548 filed under the Clean Air Act.  Shortly thereafter, Mr. Kruse sent separate letters dated January 5, 1999 to Detroit Diesel personnel, including Bill C. Panagos, Josh Yaker, and David F. Merrion, submitting a "Third Party Project" for consideration by Detroit Diesel within the context of the consent decree.  Enclosed with each of these letters was a copy of the third-party project proposal based on the patented Limited Temperature Cycle technology.  On January 20, 1999, Timothy S. Tindall of Detroit Diesel sent Mr. Kruse a letter informing him that his proposal had been received and a decision on the proposal would be made in the near future.  Mr. Tindall again sent Mr. Kruse a letter on July 8, 1999 informing Mr. Kruse that Detroit Diesel

- 12 -

was now beginning to review the project proposals.  Further, Mr. Tindall indicated that Detroit Diesel did not require any additional information having already availed itself of the opportunity to meet with Mr. Kruse regarding his technology.

On February 24, 1999, Mr. Kruse sent Helmut Werner of Penske Capital Partners, L.L.C. ("Penske") a letter informing Mr. Werner of the existence of a number of Kruse patents including the '562 Patent.  At the time, Penske was Detroit Diesel's major shareholder.

On October 3, 2002, Mr. Kruse sent Mr. Tindall a letter offering consulting services to Detroit Diesel.  In this letter, Mr. Kruse disclosed the '704 Patent as relating to the Limited Temperature Cycle technology.

On January 28, 2010, Kruse's counsel sent Detroit Diesel a letter informing Detroit Diesel that it may be infringing Kruse's patents and enclosing a copy of each of the patents.  Despite being aware of Kruse's patents for a number of years, Detroit Diesel asked for several extensions to review the enclosed patents.  On February 18, 2010, Detroit Diesel wrote Kruse's counsel a letter asking the identity of the specific claims infringed and requesting an extension to review the claims.   Kruse's counsel responded with a non-exhaustive list of exemplary claims.  Subsequently, Detroit Diesel responded on March 5, 2010 by asking for an additional extension to investigate Kruse's patents.  On April 19, 2010, Detroit Diesel again sent Kruse's counsel a letter asking for a further extension of time to review Kruse's patents.

To this day, Detroit Diesel continues to use, sell, and offer to sell the Accused Engines.

## II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

///

- 13 -

**A.**   **N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.**   **N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.**   **N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.**   **N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–20977.

**E.**   **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 14 -

### III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 12, 2011          By:  */s/ David G. Jankowski*

John B. Sganga, Jr.
Karen Vogel Weil
Jon W. Gurka
David G. Jankowski
Marko R. Zoretic

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

11227818

- 15 -

# PAGES 324 THROUGH 376

# FILED UNDER SEAL

# EXHIBIT 5

1   John B. Sganga, Jr. (CSB # 116,211)
    jsganga@kmob.com
2   Karen Vogel Weil (CSB # 145,066)
    kweil@kmob.com
3   Jon W. Gurka (CSB # 187,964)
    jgurka@kmob.com
4   David G. Jankowski (CSB # 205,634)
    djankowski@kmob.com
5   Marko R. Zoretic (CSB # 233,952)
    mzoretic@kmob.com
6   KNOBBE, MARTENS, OLSON & BEAR, LLP
7   2040 Main Street, Fourteenth Floor
    Irvine, CA 92614
8   Telephone:  (949) 760-0404
    Facsimile:   (949) 760-9502
9

10  Attorneys for Plaintiff/Counterdefendant
    KRUSE TECHNOLOGY PARTNERSHIP
11

12          **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                  **SOUTHERN DIVISION**

| | |
|---|---|
| 15  KRUSE TECHNOLOGY PARTNERSHIP, | ) Civil Action No. ) SACV 10-1066 JVS (RNBx) |
| 16                          Plaintiff, | ) |
| 17       v. | ) **KRUSE TECHNOLOGY** ) **PARTNERSHIP'S [PROPOSED]** |
| 18  DAIMLER AG; MERCEDES-BENZ | ) **FIFTH AMENDED DISCLOSURE** ) **OF ASSERTED CLAIMS AND** |
| 19  USA, LLC; DETROIT DIESEL | ) **INFRINGEMENT CONTENTIONS** ) **TO DEFENDANT WESTERN** |
| 20  CORPORATION; WESTERN STAR TRUCK SALES, INC.; | ) **STAR TRUCK SALES, INC.** ) |
| 21  VOLKSWAGEN AG; VOLKSWAGEN GROUP OF | ) ) |
| 22  AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER | ) ) |
| 23  GROUP LLC,; DAIMLER TRUCKS NORTH AMERICA LLC,, | ) ) |
| 24  MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and | ) ) |
| 25  DAIMLER VANS MANUFACTURING LLC, | ) ) |
| 26                          Defendants. | ) ) |
| 27  AND RELATED COUNTERCLAIM | ) ) |
| 28 | ) |

            HIGHLY CONFIDENTIAL – OUTSIDE
            ATTORNEYS' EYES ONLY INFORMATION

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Fifth Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Western Star Truck Sales, Inc., ("Western Star") and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

# I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

## N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Western Star Truck Sales, Inc. ("Western Star") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Western Star infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

## N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Western Star performs the methods recited in each of the asserted claims of Kruse's patents at least when Western Star operates its vehicles equipped with the Series 60 family of diesel engines ("Accused Engines") from Detroit Diesel Corporation ("Detroit Diesel").  The asserted claims are method claims, and Western Star directly infringes Kruse's patents when it (or others on Western Star's behalf) operates vehicles equipped with the

- 1 -

Series 60 family of engines under one or more engine speed and load conditions through operational testing of vehicles equipped with the engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States. The following chart identifies the Accused Engines by EPA Engine Family and Model Year:

| Detroit Diesel | |
|---|---|
| EPA Engine Family | Model Year |
| _DDXH14.0ELY | 2007–2009 |
| _DDXH14.0ELC | 2008 |
| _DDXH14.0ELD | 2009 |

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibit A provides claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines. Exhibit A provides exemplary test results for Series 60 diesel engines (as incorporated in a 2008 Freightliner CL 120, VIN 1FUJA6CK48DZ82131).

A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis Dynamometer, was used during testing. The Mustang dynamometer is an electric-type dynamometer having a set of rollers arranged to engage the drive wheels of vehicles and to apply loads to those wheels. The Mustang dynamometer includes a workstation that allows a user to control operation of the dynamometer and to display operational parameters of the dynamometer

- 2 -

1    during use, such as wheel speed (mph), horsepower, torque, engine RPM, and
2    other parameters.

3          The test results were obtained using an AVL IndiModul and IndiCom
4    software.  One channel of the AVL IndiModul was connected to an AVL angle
5    encoder.  The angle encoder was mounted to the front end of each engine by
6    way of a custom-designed mounting bracket.  Thus, the angle encoder would
7    measure the rotation of the crankshaft of the engine.  Another channel of the
8    AVL IndiModul was connected to an AVL FlexIFEM charge amplifier, which
9    in turn was connected to an in-cylinder pressure sensor (AVL Model No.
10   GH13P) that was used to measure in-cylinder pressure.  The pressure sensor
11   was mounted in the combustion chamber of one cylinder.  Traces of the in-
12   cylinder pressure measured as a function of crank angle are shown in Exhibit A.

13         The Series 60 engine includes one fuel injector per cylinder.  The injector
14   is called the E3 Electronic Unit Injector ("E3 EUI"), and it includes two
15   solenoids.  (*See*, *e.g.*, Series 60 Workshop Manual (KTP112660–113695) at
16   KTP113156.)  A fuel metering unit is positioned under a plunger.  The E3 has
17   an inwardly opening of a solenoid valve that controls the beginning of injection
18   and the end of injection.  (*Id.*)  The solenoid valve closing point defines the
19   beginning of injection and the solenoid valve opening point defines the end of
20   injection.  (*Id.*)  Pressure is generated by the downward movement of the
21   plunger in combination with the closed solenoid valve.  Fuel quantity is metered
22   by the length of time the solenoid valve remains closed.  A magnetic core is
23   incorporated into the module, and electrical leads from the core are brought to
24   an external position on the injector through a modular four-pin connector
25   socket.  (*Id.*)  A diagram of the electronic fuel injector is provided below.  (*See*
26   Series 60 Manual at Fig. 2-3 (KTP1113157).)

27   / / /

28   / / /

- 3 -



**Cross-section Diagram of the E3 Electronic Unit Injector**

The metering and timing of fuel introduction is determined by a Motor Control Module ("MCM") that sends an electronic signal that activates the injector solenoid.  (*Id*. at KTP113157.)  The E3 EUI performs four functions, including metering and injecting the exact amount of fuel needed for the engine cycle.  (*Id*. at KTP113158.)  Engine combustion is obtained when the E3 EUI injects under pressure a small quantity of accurately metered and finely atomized fuel into the cylinder.  (*Id*.)

During operation, a plunger operates up and down in the body bore of the injector. The motion of the injector rocker arm is transmitted to the plunger and follower that bears against a follower spring.  As the piston of the Series 60 engine moves approximately two-thirds of the way up in the cylinder on the compression stroke, an injector cam lobe begins to lift causing the injector rocker arm to push down on the follower and the plunger.  Just before injection

- 4 -

1    begins, the MCM sends an electronic pulse that turns on the injector solenoid.

2    The energized solenoid creates a magnetic force that closes the control valve

3    and traps fuel under the plunger and passages leading down to the needle valve.

4    The fuel pressure increases as the plunger continues its downward stroke.  This

5    fuel pressure acts on the needle valve, and when it creates a force high enough

6    to overcome the valve spring force holding the needle on its seat, the needle

7    valve moves up, allowing the high pressure fuel to spray into the combustion

8    chamber. The high pressure of the fuel passing through the small holes in the

9    nozzle creates a finely atomized spray for combustion within the cylinder.  (*Id*.

10    at KTP113159.)

11    After the pulse width time has passed, the MCM turns off the current to

12    the injector solenoid.  The de-energized solenoid allows a spring to open the

13    control valve, permitting the trapped fuel to spill down, dropping the pressure

14    within the injector. When the pressure is low enough the needle valve closes and

15    ends injection.  The MCM controls the beginning of injection and metering of

16    the fuel in relation to the crankshaft position, with injection beginning soon after

17    the control valve is closed. The valve closing point, known as the injector

18    response time, is returned to the MCM.  This information is used to monitor and

19    adjust injection timing, thus removing injector-to-injector variation influences

20    on timing. The amount of fuel injected depends on the pulse width stored in the

21    calibration which determines how long the control valve remains closed; the

22    larger the pulse width the longer the valve is closed and the more fuel is

23    injected.  When the injector rocker arm has completed its downward travel the

24    injector follower spring returns it to the starting position. As the plunger moves

25    up fuel enters the injector pumping cavity for another injection cycle.  (*Id*.)

26    To test the operation of the Series 60 engine, two current probes were

27    electrically coupled to the E3 fuel injector via the wiring harness shown above

28    as element 11.  Specifically, the current probes were connected to a violet wire

and a red wire of the E3 fuel injector.  These connections are shown in the photograph below.



**Current Probe Connections to the E3 Electronic Unit Injector**

The fuel injector and in-cylinder pressure sensor were mounted to the same cylinder.  The electronic signals measured from the red and violet wires of the E3 EUI are shown in Exhibit A.  The current probe measurements of the Series 60 reveal that the fuel injector is operated in two different modes: a single-injection mode and a multiple-injection mode.  Examples of the purple

- 6 -

and red wire signals are shown below for single-injection and multiple-injection operation, respectively.





Detroit Diesel touts the ability of its Series 60 engine to implement multiple injections of fuel per cycle.  *See*, *e.g.*, Detroit Diesel Series 60 operation video (KTP112659 (animation describing and depicting two injections of fuel per cycle).)  When the engine is operating in multiple injection mode, "[j]ust before the piston reaches top dead center, the SMART Injector releases a pilot injection of diesel fuel. This is the first of two injections." (*Id.*)

Detroit Diesel has a history of designing fuel injection systems that are capable of multiple injections of fuel and rate-shaped introductions of fuel per cycle, and it has sought widespread patent protection for technology in these

- 7 -

areas.  *See*, *e.g*., U.S. Patent Nos. 5,445,128 and 6,516,782; U.S. Patent Nos. 6,227,175 and 7,097,115 (systems that use pilot injections and fuel rate-shaping); U.S. Patent No. 6,848,414 (systems that switch between single-injection and multiple-injection modes of operation); and U.S. Patent No. 7,628,139 (systems using piezo-electric actuators to control multiple injections of fuel per cycle).

To test the operation of the Series 60, engine parameters were input into the AVL IndiModul, including the compression ratio, stroke, and rod length. The engine was then "motored" to allow identification of the top dead center ("TDC") position of the instrumented cylinder and to establish a motoring pressure curve for the AVL IndiModul.  After the TDC determination was complete, the AVL IndiModul was used to chart signals as a function of crank angle relative to TDC.

Dynamometer data was collected at certain engine operating speeds (RPM) and engine loads (percentage of maximum load).  The specific engine speeds and loads tested are reflected in the test data.  In some conditions, the load is represented as a percentage of maximum load for the specified operating speed.  In other conditions, the load is represented by a horsepower value (HP).

For each engine speed and load tested, the Mustang Dynamometer was set to apply to the vehicle wheels the calculated horsepower corresponding to the test load of interest.  The test vehicle was operated to drive the wheels (and the dynamometer rollers) at the test RPM of interest.  Once the engine reached a steady state of operation in each tested condition, the AVL IndiModul was triggered to record the signals for one-hundred consecutive combustion cycles. Dynamometer testing was also conducted on transient modes of operation for the Series 60.  For testing of transient conditions, testing was initiated at a steady engine speed and the vehicle was accelerated through a range of engine speeds.  One-hundred combustion cycles were recorded during the transition

from the starting speed to the ending speed.  For both steady-state conditions and transient conditions, heat release and average cylinder temperature data were derived from the recorded data using standard library functions from the AVL software.

Exemplary cylinder pressure versus crank angle plots are provided in Exhibit A.  Plots of heat release were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibit A.  Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibit A.

Plots of temperature versus crank angle are provided in Exhibit A at the request of Western Star and the other defendants in this action.  Defendants have repeatedly demanded that Kruse provide temperature versus crank angle plots in its infringement contentions, and Kruse has refused to do so.  Kruse has provided these plots to defendants to move the case forward in a spirit of cooperation, and to avoid the need for Court involvement on this dispute.  To be clear, Kruse is not relying upon the temperature versus crank angle plots provided herein to assess whether an engine is practicing a substantially isothermal combustion process (as is recited in Claim 1 of the '562 patent and Claim 9 of the '904 patent) or is limiting the maximum combustion temperature (as is recited in Claim 1 of the '704 patent).  Kruse is relying upon temperature versus volume plots to assess (1) whether an engine is practicing a substantially isothermal combustion process, and (2) whether an engine is limiting the maximum combustion temperature.  Kruse reserves its right to object to the use of the temperature versus crank angle plots presented herein for purposes of claim construction, non-infringement, invalidity, or any other purpose.

The test data related to Exhibit A is produced at KRUSE-WS000002.

///

- 9 -

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase or take possession of Western Star vehicles equipped with the Accused Engines directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions.  Western Star's engine suppliers, such as Detroit Diesel, also directly infringe Kruse's patents at least when operationally testing each engine, and through that operational testing, perform the claimed methods.

### 1.      Inducement (35 U.S.C. § 271(b))

Western Star actively induces vehicle dealers and vehicle customers to infringe the asserted methods by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.  Western Star's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicles equipped with the Accused Engines that practice the claimed methods when used under normal operating conditions to vehicle dealers and customers.

### 2.      Contributory Infringement (35 U.S.C. § 271(c))

Western Star has manufactured, offered for sale, and sold vehicles containing the Accused Engines.  The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.  Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed

- 10 -

methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.  Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

/ / /

- 11 -

**B.**   **N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.**   **N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.**   **N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–20977.

**E.**   **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 12 -

**III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3)**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 12, 2011          By:  */s/ David G. Jankowski*
                                        John B. Sganga, Jr.
                                        Karen Vogel Weil
                                        Jon W. Gurka
                                        David G. Jankowski
                                        Marko R. Zoretic

                                        Attorneys for Plaintiff/Counterdefendant
                                        KRUSE TECHNOLOGY PARTNERSHIP

11229946

- 13 -

Exhibit 5

# PAGES 391 THROUGH 443

# FILED UNDER SEAL

# EXHIBIT 6

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:   (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC,, MERCEDES-BENZ, U.S. INTERNATIONAL, INC., and DAIMLER VANS MANUFACTURING LLC,<br><br>　　　　　Defendants. | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**KRUSE TECHNOLOGY PARTNERSHIP'S [PROPOSED] NINTH AMENDED DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.** |
| AND RELATED COUNTERCLAIM | |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Ninth Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Volkswagen Group of America, Inc. ("VWGoA"), and accompanying document production.   Kruse makes the following disclosures based on information presently available and located by Kruse.   Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that VWGoA infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that VWGoA infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that VWGoA performs the methods recited in each of the asserted claims of Kruse's patents when VWGoA operates its 1.9L TDI, 2.0L TDI and 3.0L TDI diesel engines (collectively, the "Accused Engines").

The asserted claims are method claims, and VWGoA directly infringes Kruse's patents when it (or others on VWGoA's behalf) operates the Accused Engines in the U.S. under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the

1  engines, and through that operation, performs the claimed methods.

2  Kruse contends that VWGoA operates the Accused Engines in the United
3  States in connection with certifying the Accused Engines for compliance with the
4  United States Environmental Protection Agency ("EPA") and with California Air
5  Resources Board ("CARB") regulations.  VWGoA works in conjunction with its
6  subsidiary Volkswagen AG ("VW AG") to operationally test and certify the
7  Accused Engines with the appropriate U.S. government regulatory agencies.
8  VWGoA tests engines for EPA compliance at a facility in Westlake Village,
9  California.  Testing is performed under VW AG's supervision and control, as
10  evidenced by the EPA Applications for Certification for the Accused Engines,
11  which list representatives from VW AG.  CARB Executive Orders for the
12  Accused Engines likewise list VW AG as the applicant.

13  Kruse understands that the Accused Engines are certified by the United
14  States Environmental Protection Agency ("EPA") to allow the engines to be sold
15  and operated in the United States.  The following chart identifies the Accused
16  Engines by EPA Engine Family:

17

18
| EPA Engine Family | Model Year |
| --- | --- |
| _VWXV02.035N | 2009 |
| _VWXV02.0U5N | 2009–2011 |
| _VWXV02.0234 | 2004–2005 |
| _ADXT03.03LD | 2009–2010 |
| _ADXT03.02UG | 2011 |
| _ADXT03.03UG | 2011 |
| _VWXV01.9233 | 2004–2005 |
| _VWXV01.9236 | 2004–2006 |
| _VWXV01.9238 | 2006 |

**Page 446**                                    **Exhibit 6**

1    In addition to EPA and CARB testing, VWGoA manufactures, operates,
2    and tests vehicles equipped with Accused Engines in the United States at its
3    Vehicle Production Facility in Chattanooga, Tennessee.  The Accused Engines
4    also undergo road testing in the United States under the supervision and control of
5    VW AG and VWGoA, including hot weather testing. Further, vehicles equipped
6    with Accused Engines are operated at port processing facilities in the U.S. (e.g.,
7    Brunswick, Georgia; Davisville, Rhode Island; Houston, Texas; San Diego,
8    California, and Wilmington, Delaware).

9    Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse
10   reserves the right to amend these contentions and disclosures as new facts are
11   learned in discovery.

12   **N.D. Cal. Patent L.R. 3-1(c)**

13   Exhibits A, B, C, and D provide claim charts and exemplary dynamometer
14   test results that relate the limitations of the asserted method claims to the
15   operation of the Accused Engines.  Exhibit A provides exemplary test results for
16   2.0L TDI diesel engines (as incorporated in a 2009 Volkswagen Jetta with an
17   automatic gearbox, VIN 3VWRL71K99M062625).  Exemplary test results shown
18   in Exhibit A were obtained while the vehicle was operating in fifth gear.  Exhibit
19   B provides exemplary test results for 3.0L TDI diesel engines (as incorporated in
20   a 2010 Audi Q7, VIN WA1CMBFE8AD002812).  Exhibit C provides exemplary
21   test results for 1.9L TDI (BRM) diesel engines (as incorporated in a 2006
22   Volkswagen Jetta, VIN 3VWDT71K96M798177).  Exhibit D provides exemplary
23   test results for 1.9L TDI (BEW) diesel engines (as incorporated in a 2004
24   Volkswagen Jetta Wagon VIN WVWSR61J24W174762).

25   A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis
26   Dynamometer, was used during testing.  The Mustang dynamometer is an
27   electric-type dynamometer having a set of rollers arranged to engage the drive
28   wheels of vehicles and to apply loads to those wheels.   The Mustang

1   dynamometer includes a workstation that allows a user to control operation of the

2   dynamometer and to display operational parameters of the dynamometer during

3   use, such as wheel speed (mph), horsepower, torque, engine RPM, and other

4   parameters.

5       The test results were obtained using an AVL IndiModul and IndiCom

6   software.  One channel of the AVL IndiModul was connected to an AVL angle

7   encoder.  The angle encoder was mounted to the front end of each engine by way

8   of a custom-designed mounting bracket.  Thus, the angle encoder would measure

9   the rotation of the crankshaft of the engine.  Another channel of the AVL

10  IndiModul was connected to an AVL FlexIFEM charge amplifier, which in turn

11  was connected to an in-cylinder pressure sensor (AVL Model No. GH13P) that

12  was used to measure in-cylinder pressure.  The pressure sensor was mounted in

13  the combustion chamber of one cylinder.  Other channels of the AVL IndiModul

14  were connected to probes, which, in turn, were connected to power wires of the

15  fuel injector mounted to the same cylinder as the pressure sensor, which allowed

16  for detection of the electronic signals issued to the fuel injectors during operation.

17  Traces of these signals are shown in Exhibits A, B, C, and D.

18      For each engine, the test procedure followed the same general protocol.

19  First, engine parameters were input into the AVL IndiModul, including the

20  compression ratio, stroke, and rod length.  The engine was then "motored" to

21  allow identification of the top dead center ("TDC") position of the instrumented

22  cylinder and to establish a motoring pressure curve for the AVL IndiModul.  After

23  the TDC determination was complete, the AVL IndiModul was used to chart

24  signals as a function of crank angle relative to TDC.

25      Dynamometer data was collected at certain engine operating speeds (RPM)

26  and engine loads (percentage of maximum load).  The specific engine speeds and

27  loads tested are reflected in the test data.

28  / / /

**Page 448**                                                          **Exhibit 6**

1    For each engine speed and load tested, the Mustang Dynamometer was set
2    to apply to the vehicle wheels the calculated horsepower corresponding to the test
3    load of interest.   The test vehicle was operated to drive the wheels (and the
4    dynamometer rollers) at the test RPM of interest.   Once the engine reached a
5    steady state of operation in each tested condition, the AVL IndiModul was
6    triggered to record the signals for one-hundred consecutive combustion cycles.
7    Heat release and average cylinder temperature data were derived from the
8    recorded data using standard library functions from the AVL software.

9    Exemplary cylinder pressure versus crank angle plots are provided in
10   Exhibits A, B, C, and D.  Plots of heat release were generated by the IndiCom
11   software, and exemplary heat release plots are provided in Exhibits A, B, C, and
12   D.  Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder
13   Temperature versus Volume were generated, and exemplary P-V plots and T-V
14   plots are provided in Exhibits A, B, C, and D.

15   Plots of temperature versus crank angle are provided in Exhibits A, B, C,
16   and D at the request of the defendants in this action.  Defendants have repeatedly
17   demanded that Kruse provide temperature versus crank angle plots in its
18   infringement contentions, and Kruse has refused to do so.  Kruse is now providing
19   these plots to defendants to move the case forward in a spirit of cooperation, and
20   to avoid the need for Court involvement on this dispute.  To be clear, Kruse is not
21   relying upon the temperature versus crank angle plots provided herein to assess
22   whether an engine is practicing a substantially isothermal combustion process (as
23   is recited in Claim 1 of the '562 patent and Claim 9 of the '904 patent) or is
24   limiting the maximum combustion temperature (as is recited in Claim 1 of the
25   '704 patent).  Kruse is relying upon temperature versus volume plots to assess (1)
26   whether an engine is practicing a substantially isothermal combustion process,
27   and (2) whether an engine is limiting the maximum combustion temperature.
28   Kruse reserves its right to object to the use of the temperature versus crank angle

**Page 449**                                                              **Exhibit 6**

plots   presented   herein   for purposes   of   claim   construction,   non-infringement, invalidity, or any other purpose.

The test data related to Exhibits A, B, C, and D is produced at KRUSE-VW000002–KRUSE-VW000004.

Kruse contends that operation of the 2.0L TDI engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load |
|----------|----------|----------|
| 2800 RPM | 2000 RPM | 2000 RPM |
|          | 2200 RPM | 2400 RPM |
|          | 2400 RPM | 2600 RPM |
|          | 2800 RPM |          |
|          | 3000 RPM |          |

Kruse contends that operation of the 3.0L TDI engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load | 100% Load |
|----------|----------|----------|-----------|
| 2000 RPM | 2000 RPM | 2000 RPM | 2000 RPM  |
| 2400 RPM | 2400 RPM | 3200 RPM | 2400 RPM  |
|          |          |          | 2800 RPM  |
|          |          |          | 3200 RPM  |
|          |          |          | 3600 RPM  |
|          |          |          | 4000 RPM  |

Kruse contends that operation of the 1.9L TDI (BRM) engine infringes the asserted method claims under at least the following speed and load conditions:

/ / /

**Page 450**                                        **Exhibit 6**

| 25% Load | 50% Load | 75% Load |
|---|---|---|
| 1800 RPM | 1600 RPM | 1800 RPM |
| | 1800 RPM | 2000 RPM |
| | 2000 RPM | 2200 RPM |
| | 2200 RPM | 2400 RPM |
| | 2400 RPM | 2600 RPM |
| | 2600 RPM | 2800 RPM |
| | 2800 RPM | |

Kruse contends that operation of the 1.9L TDI (BEW) engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load |
|---|---|---|
| 2100 RPM | 1500 RPM | 1500 RPM |
| 2200 RPM | 1600 RPM | 1600 RPM |
| 2300 RPM | 1700 RPM | 1700 RPM |
| 2500 RPM | 1800 RPM | 1800 RPM |
| 2700 RPM | 1900 RPM | 1900 RPM |
| | 2000 RPM | 2000 RPM |
| | 2100 RPM | 2100 RPM |
| | 2200 RPM | 2200 RPM |
| | 2300 RPM | 2300 RPM |
| | 2400 RPM | 2400 RPM |
| | 2500 RPM | 2500 RPM |
| | 2600 RPM | 2600 RPM |
| | 2700 RPM | 2700 RPM |

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase vehicles equipped with VWGoA Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

At least as early as August 2003, VW gained knowledge of the asserted patents when Mr. Malcolm White contacted VW in connection with Mr. White's efforts to license Mr. Kruse's patented technology. VW informed Mr. White that his inquiry was forwarded to the appropriate persons for review. VW AG and VWGoA communicate regularly with each other in the ordinary course of business on issues relating to engine research, development, and manufacture as the need arises.

At least as early as July 2010, VW further gained knowledge of the asserted patents upon being served with the Complaint in this action. VW has conducted its business operations, including assembling, testing, and selling vehicles equipped with engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

## 1.     Inducement (35 U.S.C. § 271(b))

VWGoA actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. VWGoA knows, or should know, that its actions directed towards vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims. VWGoA's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing dealers and customers with vehicles having the Accused Engines that practice the claimed methods when used under normal operating conditions.

/ / /

## 2.   Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.  Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.  Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II. DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092-18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59593, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.    N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.    N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.    N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

/ / /

/ / /

/ / /

**III. CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 17, 2011          By: */s/ David G. Jankowski*
                                  John B. Sganga, Jr.
                                  Karen Vogel Weil
                                  Jon W. Gurka
                                  David G. Jankowski
                                  Marko R. Zoretic

                                  Attorneys for Plaintiff/Counterdefendant
                                  KRUSE TECHNOLOGY PARTNERSHIP

11251685

# PAGES 456 THROUGH 670

# FILED UNDER SEAL

# EXHIBIT 7

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:   (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC,, MERCEDES-BENZ, U.S. INTERNATIONAL, INC., and DAIMLER VANS MANUFACTURING LLC,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**KRUSE TECHNOLOGY PARTNERSHIP'S [PROPOSED] NINTH AMENDED DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN AG** |

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY INFORMATION

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its [Proposed] Ninth Amended Disclosure of Asserted Claims and Infringement Contentions to Defendant Volkswagen AG ("VW AG"), and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I. <u>DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)</u>

**<u>N.D. Cal. Patent L.R. 3-1(a)</u>**

Kruse asserts that VW AG infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that VW AG infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

**<u>N.D. Cal. Patent L.R. 3-1(b)</u>**

Kruse asserts that VW AG performs the methods recited in each of the asserted claims of Kruse's patents when VW AG operates its 1.9L TDI, 2.0L TDI, and 3.0L TDI diesel engines (collectively, the "Accused Engines").

The asserted claims are method claims, and VW AG directly infringes Kruse's patents when it (or others on VW AG's behalf) operates the Accused Engines in the U.S. under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the

- 1 -

1  engines, and through that operation, performs the claimed methods.

2      Kruse contends that VW AG operates the Accused Engines in the United
3  States in connection with certifying the Accused Engines for compliance with the
4  United States Environmental Protection Agency ("EPA") and with California Air
5  Resources Board ("CARB") regulations.  VW AG works in conjunction with its
6  subsidiary Volkswagen Group of America ("VWGoA") to operationally test and
7  certify the Accused Engines with the appropriate U.S. government regulatory
8  agencies.  VWGoA tests engines for EPA compliance at a facility in Westlake
9  Village, California.  Testing is performed under VW AG's supervision and
10  control, as evidenced by the EPA Applications for Certification for the Accused
11  Engines, which list representatives from VW AG.  CARB Executive Orders for
12  the Accused Engines likewise list VW AG as the applicant.

13      Kruse understands that the Accused Engines are certified by the United
14  States Environmental Protection Agency ("EPA") to allow the engines to be sold
15  and operated in the United States.  The following chart identifies the Accused
16  Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV02.035N | 2009 |
| _VWXV02.0U5N | 2009–2011 |
| _VWXV02.0234 | 2004–2005 |
| _ADXT03.03LD | 2009–2010 |
| _ADXT03.02UG | 2011 |
| _ADXT03.03UG | 2011 |
| _VWXV01.9233 | 2004–2005 |
| _VWXV01.9236 | 2004–2006 |
| _VWXV01.9238 | 2006 |

- 2 -

In addition to EPA and CARB testing, VWGoA manufactures, operates, and tests vehicles equipped with Accused Engines in the United States at its Vehicle Production Facility in Chattanooga, Tennessee. The Accused Engines also undergo road testing in the United States under the supervision and control of VW AG and VWGoA, including hot weather testing. Further, vehicles equipped with Accused Engines are operated at port processing facilities in the U.S. (e.g., Brunswick, Georgia; Davisville, Rhode Island; Houston, Texas; San Diego, California, and Wilmington, Delaware).

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibits A, B, C, and D provide claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines. Exhibit A provides exemplary test results for 2.0L TDI diesel engines (as incorporated in a 2009 Volkswagen Jetta with an automatic gearbox, VIN 3VWRL71K99M062625). Exemplary test results shown in Exhibit A were obtained while the vehicle was operating in fifth gear. Exhibit B provides exemplary test results for 3.0L TDI diesel engines (as incorporated in a 2010 Audi Q7, VIN WA1CMBFE8AD002812). Exhibit C provides exemplary test results for 1.9L TDI (BRM) diesel engines (as incorporated in a 2006 Volkswagen Jetta, VIN 3VWDT71K96M798177). Exhibit D provides exemplary test results for 1.9L TDI (BEW) diesel engines (as incorporated in a 2004 Volkswagen Jetta Wagon VIN WVWSR61J24W174762).

A Mustang-brand chassis dynamometer, Model MD-1000 Truck Chassis Dynamometer, was used during testing. The Mustang dynamometer is an electric-type dynamometer having a set of rollers arranged to engage the drive wheels of vehicles and to apply loads to those wheels. The Mustang

- 3 -

1 dynamometer includes a workstation that allows a user to control operation of the
2 dynamometer and to display operational parameters of the dynamometer during
3 use, such as wheel speed (mph), horsepower, torque, engine RPM, and other
4 parameters.

5 The test results were obtained using an AVL IndiModul and IndiCom
6 software.  One channel of the AVL IndiModul was connected to an AVL angle
7 encoder.  The angle encoder was mounted to the front end of each engine by way
8 of a custom-designed mounting bracket.  Thus, the angle encoder would measure
9 the rotation of the crankshaft of the engine.  Another channel of the AVL
10 IndiModul was connected to an AVL FlexIFEM charge amplifier, which in turn
11 was connected to an in-cylinder pressure sensor (AVL Model No. GH13P) that
12 was used to measure in-cylinder pressure.  The pressure sensor was mounted in
13 the combustion chamber of one cylinder.  Other channels of the AVL IndiModul
14 were connected to probes, which, in turn, were connected to power wires of the
15 fuel injector mounted to the same cylinder as the pressure sensor, which allowed
16 for detection of the electronic signals issued to the fuel injectors during operation.
17 Traces of these signals are shown in Exhibits A, B, C, and D.

18 For each engine, the test procedure followed the same general protocol.
19 First, engine parameters were input into the AVL IndiModul, including the
20 compression ratio, stroke, and rod length.  The engine was then "motored" to
21 allow identification of the top dead center ("TDC") position of the instrumented
22 cylinder and to establish a motoring pressure curve for the AVL IndiModul.  After
23 the TDC determination was complete, the AVL IndiModul was used to chart
24 signals as a function of crank angle relative to TDC.

25 Dynamometer data was collected at certain engine operating speeds (RPM)
26 and engine loads (percentage of maximum load).  The specific engine speeds and
27 loads tested are reflected in the test data.
28 / / /

- 4 -

1    For each engine speed and load tested, the Mustang Dynamometer was set
2 to apply to the vehicle wheels the calculated horsepower corresponding to the test
3 load of interest.   The test vehicle was operated to drive the wheels (and the
4 dynamometer rollers) at the test RPM of interest.   Once the engine reached a
5 steady state of operation in each tested condition, the AVL IndiModul was
6 triggered to record the signals for one-hundred consecutive combustion cycles.
7 Heat release and average cylinder temperature data were derived from the
8 recorded data using standard library functions from the AVL software.

9    Exemplary cylinder pressure versus crank angle plots are provided in
10 Exhibits A, B, C, and D.   Plots of heat release were generated by the IndiCom
11 software, and exemplary heat release plots are provided in Exhibits A, B, C, and
12 D.   Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder
13 Temperature versus Volume were generated, and exemplary P-V plots and T-V
14 plots are provided in Exhibits A, B, C, and D.

15    Plots of temperature versus crank angle are provided in Exhibits A, B, C,
16 and D at the request of the defendants in this action.   Defendants have repeatedly
17 demanded that Kruse provide temperature versus crank angle plots in its
18 infringement contentions, and Kruse has refused to do so.   Kruse is now providing
19 these plots to defendants to move the case forward in a spirit of cooperation, and
20 to avoid the need for Court involvement on this dispute.   To be clear, Kruse is not
21 relying upon the temperature versus crank angle plots provided herein to assess
22 whether an engine is practicing a substantially isothermal combustion process (as
23 is recited in Claim 1 of the '562 patent and Claim 9 of the '904 patent) or is
24 limiting the maximum combustion temperature (as is recited in Claim 1 of the
25 '704 patent).   Kruse is relying upon temperature versus volume plots to assess (1)
26 whether an engine is practicing a substantially isothermal combustion process,
27 and (2) whether an engine is limiting the maximum combustion temperature.
28 Kruse reserves its right to object to the use of the temperature versus crank angle

- 5 -

plots    presented    herein    for purposes    of    claim    construction,    non-infringement, invalidity, or any other purpose.

The test data related to Exhibits A, B, C, and D is produced at KRUSE-VW000002–KRUSE-VW000004.

Kruse contends that operation of the 2.0L TDI engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load |
|----------|----------|----------|
| 2800 RPM | 2000 RPM | 2000 RPM |
|          | 2200 RPM | 2400 RPM |
|          | 2400 RPM | 2600 RPM |
|          | 2800 RPM |          |
|          | 3000 RPM |          |

Kruse contends that operation of the 3.0L TDI engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load | 100% Load |
|----------|----------|----------|-----------|
| 2000 RPM | 2000 RPM | 2000 RPM | 2000 RPM |
| 2400 RPM | 2400 RPM | 3200 RPM | 2400 RPM |
|          |          |          | 2800 RPM |
|          |          |          | 3200 RPM |
|          |          |          | 3600 RPM |
|          |          |          | 4000 RPM |

Kruse contends that operation of the 1.9L TDI (BRM) engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load |
|----------|----------|----------|
| 1800 RPM | 1600 RPM | 1800 RPM |

- 6 -

| 25% Load | 50% Load | 75% Load |
|----------|----------|----------|
|          | 1800 RPM | 2000 RPM |
|          | 2000 RPM | 2200 RPM |
|          | 2200 RPM | 2400 RPM |
|          | 2400 RPM | 2600 RPM |
|          | 2600 RPM | 2800 RPM |
|          | 2800 RPM |          |

Kruse contends that operation of the 1.9L TDI (BEW) engine infringes the asserted method claims under at least the following speed and load conditions:

| 25% Load | 50% Load | 75% Load |
|----------|----------|----------|
| 2100 RPM | 1500 RPM | 1500 RPM |
| 2200 RPM | 1600 RPM | 1600 RPM |
| 2300 RPM | 1700 RPM | 1700 RPM |
| 2500 RPM | 1800 RPM | 1800 RPM |
| 2700 RPM | 1900 RPM | 1900 RPM |
|          | 2000 RPM | 2000 RPM |
|          | 2100 RPM | 2100 RPM |
|          | 2200 RPM | 2200 RPM |
|          | 2300 RPM | 2300 RPM |
|          | 2400 RPM | 2400 RPM |
|          | 2500 RPM | 2500 RPM |
|          | 2600 RPM | 2600 RPM |
|          | 2700 RPM | 2700 RPM |

/ / /

/ / /

**Page 678**                                                    **Exhibit 7**

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase vehicles equipped with VW AG Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

At least as early as August 2003, VW gained knowledge of the asserted patents when Mr. Malcolm White contacted VW in connection with Mr. White's efforts to license Mr. Kruse's patented technology. VW informed Mr. White that his inquiry was forwarded to the appropriate persons for review. VW AG and VWGoA communicate regularly with each other in the ordinary course of business on issues relating to engine research, development, and manufacture as the need arises.

At least as early as July 2010, VW further gained knowledge of the asserted patents upon being served with the Complaint in this action. VW has conducted its business operations, including assembling, testing, and selling vehicles equipped with engines specially designed to practice the claimed methods recited in the asserted patents, with knowledge of those patents.

1.    **Inducement (35 U.S.C. § 271(b))**

VW AG actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. VW AG knows, or should know, that its actions directed towards vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims. VW AG's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing dealers and customers with vehicles having the Accused Engines that practice the claimed methods when used under normal operating conditions.

///

- 8 -

2.     **Contributory Infringement (35 U.S.C. § 271(c))**

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.  Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  Defendants have asserted that certain claim elements are not literally present.  Defendants have not provided a clear presentation of the factual bases or claim interpretations upon which they rely to make these assertions.  To the extent that Kruse understands Defendants' non-infringement positions, Kruse contends that each claim element that Defendants assert is not literally present is satisfied under the doctrine of equivalents because the Accused Engines achieve substantially the same result as the claim element by performing substantially the same function in substantially the same way as the claim element.  Any differences asserted by Defendants between the Accused Engines and the claimed method steps are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

- 9 -

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II. DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092-18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59593, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.    N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.    N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.    N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

/ / /

/ / /

/ / /

- 10 -

**Page 681**                                              **Exhibit 7**

### III. <u>CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3</u>

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 17, 2011          By: */s/ David G. Jankowski*
                                       John B. Sganga, Jr.
                                       Karen Vogel Weil
                                       Jon W. Gurka
                                       David G. Jankowski
                                       Marko R. Zoretic

                                       Attorneys for Plaintiff/Counterdefendant
                                       KRUSE TECHNOLOGY PARTNERSHIP

11251500

- 11 -

# PAGES 683 THROUGH 897

# FILED UNDER SEAL

# EXHIBIT 8

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:   (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DAIMLER AG** |

**Page 898**                                   **Exhibit 8**

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Daimler AG, and accompanying document production. Kruse makes the following disclosures based on information presently available and located by Kruse. Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I. DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Daimler AG ("Daimler") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Daimler infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Daimler performs the methods recited in each of the asserted claims of Kruse's patents when Daimler operates vehicles equipped with Daimler/Mercedes-Benz OM642, Cummins ISB6.7L, and Detroit Diesel DD13 families of diesel engines (the "Accused Engines"). The asserted claims are method claims, and Daimler directly infringes Kruse's patents when it (or others on Daimler's behalf) operates the OM642, ISB6.7L, and DD13 families of engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the

- 1 -

1    engines, and through that operation, performs the claimed methods.

2           Kruse understands that the Accused Engines are certified by the United

3    States Environmental Protection Agency ("EPA") to allow the engines to be

4    sold and operated in the United States.   The following chart identifies the

5    Accused Engines by EPA Engine Family:

| Daimler/Mercedes-Benz | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _MBXV03.0BN8 | 2007–2009 | _MBXT03.0HD1 | 2010–2011 |
| _MBXT03.0B10 | 2007–2008 | _MBXT03.0HD2 | 2010–2011 |
| _MBXH3.00DJB | 2007–2009 | _MBXV03.0U2B | 2011 |
| _MBXT03.0U2A | 2009–2011 | _CRXT03.0PRW | 2007 |
| _MBXT03.0U2B | 2009–2011 | | |

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0408BAA | 2006–2009 | _CEXH0408BAG | 2009 |
| _CEXA0408BAB | 2006–2007 | _CEXH0408BAH | 2009–2010 |
| _CEXH0408BAC | 2006–2009 | _CEXH0408BAK | 2010 |
| _CEXH0408BAD | 2007–2009 | _CEXH0408BAL | 2010 |
| _CEXH0408BAE | 2007–2009 | _CEXH0408BAN | 2010 |
| _CEXH0408BAF | 2008–2009 | | |

| Detroit Diesel | |
|---|---|
| **EPA Engine Family** | **Model Year** |
| _DDXH12.8FED | 2009–2010 |
| _DDXH12.8FEY | 2009–2010 |

- 2 -

Kruse further contends that Daimler is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) additional engines, as well. Discovery is in its early stages and Kruse's investigation is ongoing. Kruse is taking discovery from Daimler regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines. Specifically, Kruse is taking discovery of at least the following additional Daimler/Mercedes engine families: OM460, OM647, OM648, OM904, OM906, OM924, and OM926. Further, Kruse is taking discovery of at least the VM Motori 2.8L engine family and the following Cummins engine families: ISB5.9L, ISC, ISL, ISM, ISX 11.9, and ISX 15. Kruse is also taking discovery of at least the following Detroit Diesel engine families: DD15, DD16, Series 900, Series 50, Series 60, Series 2000, Series 4000, Series 20V-4000, OM 906LA, OM 926LA, OM 460LA, MBE 900, and MBE 4000.

The following chart identifies these engines by EPA Engine Family:

| Daimler/Mercedes-Benz | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _MBXH2.69DJA | 2004 | _MBXH7.20DJA | 2005–2006 |
| _MBXH2.69DJB | 2004–2006 | _MBXH12.8DJA | 2004–2006 |
| _MBXH4.25DJA | 2004–2006 | _MBXV03.2B10 | 2005–2006 |
| _MBXH6.37DJA | 2004–2006 | _CRXT02.82RX | 2006 |

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0359BAA | 2004–2006 | _CEXH0540LAQ | 2009–2010 |
| _CEXH0359BAB | 2005–2006 | _CEXH0540LAR | 2010 |
| _CEXH0359BAC | 2006 | _CEXH0661MAA | 2006–2008 |

- 3 -

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0359BAD | 2004–2006 | _CEXH0661MAB | 2007–2009 |
| _CEXH0359BAE | 2004–2006 | _CEXH0661MAC | 2007–2009 |
| _CEXA0359BAF | 2005–2006 | _CEXH0661MAD | 2009 |
| _CEXH0359BAG | 2004–2006 | _CEXH0661MAE | 2009 |
| _CEXH0359BAH | 2004–2006 | _CEXH0661MAF | 2009 |
| _CEXH0359BAI | 2006 | _CEXH0661MAT | 2004–2006 |
| _CEXH0505CAA | 2007–2009 | _CEXH0661MAU | 2004–2006 |
| _CEXH0505CAB | 2009 | _CEXH0661MAV | 2005–2006 |
| _CEXH0505CAC | 2009–2010 | _CEXH0661MAW | 2006 |
| _CEXH0505CAR | 2004–2005 | _CEXH0661MAX | 2005–2006 |
| _CEXH0505CAS | 2004 | _CEXH0661MAY | 2006–2009 |
| _CEXH0505CAU | 2004 | _CEXH0661MAZ | 2006–2009 |
| _CEXH0505CAV | 2005–2006 | _CEXH0729XAA | 2010 |
| _CEXH0505CAW | 2005–2006 | _CEXH0729XAB | 2010 |
| _CEXH0505CAX | 2005 | _CEXH0729XAC | 2010 |
| _CEXH0505CAY | 2005–2006 | _CEXH0912XAH | 2004–2006 |
| _CEXH0505CAZ | 2006–2009 | _CEXH0912XAJ | 2004–2006 |
| _CEXH0540LAE | 2004–2005 | _CEXH0912XAK | 2006–2009 |
| _CEXH0540LAG | 2005–2006 | _CEXH0912XAL | 2006–2009 |
| _CEXH0540LAH | 2005 | _CEXH0912XAM | 2006–2009 |
| _CEXH0540LAI | 2005–2006 | _CEXH0912XAN | 2009 |
| _CEXH0540LAJ | 2006 | _CEXH0912XAP | 2009–2010 |
| _CEXH0540LAL | 2006–2009 | _CEXH0912XAQ | 2009–2010 |
| _CEXH0540LAM | 2007–2009 | _CEXH0912XAR | 2010 |
| _CEXH0540LAO | 2007–2009 | | |

- 4 -

| Detroit Diesel | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _DDXH08.5FJB | 2004 | _DDXH12.8DJA | 2007–2009 |
| _DDXH08.5FJF | 2004–2005 | _DDXH07.2DJA | 2007–2009 |
| _DDXH08.5FJG | 2004–2005 | _DDXL14.0WLD | 2007–2010 |
| _DDXH08.5FJY | 2004–2005 | _DDXL7.20RJA | 2007 |
| _DDXH12.7EGY | 2004–2006 | _DDXH06.4TER | 2008–2010 |
| _DDXH14.0ELY | 2004–2009 | _DDXH07.2DJC | 2008 |
| _DDXL08.5YJD | 2004–2005 | _DDXH07.2TER | 2008–2010 |
| _DDXL12.7VGD | 2004 | _DDXH12.8DJC | 2008 |
| _DDXL14.0VLD | 2004–2010 | _DDXH12.8TER | 2008–2010 |
| _DDXL15.9WRE | 2005 | _DDXH14.0ELC | 2008 |
| _DDXL31.8XRE | 2004–2005 | _DDXH07.2DJD | 2009 |
| _DDXL35.8GRP | 2004–2005 | _DDXH12.8DJD | 2009 |
| _DDXL65.0GTE | 2004–2005 | _DDXH14.0ELD | 2009 |
| _DDXL65.0XTE | 2004–2005 | _DDXH14.8EEC | 2008 |
| _DDXL65.0GTP | 2004–2005 | _DDXH14.8EEY | 2008–2010 |
| _DDXL90.0XTP | 2004–2005 | _DDXH14.8EED | 2009–2010 |
| _DDXL23.9WRE | 2004 | _DDXH15.6GED | 2010 |
| _DDXL31.8XRR | 2005–2006 | _DDXH15.6GEY | 2010 |
| _DDXH08.5FJJ | 2004–2005 |  |  |

Further, Kruse is taking discovery to determine additional engines Daimler may use that may infringe Kruse's patents.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibits A, B, and C provide claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the

- 5 -

1 operation of the Accused Engines.  Exhibit A provides exemplary test results for

2 Cummins' ISB 6.7L diesel engines (as incorporated in a 2009 Dodge Ram

3 2500).  Exhibit B provides exemplary test results for Daimler/Mercedes-Benz's

4 OM642 diesel engines (as incorporated in a 2009 Dodge Sprinter).  Exhibit C

5 provides exemplary test results for DD13 diesel engines (as incorporated in a

6 2011 Western Star 4900SA).

7      The test results were obtained using an AVL IndiModul and IndiCom

8 software.  Fuel injection timing was detected electronically, and exemplary

9 injection timing signal plots are provided in Exhibits A, B, and C.  Cylinder

10 pressure was measured using an in-cylinder pressure sensor (AVL Model No.

11 GH13P), and exemplary cylinder pressure versus crank angle plots are provided

12 in Exhibits A, B, and C.  Heat release plots (heat release per degree crank angle

13 over crank angle) were generated by the IndiCom software, and exemplary heat

14 release plots are provided in Exhibits A, B, and C.  Plots of Cylinder Pressure

15 versus Volume and (calculated) Average Cylinder Temperature versus Volume

16 were generated, and exemplary P-V plots and T-V plots are provided in Exhibits

17 A B, and C.

18      Kruse contends that each of the Accused Engines operates under one or

19 more speed and load conditions that infringe the asserted method claims as

20 presented in Exhibits A, B, and C.

21 **N.D. Cal. Patent L.R. 3-1(d)**

22      Vehicle manufacturers that produce vehicles equipped with the Accused

23 Engines, such as Daimler Vans Manufacturing, LLC ("Daimler Vans"),

24 Mercedes-Benz U.S. International, Inc. ("MBUSI"), and Daimler Trucks North

25 America, LLC, directly infringe Kruse's patents when they operate the Accused

26 Engines under one or more speed and load conditions.  Likewise, vehicle

27 dealers and vehicle customers who purchase vehicles equipped with Accused

28 Engines directly infringe Kruse's patents when they perform the claimed

- 6 -

methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1. <u>Inducement (35 U.S.C. § 271(b))</u>

Daimler actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. Daimler knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, result in direct infringement of the asserted claims. Daimler's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicle manufacturers with the Accused Engines that practice the claimed methods when used under normal operating conditions.

### 2. <u>Contributory Infringement (35 U.S.C. § 271(c))</u>

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions. Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

### <u>N.D. Cal. Patent L.R. 3-1(e)</u>

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines. To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

///
///

- 7 -

                    Exhibit 8

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.  N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.  N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP20860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.  N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

- 8 -

**D.**     **N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.**     **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  November 15, 2010       By:  */s/ David G. Jankowski*
                                             John B. Sganga, Jr.
                                             Karen Vogel Weil
                                             Jon W. Gurka
                                             David G. Jankowski
                                             Marko R. Zoretic

                                             Attorneys for Plaintiff/Counterdefendant
                                             KRUSE TECHNOLOGY PARTNERSHIP

- 9 -

# PAGES 908 THROUGH 982

# FILED UNDER SEAL

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DAIMLER AG** on the parties or their counsel shown below as follows:

Defendant Daimler AG

**VIA EMAIL:**

Ben M. Davidson
Heather H. Fan
Nicholas H. Lee
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071-2627
Telephone: (213)892-1800
Fax: (213)892-2300
davidsonb@howrey.com
fanh@howrey.com
leen@howrey.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

Linda Ponce de Leon

10000623

**Page 983**                    **Exhibit 8**

# EXHIBIT 9

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Civil Action No. SACV 10-1066 JVS (RNBx) <br><br> **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT MERCEDES-BENZ USA, LLC** |

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Mercedes-Benz USA, LLC, and accompanying document production. Kruse makes the following disclosures based on information presently available and located by Kruse. Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I. DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Mercedes-Benz USA, LLC ("Mercedes") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Mercedes infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Mercedes performs the methods recited in each of the asserted claims of Kruse's patents when Mercedes operates its Daimler/Mercedes-Benz OM642 family of diesel engines (the "Accused Engines"). The asserted claims are method claims, and Mercedes directly infringes Kruse's patents when it (or others on Mercedes' behalf) operates the OM642 family of engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped

- 1 -

with the engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States.   The following chart identifies the Accused Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _MBXV03.0BN8 | 2007–2009 |
| _MBXT03.0B10 | 2007–2008 |
| _MBXH3.00DJB | 2007–2009 |
| _MBXT03.0U2A | 2009–2011 |
| _MBXT03.0U2B | 2009–2011 |
| _MBXT03.0HD1 | 2010–2011 |
| _MBXT03.0HD2 | 2010–2011 |
| _MBXV03.0U2B | 2011 |

Kruse further contends that Mercedes is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) additional engines, as well.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse is taking discovery from Mercedes regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines.   Specifically, Kruse is taking discovery of at least the following additional Daimler/Mercedes-Benz engine families: OM460, OM647, OM648, OM904, OM906, OM924, and OM926.

The following chart identifies these engines by EPA Engine Family:

| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
|---|---|---|---|
| _MBXH2.69DJA | 2004 | _MBXH7.20DJA | 2005–2006 |

- 2 -

| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
|---|---|---|---|
| _MBXH2.69DJB | 2004–2006 | _MBXH12.8DJA | 2004–2006 |
| _MBXH4.25DJA | 2004–2006 | _MBXV03.2B10 | 2005–2006 |
| _MBXH6.37DJA | 2004–2006 | | |

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibit A provides claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines. Exhibit A provides exemplary test results for Daimler/Mercedes-Benz's OM642 diesel engines (as incorporated in a 2009 Dodge Sprinter).

The test results were obtained using an AVL IndiModul and IndiCom software. Fuel injection timing was detected electronically, and exemplary injection timing signal plots are provided in Exhibits A-1 through A-4. Cylinder pressure was measured using an in-cylinder pressure sensor (AVL Model No. GH13P), and exemplary cylinder pressure versus crank angle plots are provided in Exhibits A-1 through A-4. Heat release plots (heat release per degree crank angle over crank angle) were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibits A-1 through A-4. Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibits A-1 through A-4.

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle manufacturers that produce vehicles equipped with the Accused Engines, such as Daimler Vans Manufacturing, LLC ("Daimler Vans") and

- 3 -

Mercedes-Benz U.S. International, Inc. ("MBUSI") directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions. Likewise, vehicle dealers and vehicle customers who purchase vehicles equipped with Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1.   Inducement (35 U.S.C. § 271(b))

Mercedes actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. Mercedes knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, result in direct infringement of the asserted claims. Mercedes's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, marketing and distributing vehicles equipped with Accused Engines that practice the claimed methods when used under normal operating conditions.

### 2.   Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions. Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

///

///

- 4 -

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines. To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

**II.   DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.   N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.   N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP20860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

- 5 -

**C.   N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.   N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–77.

**E.   N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.   CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 15, 2010      By:  */s/ David G. Jankowski*
                                         John B. Sganga, Jr.
                                         Karen Vogel Weil
                                         Jon W. Gurka
                                         David G. Jankowski
                                         Marko R. Zoretic

                                    Attorneys for Plaintiff/Counterdefendant
                                    KRUSE TECHNOLOGY PARTNERSHIP

- 6 -

# PAGES 991 THROUGH 1017

# FILED UNDER SEAL

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT MERCEDES-BENZ USA, LLC** on the parties or their counsel shown below as follows:

Defendant Mercedes-Benz USA, LLC

**VIA EMAIL:**

Ben M. Davidson
Heather H. Fan
Nicholas H. Lee
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071-2627
Telephone: (213)892-1800
Fax: (213)892-2300
davidsonb@howrey.com
fanh@howrey.com
leen@howrey.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

Linda Ponce de Leon-Garcia

9917479

**Page 1018**                    **Exhibit 9**

# EXHIBIT 10

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:   (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Civil Action No. SACV 10-1066 JVS (RNBx) <br><br> **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DAIMLER TRUCKS NORTH AMERICA LLC** |

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Daimler Trucks North America LLC, and accompanying document production.   Kruse makes the following disclosures based on information presently available and located by Kruse.   Discovery is in its early stages and Kruse's investigation is ongoing.   Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.   DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Daimler Trucks North America, LLC ("DTNA") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that DTNA infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that DTNA performs the methods recited in each of the asserted claims of Kruse's patents at least when DTNA operates its vehicles equipped with the DD13, ISB6.7 and OM 642 families of diesel engines ("Accused Engines") from Detroit Diesel Corporation ("Detroit Diesel"), Cummins Inc. ("Cummins"), and Daimler AG ("Daimler"), respectively.   The asserted claims are method claims, and DTNA directly infringes Kruse's patents

- 1 -

when it (or others on DTNA's behalf) operates vehicles equipped with the DD13, ISB6.7, and OM 642 families of engines under one or more engine speed and load conditions through operational testing of vehicles equipped with the engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States.  The following charts identify the Accused Engines by EPA Engine Family and Model Year:

| Detroit Diesel | |
|---|---|
| EPA Engine Family | Model Year |
| _DDXH12.8FED | 2009–2010 |
| _DDXH12.8FEY | 2009–2010 |

| Cummins | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _CEXH0408BAA | 2006–2009 | _CEXH0408BAG | 2009 |
| _CEXA0408BAB | 2006–2007 | _CEXH0408BAH | 2009–2010 |
| _CEXH0408BAC | 2006–2009 | _CEXH0408BAK | 2010 |
| _CEXH0408BAD | 2007–2009 | _CEXH0408BAL | 2010 |
| _CEXH0408BAE | 2007–2009 | _CEXH0408BAN | 2010 |
| _CEXH0408BAF | 2008–2009 | | |

| Daimler/Mercedes-Benz | |
|---|---|
| EPA Engine Family | Model Year |
| _MBXH3.00DJB | 2007–2009 |
| _MBXT03.0HD1 | 2010–2011 |
| _MBXT03.0HD2 | 2010–2011 |

- 2 -

Kruse further contends that DTNA is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) vehicles equipped with additional engines, as well.  Kruse is taking discovery from Detroit Diesel and Cummins regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines.  Specifically, Kruse is taking discovery of at least the following additional Detroit Diesel engine families: DD15, DD16, Series 900, Series 50, Series 60, Series 2000, Series 4000, Series 20V-4000, OM 906LA, OM 926LA, OM 460LA, MBE 900, and MBE 4000.  Further, Kruse is taking discovery of at least the following additional Cummins engine families: ISB5.9, ISC, ISL, ISM, ISX11.9, and ISX15.

The following charts identify these engines by EPA Engine Family and Model Year:

| Detroit Diesel | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _DDXH08.5FJB | 2004 | _DDXH12.8DJA | 2007–2009 |
| _DDXH08.5FJF | 2004–2005 | _DDXH07.2DJA | 2007–2009 |
| _DDXH08.5FJG | 2004–2005 | _DDXL14.0WLD | 2007–2010 |
| _DDXH08.5FJY | 2004–2005 | _DDXL7.20RJA | 2007 |
| _DDXH12.7EGY | 2004–2006 | _DDXH06.4TER | 2008–2010 |
| _DDXH14.0ELY | 2004–2009 | _DDXH07.2DJC | 2008 |
| _DDXL08.5YJD | 2004–2005 | _DDXH07.2TER | 2008–2010 |
| _DDXL12.7VGD | 2004 | _DDXH12.8DJC | 2008 |
| _DDXL14.0VLD | 2004–2010 | _DDXH12.8TER | 2008–2010 |
| _DDXL15.9WRE | 2005 | _DDXH14.0ELC | 2008 |
| _DDXL31.8XRE | 2004–2005 | _DDXH07.2DJD | 2009 |

- 3 -

| Detroit Diesel | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _DDXL35.8GRP | 2004–2005 | _DDXH12.8DJD | 2009 |
| _DDXL65.0GTE | 2004–2005 | _DDXH14.0ELD | 2009 |
| _DDXL65.0XTE | 2004–2005 | _DDXH14.8EEC | 2008 |
| _DDXL65.0GTP | 2004–2005 | _DDXH14.8EEY | 2008–2010 |
| _DDXL90.0XTP | 2004–2005 | _DDXH14.8EED | 2009–2010 |
| _DDXL23.9WRE | 2004 | _DDXH15.6GED | 2010 |
| _DDXL31.8XRR | 2005–2006 | _DDXH15.6GEY | 2010 |
| _DDXH08.5FJJ | 2004–2005 | | |

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0359BAA | 2004–2006 | _CEXH0540LAQ | 2009–2010 |
| _CEXH0359BAB | 2005–2006 | _CEXH0540LAR | 2010 |
| _CEXH0359BAC | 2006 | _CEXH0661MAA | 2006–2008 |
| _CEXH0359BAD | 2004–2006 | _CEXH0661MAB | 2007–2009 |
| _CEXH0359BAE | 2004–2006 | _CEXH0661MAC | 2007–2009 |
| _CEXA0359BAF | 2005–2006 | _CEXH0661MAD | 2009 |
| _CEXH0359BAG | 2004–2006 | _CEXH0661MAE | 2009 |
| _CEXH0359BAH | 2004–2006 | _CEXH0661MAF | 2009 |
| _CEXH0359BAI | 2006 | _CEXH0661MAT | 2004–2006 |
| _CEXH0505CAA | 2007–2009 | _CEXH0661MAU | 2004–2006 |
| _CEXH0505CAB | 2009 | _CEXH0661MAV | 2005–2006 |
| _CEXH0505CAC | 2009–2010 | _CEXH0661MAW | 2006 |
| _CEXH0505CAR | 2004–2005 | _CEXH0661MAX | 2005–2006 |
| _CEXH0505CAS | 2004 | _CEXH0661MAY | 2006–2009 |

- 4 -

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0505CAU | 2004 | _CEXH0661MAZ | 2006–2009 |
| _CEXH0505CAV | 2005–2006 | _CEXH0729XAA | 2010 |
| _CEXH0505CAW | 2005–2006 | _CEXH0729XAB | 2010 |
| _CEXH0505CAX | 2005 | _CEXH0729XAC | 2010 |
| _CEXH0505CAY | 2005–2006 | _CEXH0912XAH | 2004–2006 |
| _CEXH0505CAZ | 2006–2009 | _CEXH0912XAJ | 2004–2006 |
| _CEXH0540LAE | 2004–2005 | _CEXH0912XAK | 2006–2009 |
| _CEXH0540LAG | 2005–2006 | _CEXH0912XAL | 2006–2009 |
| _CEXH0540LAH | 2005 | _CEXH0912XAM | 2006–2009 |
| _CEXH0540LAI | 2005–2006 | _CEXH0912XAN | 2009 |
| _CEXH0540LAJ | 2006 | _CEXH0912XAP | 2009–2010 |
| _CEXH0540LAL | 2006–2009 | _CEXH0912XAQ | 2009–2010 |
| _CEXH0540LAM | 2007–2009 | _CEXH0912XAR | 2010 |
| _CEXH0540LAO | 2007–2009 | | |

Further, while Kruse believes that DTNA produces vehicles equipped with at least the DD13, DD15, DD16, MBE 4000, MBE 900, Series 60, ISB5.9, ISB6.7, ISC, ISL, ISM, ISX11.9, ISX15, and OM 642 families of engines, Kruse is taking discovery to determine additional engines DTNA may use that may infringe Kruse's patents.

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibits A, B and C provide claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the

- 5 -

operation of the Accused Engines.  Exhibit A provides exemplary test results for Cummins' ISB 6.7L diesel engines (as incorporated in a 2009 Dodge Ram 2500).  Exhibit B provides exemplary test results for a Mercedes-Benz's OM642 diesel engines (as incorporated in a 2009 Dodge Sprinter).  Exhibit C provides exemplary test results for DD13 diesel engines (as incorporated in a 2011 Western Star 4900SA).

The test results were obtained using an AVL IndiModul and IndiCom software.  Fuel injection timing was detected electronically, and exemplary injection timing signal plots are provided in Exhibits A, B, and C.  Cylinder pressure was measured using an in-cylinder pressure sensor (AVL Model No. GH13P), and exemplary cylinder pressure versus crank angle plots are provided in Exhibits A, B, and C.  Heat release plots (heat release per degree crank angle over crank angle) were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibits A, B, and C.  Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibits A, B, and C.

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibits A, B, and C.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase or take possession of DTNA vehicles equipped with the Accused Engines directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions.  DTNA's engine suppliers, such as Detroit Diesel, Cummins, and Daimler, also directly infringe Kruse's patents at least when operationally testing each engine, and through that operational testing, perform the claimed methods.

- 6 -

### 1.   Inducement (35 U.S.C. § 271(b))

DTNA actively induces vehicle dealers and vehicle customers to infringe the asserted methods by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.  DTNA's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicles equipped with the Accused Engines that practice the claimed methods when used under normal operating conditions to vehicle dealers and customers.

### 2.   Contributory Infringement (35 U.S.C. § 271(c))

DTNA has manufactured, offered for sale, and sold vehicles containing the Accused Engines.  The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.  Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines and therefore present in DTNA vehicles equipped with the Accused Engines.  To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

- 7 -

**Page 1026**                                   **Exhibit 10**

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

## II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.  N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.  N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.  N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.  N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–20977.

**E.  N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

- 8 -

1
2
### III.  <u>CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3</u>

3
4
5
6
Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

7
8                           KNOBBE, MARTENS, OLSON & BEAR, LLP

9
10
11   Dated:  November 15, 2010      By:  */s/ David G. Jankowski*

12                                      John B. Sganga, Jr.
                                        Karen Vogel Weil
13                                      Jon W. Gurka
                                        David G. Jankowski
14                                      Marko R. Zoretic

15                                      Attorneys for Plaintiff/Counterdefendant
                                        KRUSE TECHNOLOGY PARTNERSHIP
16
17
18
19
20
21
22
23
24
25
26
27
28

- 9 -

# PAGES 1029 THROUGH 1103

# FILED UNDER SEAL

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DAIMLER TRUCKS NORTH AMERICA LLC** on the parties or their counsel shown below as follows:

| | |
|---|---|
| Defendant<br>Daimler Trucks North America LLC<br><br>**VIA EMAIL:** | Boyd Cloern<br>Peter Vogel<br>BINGHAM MCCUTCHEN LLP<br>2020 K Street NW<br>Washington, DC 20006-1806<br>Telephone: (202)373-6000<br>Fax: (202)373-6001<br>Boyd.cloern@bingham.com<br>Peter.vogel@bingham.com<br><br>William Abrams<br>Patrick Weston<br>BINGHAM MCCUTCHEN LLP<br>1900 University Avenue<br>East Palo Alto, CA  94303<br>Telephone: (650)849-4400<br>Fax: (650)849-4800<br>William.abrams@bingham.com<br>Patrick.weston@bingham.com<br><br>Jeffrey Rosenfeld<br>BINGHAM MCCUTCHEN LLP<br>1620 26th Street<br>Santa Monica, CA  90404<br>Telephone: (310)907-1000<br>Fax: (310)9072000<br>Jeffrey.rosenfeld@bingham.com |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

_____
Linda Ponce de Leon

9899749

# EXHIBIT 11

1  John B. Sganga, Jr. (CSB # 116,211)
   jsganga@kmob.com
2  Karen Vogel Weil (CSB # 145,066)
   kweil@kmob.com
3  Jon W. Gurka (CSB # 187,964)
   jgurka@kmob.com
4  David G. Jankowski (CSB # 205,634)
   djankowski@kmob.com
5  Marko R. Zoretic (CSB # 233,952)
   mzoretic@kmob.com
6  KNOBBE, MARTENS, OLSON & BEAR, LLP
7  2040 Main Street, Fourteenth Floor
   Irvine, CA 92614
8  Telephone:  (949) 760-0404
   Facsimile:  (949) 760-9502
9

10  Attorneys for Plaintiff/Counterdefendant
    KRUSE TECHNOLOGY PARTNERSHIP
11

12          **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                    **SOUTHERN DIVISION**

15  KRUSE TECHNOLOGY                ) Civil Action No.
    PARTNERSHIP,                    ) SACV 10-1066 JVS (RNBx)
16                                  )
17          Plaintiff,              )
                                    ) **KRUSE TECHNOLOGY**
18      v.                          ) **PARTNERSHIP'S DISCLOSURE**
                                    ) **OF ASSERTED CLAIMS AND**
19  DAIMLER AG; MERCEDES-BENZ       ) **INFRINGEMENT CONTENTIONS**
    USA, LLC; DETROIT DIESEL        ) **TO DEFENDANT DETROIT**
20  CORPORATION; WESTERN STAR       ) **DIESEL CORPORATION**
    TRUCK SALES, INC.;              )
21  VOLKSWAGEN AG;                  )
    VOLKSWAGEN GROUP OF             )
22  AMERICA, INC., d/b/a AUDI OF    )
    AMERICA, INC.; CUMMINS INC.;    )
23  CHRYSLER GROUP LLC.; and        )
    DAIMLER TRUCKS NORTH            )
24  AMERICA LLC,                    )
                                    )
25          Defendants.             )
                                    )
26                                  )
    AND RELATED COUNTERCLAIM        )
27                                  )

28

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Detroit Diesel Corporation, and accompanying document production. Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Detroit Diesel Corporation ("Detroit Diesel") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Detroit Diesel infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Detroit Diesel performs the methods recited in each of the asserted claims of Kruse's patents when Detroit Diesel operates its DD13 family of diesel engines (the "Accused Engines").  The asserted claims are method claims, and Detroit Diesel directly infringes Kruse's patents when it (or others on Detroit Diesel's behalf) operates the DD13 family of engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the engines, and through that operation, performs the claimed methods.

- 1 -

Kruse understands that the Accused Engines are certified by the Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States. The following chart identifies the Accused Engines by EPA Engine Family and Model Year:

| EPA Engine Family | Model Year |
|---|---|
| _DDXH12.8FED | 2009–2010 |
| _DDXH12.8FEY | 2009–2010 |

Kruse further contends that Detroit Diesel is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) additional engines, as well. Kruse is taking discovery from Detroit Diesel regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines. Specifically, Kruse is taking discovery of at least the following additional Detroit Diesel engine families: DD15, DD16, Series 900, Series 50, Series 60, Series 2000, Series 4000, Series 20V-4000, OM 906LA, OM 926LA, OM 460LA, MBE 900, and MBE 4000.

The following chart identifies these engines by EPA Engine Family and Model Year:

| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
|---|---|---|---|
| _DDXH08.5FJB | 2004 | _DDXH12.8DJA | 2007–2009 |
| _DDXH08.5FJF | 2004–2005 | _DDXH07.2DJA | 2007–2009 |
| _DDXH08.5FJG | 2004–2005 | _DDXL14.0WLD | 2007–2010 |
| _DDXH08.5FJY | 2004–2005 | _DDXL7.20RJA | 2007 |
| _DDXH12.7EGY | 2004–2006 | _DDXH06.4TER | 2008–2010 |
| _DDXH14.0ELY | 2004–2009 | _DDXH07.2DJC | 2008 |
| _DDXL08.5YJD | 2004–2005 | _DDXH07.2TER | 2008–2010 |

- 2 -

| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
|---|---|---|---|
| _DDXL12.7VGD | 2004 | _DDXH12.8DJC | 2008 |
| _DDXL14.0VLD | 2004–2010 | _DDXH12.8TER | 2008–2010 |
| _DDXL15.9WRE | 2005 | _DDXH14.0ELC | 2008 |
| _DDXL31.8XRE | 2004–2005 | _DDXH07.2DJD | 2009 |
| _DDXL35.8GRP | 2004–2005 | _DDXH12.8DJD | 2009 |
| _DDXL65.0GTE | 2004–2005 | _DDXH14.0ELD | 2009 |
| _DDXL65.0XTE | 2004–2005 | _DDXH14.8EEC | 2008 |
| _DDXL65.0GTP | 2004–2005 | _DDXH14.8EEY | 2008–2010 |
| _DDXL90.0XTP | 2004–2005 | _DDXH14.8EED | 2009–2010 |
| _DDXL23.9WRE | 2004 | _DDXH15.6GED | 2010 |
| _DDXL31.8XRR | 2005–2006 | _DDXH15.6GEY | 2010 |
| _DDXH08.5FJJ | 2004–2005 | | |

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibit A provides claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines. Exhibit A provides exemplary test results for DD13 diesel engines (as incorporated in a 2011 Western Star 4900SA).

The test results were obtained using an AVL IndiModul and IndiCom software. Fuel injection timing was detected electronically and exemplary injection timing signal plots are provided in Exhibits A-1 through A-2. Cylinder pressure was measured using an in-cylinder pressure sensor (AVL Model No. GH13P), and exemplary cylinder pressure versus crank angle plots are provided in Exhibits A-1 through A-2. Heat release plots (heat release per

- 3 -

degree crank angle over crank angle) were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibits A-1 through A-2. Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibits A-1 through A-2.

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A.

## N.D. Cal. Patent L.R. 3-1(d)

Vehicle manufacturers that produce vehicles equipped with the Detroit Diesel Accused Engines, such as Western Star Truck Sales, Inc. ("Western Star") and Daimler Trucks North America LLC ("Daimler Trucks"), directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions.   Likewise, vehicle dealers and vehicle customers who purchase vehicles equipped with Detroit Diesel Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under speed and load conditions that practice the claimed methods.

### 1.   Inducement (35 U.S.C. § 271(b))

Detroit Diesel actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.   Detroit Diesel knows, or should know, that its actions directed towards vehicle manufacturers, vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims.   Detroit Diesel's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicle manufacturers with Accused Engines that practice the claimed methods when used under normal

- 4 -

operating conditions.

### 2.    Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.  As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.   Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

### N.D. Cal. Patent L.R. 3-1(e)

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.  To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

### N.D Cal. Patent L.R. 3-1(f)

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

### N.D. Cal. Patent L.R. 3-1(g)

Not applicable.

### N.D. Cal. Patent L.R. 3-1(h)

Detroit Diesel's infringement of Kruse's patents has been and continues to be willful, intentional, and deliberate with full knowledge of the '562 Patent, the '904 Patent, and the '704 Patent.  At least as early as July 1998 Detroit Diesel was aware of the '562 Patent.  On July 9, 1998, Mr. Douglas C. Kruse sent separate letters to Detroit Diesel personnel, including Roger S. Penske, Ludvik F. Koci, Charles G. McClure, David F. Merrion, John F. Farmer, Mark

- 5 -

F. Bara, and Dennis J. Jarvi, offering to license Limited Temperature Cycle technology to Detroit Diesel. Enclosed with each of these letters was a cooperative research proposal identifying U.S. Patent No. 5,265,562, among other patents and pending applications, relating to the Limited Temperature Cycle technology.

On September 11, 1998, Mr. Kruse made a presentation to a number of Detroit Diesel directors and engineers in Detroit, Michigan. During this presentation, Mr. Kruse again disclosed the '562 Patent, among others, to Detroit Diesel personnel and proposed a cooperative research partnership. Mr. Kruse showed the presentation attendees how Detroit Diesel could use the Limited Temperature Cycle concept to meet or exceed EPA emissions requirements. Subsequently, David F. Merrion of Detroit Diesel included the Limited Temperature Cycle technology in Detroit Diesel's list of proposed demonstration projects presented to the EPA.

In October 1998, Detroit Diesel signed a consent decree with the EPA in response to Civil Action No. 98-2548 filed under the Clean Air Act. Shortly thereafter, Mr. Kruse sent separate letters dated January 5, 1999 to Detroit Diesel personnel, including Bill C. Panagos, Josh Yaker, and David F. Merrion, submitting a "Third Party Project" for consideration by Detroit Diesel within the context of the consent decree. Enclosed with each of these letters was a copy of the third-party project proposal based on the patented Limited Temperature Cycle technology. On January 20, 1999, Timothy S. Tindall of Detroit Diesel sent Mr. Kruse a letter informing him that his proposal had been received and a decision on the proposal would be made in the near future. Mr. Tindall again sent Mr. Kruse a letter on July 8, 1999 informing Mr. Kruse that Detroit Diesel was now beginning to review the project proposals. Further, Mr. Tindall indicated that Detroit Diesel did not require any additional information having already availed itself of the opportunity to meet with Mr. Kruse regarding his

- 6 -

technology.

On February 24, 1999, Mr. Kruse sent Helmut Werner of Penske Capital Partners, L.L.C. ("Penske") a letter informing Mr. Werner of the existence of a number of Kruse patents including the '562 Patent.  At the time, Penske was Detroit Diesel's major shareholder.

On October 3, 2002, Mr. Kruse sent Mr. Tindall a letter offering consulting services to Detroit Diesel.  In this letter, Mr. Kruse disclosed the '704 Patent as relating to the Limited Temperature Cycle technology.

On January 28, 2010, Kruse's counsel sent Detroit Diesel a letter informing Detroit Diesel that it may be infringing Kruse's patents and enclosing a copy of each of the patents.  Despite being aware of Kruse's patents for a number of years, Detroit Diesel asked for several extensions to review the enclosed patents.  On February 18, 2010, Detroit Diesel wrote Kruse's counsel a letter asking the identity of the specific claims infringed and requesting an extension to review the claims.   Kruse's counsel responded with a non-exhaustive list of exemplary claims.  Subsequently, Detroit Diesel responded on March 5, 2010 by asking for an additional extension to investigate Kruse's patents.  On April 19, 2010, Detroit Diesel again sent Kruse's counsel a letter asking for a further extension of time to review Kruse's patents.

To this day, Detroit Diesel continues to use, sell, and offer to sell the Accused Engines.

## II. <u>DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)</u>

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

### A. <u>N.D. Cal. Patent L.R. 3-2(a)</u>

Kruse identifies the following document: KTP004545–4559.

/ / /

/ / /

- 7 -

**B.**     **N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.**     **N.D. Cal. Patent L.R. 3-2(c)**

Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.**     **N.D. Cal. Patent L.R. 3-2(d)**

Kruse identifies the following documents: KTP020974–20977.

**E.**     **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

/ / /

/ / /

/ / /

- 8 -

III.  **CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  November 15, 2010      By:  _/s/ David G. Jankowski_

John B. Sganga, Jr.
Karen Vogel Weil
Jon W. Gurka
David G. Jankowski
Marko R. Zoretic

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

- 9 -

# PAGES 1115 THROUGH 1135

# FILED UNDER SEAL

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT DETROIT DIESEL CORPORATION** on the parties or their counsel shown below as follows:

Defendant
Detroit Diesel Corporation,

**VIA EMAIL:**

Boyd Cloern
Peter Vogel
BINGHAM MCCUTCHEN LLP
2020 K Street NW
Washington, DC 20006-1806
Telephone: (202)373-6000
Fax: (202)373-6001
Boyd.cloern@bingham.com
Peter.vogel@bingham.com

William Abrams
Patrick Weston
BINGHAM MCCUTCHEN LLP
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650)849-4400
Fax: (650)849-4800
William.abrams@bingham.com
Patrick.weston@bingham.com

Jeffrey Rosenfeld
BINGHAM MCCUTCHEN LLP
1620 26th Street
Santa Monica, CA 90404
Telephone: (310)907-1000
Fax: (310)9072000
Jeffrey.rosenfeld@bingham.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California,

_Linda Ponce de Leon_
Linda Ponce de Leon

9887321

**Page 1136**                              **Exhibit 11**

EXHIBIT 12

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Civil Action No. <br> SACV 10-1066 JVS (RNBx) <br><br> **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT WESTERN STAR TRUCK SALES, INC.** |

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Western Star Truck Sales, Inc., and accompanying document production. Kruse makes the following disclosures based on information presently available and located by Kruse. Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I. DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that Western Star Truck Sales, Inc. ("Western Star") infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that Western Star infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that Western Star performs the methods recited in each of the asserted claims of Kruse's patents at least when Western Star operates its vehicles equipped with the DD13 family of diesel engines ("Accused Engines") from Detroit Diesel Corporation ("Detroit Diesel"). The asserted claims are method claims, and Western Star directly infringes Kruse's patents when it (or others on Western Star's behalf) operates vehicles equipped with the DD13

- 1 -

family of engines under one or more engine speed and load conditions through operational testing of vehicles equipped with the engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States. The following chart identifies the Accused Engines by EPA Engine Family and Model Year:

| Detroit Diesel | |
|---|---|
| **EPA Engine Family** | **Model Year** |
| _DDXH12.8FED | 2009–2010 |
| _DDXH12.8FEY | 2009–2010 |

Kruse further contends that Western Star is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) vehicles equipped with additional engines from Detroit Diesel and Cummins Inc. ("Cummins"), as well. Kruse is taking discovery from Detroit Diesel and Cummins regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines. Specifically, Kruse is taking discovery of at least the following additional Detroit Diesel engine families: DD15, DD16, Series 900, Series 50, Series 60, Series 2000, Series 4000, Series 20V-4000, OM 906LA, OM 926LA, OM 460LA, MBE 900, and MBE 4000. Further, Kruse is taking discovery of at least the following additional Cummins engine families: ISB5.9, ISB6.7, ISC, ISL, ISM, ISX11.9, and ISX15.

The following charts identify these engines by EPA Engine Family and Model Year:

- 2 -

| Detroit Diesel | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _DDXH08.5FJB | 2004 | _DDXH12.8DJA | 2007–2009 |
| _DDXH08.5FJF | 2004–2005 | _DDXH07.2DJA | 2007–2009 |
| _DDXH08.5FJG | 2004–2005 | _DDXL14.0WLD | 2007–2010 |
| _DDXH08.5FJY | 2004–2005 | _DDXL7.20RJA | 2007 |
| _DDXH12.7EGY | 2004–2006 | _DDXH06.4TER | 2008–2010 |
| _DDXH14.0ELY | 2004–2009 | _DDXH07.2DJC | 2008 |
| _DDXL08.5YJD | 2004–2005 | _DDXH07.2TER | 2008–2010 |
| _DDXL12.7VGD | 2004 | _DDXH12.8DJC | 2008 |
| _DDXL14.0VLD | 2004–2010 | _DDXH12.8TER | 2008–2010 |
| _DDXL15.9WRE | 2005 | _DDXH14.0ELC | 2008 |
| _DDXL31.8XRE | 2004–2005 | _DDXH07.2DJD | 2009 |
| _DDXL35.8GRP | 2004–2005 | _DDXH12.8DJD | 2009 |
| _DDXL65.0GTE | 2004–2005 | _DDXH14.0ELD | 2009 |
| _DDXL65.0XTE | 2004–2005 | _DDXH14.8EEC | 2008 |
| _DDXL65.0GTP | 2004–2005 | _DDXH14.8EEY | 2008–2010 |
| _DDXL90.0XTP | 2004–2005 | _DDXH14.8EED | 2009–2010 |
| _DDXL23.9WRE | 2004 | _DDXH15.6GED | 2010 |
| _DDXL31.8XRR | 2005–2006 | _DDXH15.6GEY | 2010 |
| _DDXH08.5FJJ | 2004–2005 | | |

| Cummins | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _CEXH0408BAA | 2006–2009 | _CEXH0540LAH | 2005 |
| _CEXA0408BAB | 2006–2007 | _CEXH0540LAI | 2005–2006 |
| _CEXH0408BAC | 2006–2009 | _CEXH0540LAJ | 2006 |

- 3 -

**Exhibit 12**

| Cummins | | | |
|---|---|---|---|
| **EPA Engine Family** | **Model Year** | **EPA Engine Family** | **Model Year** |
| _CEXH0408BAD | 2007–2009 | _CEXH0540LAL | 2006–2009 |
| _CEXH0408BAE | 2007–2009 | _CEXH0540LAM | 2007–2009 |
| _CEXH0408BAF | 2008–2009 | _CEXH0540LAO | 2007–2009 |
| _CEXH0408BAG | 2009 | _CEXH0540LAQ | 2009–2010 |
| _CEXH0408BAH | 2009–2010 | _CEXH0540LAR | 2010 |
| _CEXH0408BAK | 2010 | _CEXH0661MAA | 2006–2008 |
| _CEXH0408BAL | 2010 | _CEXH0661MAB | 2007–2009 |
| _CEXH0408BAN | 2010 | _CEXH0661MAC | 2007–2009 |
| _CEXH0359BAA | 2004–2006 | _CEXH0661MAD | 2009 |
| _CEXH0359BAB | 2005–2006 | _CEXH0661MAE | 2009 |
| _CEXH0359BAC | 2006 | _CEXH0661MAF | 2009 |
| _CEXH0359BAD | 2004–2006 | _CEXH0661MAT | 2004–2006 |
| _CEXH0359BAE | 2004–2006 | _CEXH0661MAU | 2004–2006 |
| _CEXA0359BAF | 2005–2006 | _CEXH0661MAV | 2005–2006 |
| _CEXH0359BAG | 2004–2006 | _CEXH0661MAW | 2006 |
| _CEXH0359BAH | 2004–2006 | _CEXH0661MAX | 2005–2006 |
| _CEXH0359BAI | 2006 | _CEXH0661MAY | 2006–2009 |
| _CEXH0505CAA | 2007–2009 | _CEXH0661MAZ | 2006–2009 |
| _CEXH0505CAB | 2009 | _CEXH0729XAA | 2010 |
| _CEXH0505CAC | 2009–2010 | _CEXH0729XAB | 2010 |
| _CEXH0505CAR | 2004–2005 | _CEXH0729XAC | 2010 |
| _CEXH0505CAS | 2004 | _CEXH0912XAH | 2004–2006 |
| _CEXH0505CAU | 2004 | _CEXH0912XAJ | 2004–2006 |
| _CEXH0505CAV | 2005–2006 | _CEXH0912XAK | 2006–2009 |
| _CEXH0505CAW | 2005–2006 | _CEXH0912XAL | 2006–2009 |

- 4 -

| Cummins | | | |
|---|---|---|---|
| EPA Engine Family | Model Year | EPA Engine Family | Model Year |
| _CEXH0505CAX | 2005 | _CEXH0912XAM | 2006–2009 |
| _CEXH0505CAY | 2005–2006 | _CEXH0912XAN | 2009 |
| _CEXH0505CAZ | 2006–2009 | _CEXH0912XAP | 2009–2010 |
| _CEXH0540LAE | 2004–2005 | _CEXH0912XAQ | 2009–2010 |
| _CEXH0540LAG | 2005–2006 | _CEXH0912XAR | 2010 |

Further, while Kruse believes that Western Star produces vehicles with at least the DD13, DD15, DD16, MBE 4000, Series 60, ISX11.9, and ISX15 families of engines, Kruse is taking discovery to determine additional engines Western Star may use that may infringe Kruse's patents.

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibit A provides claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines. Exhibit A provides exemplary test results for DD13 diesel engines (as incorporated in a 2011 Western Star 4900SA).

The test results were obtained using an AVL IndiModul and IndiCom software. Fuel injection timing was detected electronically, and exemplary injection timing signal plots are provided in Exhibit A. Cylinder pressure was measured using an in-cylinder pressure sensor (AVL Model No. GH13P), and exemplary cylinder pressure versus crank angle plots are provided in Exhibit A. Heat release plots (heat release per degree crank angle over crank angle) were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibit A. Plots of Cylinder Pressure versus Volume and

- 5 -

(calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibit A.

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase or take possession of Western Star vehicles equipped with the Accused Engines directly infringe Kruse's patents when they operate the Accused Engines under one or more speed and load conditions. Western Star's engine suppliers, such as Detroit Diesel and Cummins, also directly infringe Kruse's patents at least when operationally testing each engine, and through that operational testing, perform the claimed methods.

      1.    **Inducement (35 U.S.C. § 271(b))**

Western Star actively induces vehicle dealers and vehicle customers to infringe the asserted methods by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. Western Star's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing vehicles equipped with the Accused Engines that practice the claimed methods when used under normal operating conditions to vehicle dealers and customers.

      2.    **Contributory Infringement (35 U.S.C. § 271(c))**

Western Star has manufactured, offered for sale, and sold vehicles containing the Accused Engines. The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.

- 6 -

Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

**N.D. Cal. Patent L.R. 3-1(e)**

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines and therefore present in Western Star vehicles equipped with the Accused Engines. To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

**N.D Cal. Patent L.R. 3-1(f)**

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S. Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

Not applicable.

## II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)

Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618,

- 7 -

KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092–18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.**   **N.D. Cal. Patent L.R. 3-2(c)**

   Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.**   **N.D. Cal. Patent L.R. 3-2(d)**

   Kruse identifies the following documents: KTP020974–20977.

**E.**   **N.D. Cal. Patent L.R. 3-2(e)**

   Not applicable.

- 8 -

**III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 15, 2010      By:  */s/ David G. Jankowski*
                                        John B. Sganga, Jr.
                                        Karen Vogel Weil
                                        Jon W. Gurka
                                        David G. Jankowski
                                        Marko R. Zoretic

                                        Attorneys for Plaintiff/Counterdefendant
                                        KRUSE TECHNOLOGY PARTNERSHIP

- 9 -

# PAGES 1147 THROUGH 1167

# FILED UNDER SEAL

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT WESTERN STAR TRUCK SALES, INC.** on the parties or their counsel shown below as follows:

Defendant
Western Star Trucks Sales, Inc.

**VIA EMAIL:**

Boyd Cloern
Peter Vogel
BINGHAM MCCUTCHEN LLP
2020 K Street NW
Washington, DC 20006-1806
Telephone:  (202)373-6000
Fax:  (202)373-6001
Boyd.cloern@bingham.com
Peter.vogel@bingham.com

William Abrams
Patrick Weston
BINGHAM MCCUTCHEN LLP
1900 University Avenue
East Palo Alto, CA  94303
Telephone:  (650)849-4400
Fax:  (650)849-4800
William.abrams@bingham.com
Patrick.weston@bingham.com

Jeffrey Rosenfeld
BINGHAM MCCUTCHEN LLP
1620 26th Street
Santa Monica, CA  90404
Telephone:  (310)907-1000
Fax:  (310)9072000
Jeffrey.rosenfeld@bingham.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

_____
Linda Ponce de Leon

9896127

**Page 1168**                                    **Exhibit 12**

# EXHIBIT 13

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:   (949) 760-0404
Facsimile:   (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC,; and DAIMLER TRUCKS NORTH AMERICA LLC,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.** |

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Volkswagen Group of America, Inc. ("VWGoA"), and accompanying document production.  Kruse makes the following disclosures based on information presently available and located by Kruse.  Discovery is in its early stages and Kruse's investigation is ongoing.  Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)

### N.D. Cal. Patent L.R. 3-1(a)

Kruse asserts that VWGoA infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that VWGoA infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

### N.D. Cal. Patent L.R. 3-1(b)

Kruse asserts that VWGoA performs the methods recited in each of the asserted claims of Kruse's patents when VWGoA operates its 2.0L TDI and 3.0L TDI diesel engines (collectively, the "Accused Engines").

The asserted claims are method claims, and VWGoA directly infringes Kruse's patents when it (or others on VWGoA's behalf) operates the Accused Engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the

- 1 -

engines, and through that operation, performs the claimed methods.

Kruse understands that the Accused Engines are certified by the United States Environmental Protection Agency ("EPA") to allow the engines to be sold and operated in the United States.   The following chart identifies the Accused Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV02.035N | 2009 |
| _VWXV02.0U5N | 2009-2011 |
| _VWXV02.0234 | 2004-2005 |
| _ADXT03.03LD | 2009-2010 |
| _ADXT03.02UG | 2011 |
| _ADXT03.03UG | 2011 |

Kruse further contends that VWGoA is likely to infringe Kruse's patents by operating (and inducing and/or contributing others to operate) additional engines, as well.   Kruse is taking discovery from VWGoA regarding the operation of these additional engines, including but not limited to non-public information on the timing and quantities of fuel injections for these engines. Specifically, Kruse is taking discovery of at least the following additional VWGoA engine families: 1.9L TDI, and 4.9L/5.0L TDI.

The following chart identifies these engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV01.9233 | 2004-2005 |
| _VWXV01.9236 | 2004-2006 |
| _VWXV01.9238 | 2006 |
| _VWXT05.0235 | 2004 |
| _VWXT05.0375 | 2006-2008 |

- 2 -

Discovery is in its early stages and Kruse's investigation is ongoing. Kruse reserves the right to amend these contentions and disclosures as new facts are learned in discovery.

**N.D. Cal. Patent L.R. 3-1(c)**

Exhibits A and B provide claim charts and exemplary dynamometer test results that relate the limitations of the asserted method claims to the operation of the Accused Engines.  Exhibit A provides exemplary test results for 2.0L TDI diesel engines (as incorporated in a 2009 Volkswagen Jetta).   Exhibit B provides exemplary test results for 3.0L TDI diesel engines (as incorporated in a 2010 Audi Q7).

The test results were obtained using an AVL IndiModul and IndiCom software.  Fuel injection timing was detected electronically and exemplary injection timing signal plots are provided in Exhibits A and B.  Cylinder pressure was measured using an in-cylinder pressure sensor (AVL Model No. GH13P), and exemplary cylinder pressure versus crank angle plots are provided in Exhibits A and B.  Heat release plots (heat release per degree crank angle over crank angle) were generated by the IndiCom software, and exemplary heat release plots are provided in Exhibits A and B.  Plots of Cylinder Pressure versus Volume and (calculated) Average Cylinder Temperature versus Volume were generated, and exemplary P-V plots and T-V plots are provided in Exhibits A and B.

Kruse contends that each of the Accused Engines operates under one or more speed and load conditions that infringe the asserted method claims as presented in Exhibit A and B.

**N.D. Cal. Patent L.R. 3-1(d)**

Vehicle dealers and vehicle customers who purchase vehicles equipped with VWGoA Accused Engines directly infringe Kruse's patents when they perform the claimed methods during operation of the Accused Engines under

- 3 -

speed and load conditions that practice the claimed methods.

### 1.    Inducement (35 U.S.C. § 271(b))

VWGoA actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods.   VWGoA knows, or should know, that its actions directed towards vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims.   VWGoA's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing dealers and customers with vehicles having the Accused Engines that practice the claimed methods when used under normal operating conditions.

### 2.    Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions.   As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions.   Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

### N.D. Cal. Patent L.R. 3-1(e)

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines.   To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

### N.D Cal. Patent L.R. 3-1(f)

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S.

- 4 -

1   Patent No. 5,265,562.

2   **N.D. Cal. Patent L.R. 3-1(g)**

3        Not applicable.

4   **N.D. Cal. Patent L.R. 3-1(h)**

5        Not applicable.

6   **II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

7        Kruse reserves the right to supplement this disclosure as other documents

8   become available and/or are identified.

9   **A.    N.D. Cal. Patent L.R. 3-2(a)**

10       Kruse identifies the following document: KTP004545–4559.

11  **B.    N.D. Cal. Patent L.R. 3-2(b)**

12       Kruse   identifies   the   following   documents:   KTP004069–4086,

13  KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275,

14  KTP004278–4292,   KTP004459,   KTP004545–4559,   KTP004584–4596,

15  KTP004606–4615,   KTP006569–6603,   KTP006609–6614,   KTP007618,

16  KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629,

17  KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–

18  10124,  KTP010125–10126,  KTP013842,  KTP018092-18105,  KTP020860,

19  KTP023546–23567,  KTP059460–59465,  KTP059586–59583,  KTP059660–

20  59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

21  **C.    N.D. Cal. Patent L.R. 3-2(c)**

22       Kruse identifies the following documents: KTP060298–60514 (certified

23  file history for the '562 patent), KTP060515–60986, (certified file history for

24  the '904 patent), and KTP060987–61454 (certified file history for the '704

25  patent).

26  **D.    N.D. Cal. Patent L.R. 3-2(d)**

27       Kruse identifies the following documents: KTP020974–77.

28  / / /

- 5 -

**E.**     **N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT**

**L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 15, 2010     By:  */s/ David G. Jankowski*
                                         John B. Sganga, Jr.
                                         Karen Vogel Weil
                                         Jon W. Gurka
                                         David G. Jankowski
                                         Marko R. Zoretic

                                         Attorneys for Plaintiff/Counterdefendant
                                         KRUSE TECHNOLOGY PARTNERSHIP

- 6 -

**Page 1175**                                          **Exhibit 13**

# PAGES 1176 THROUGH 1229

# FILED UNDER SEAL

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.** on the parties or their counsel shown below as follows:

Defendant
Volkswagen Group of America, Inc.

**VIA EMAIL:**

John F. Sweeney
Steven F. Meyer
LOCKE LORD BISSELL & LIDDELL, LLP
3 World Financial Center, 21st Floor
New York, NY  10281
Telephone: (212)415-8600
Fax: (212)303-2754
jsweeney@lockelord.com
smeyer@lockelord.com

Stephen A. Tuggy
LOCKE LORD BISSELL & LIDDELL, LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: (213)485-1500
Fax: (213)485-1200
Stuggy@lockelord.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

_____
Linda Ponce de Leon

10007752

**Page 1230**                    **Exhibit 13**

# EXHIBIT 14

John B. Sganga, Jr. (CSB # 116,211)
jsganga@kmob.com
Karen Vogel Weil (CSB # 145,066)
kweil@kmob.com
Jon W. Gurka (CSB # 187,964)
jgurka@kmob.com
David G. Jankowski (CSB # 205,634)
djankowski@kmob.com
Marko R. Zoretic (CSB # 233,952)
mzoretic@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404
Facsimile:  (949) 760-9502

Attorneys for Plaintiff/Counterdefendant
KRUSE TECHNOLOGY PARTNERSHIP

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORPORATION; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CUMMINS INC.; CHRYSLER GROUP LLC.; and DAIMLER TRUCKS NORTH AMERICA LLC, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Civil Action No. <br> SACV 10-1066 JVS (RNBx) <br><br> **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN AG** |

In compliance with the Court's October 18, 2010 Scheduling Conference and adoption of the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, Plaintiff/Counterdefendant Kruse Technology Partnership ("Kruse") hereby provides its Disclosure of Asserted Claims and Infringement Contentions to Defendant Volkswagen AG ("VW AG"), and accompanying document production.   Kruse makes the following disclosures based on information presently available and located by Kruse.   Discovery is in its early stages and Kruse's investigation is ongoing.   Kruse reserves the right to amend or supplement this disclosure as additional information becomes available through discovery.

## I.  <u>DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS (N.D. CAL. PATENT L.R. 3-1)</u>

**<u>N.D. Cal. Patent L.R. 3-1(a)</u>**

Kruse asserts that VW AG infringes Claims 1 and 2 of U.S. Patent No. 5,265,562 ("the '562 Patent"), Claim 9 of U.S. Patent No. 6,058,904 ("the '904 Patent"), and Claims 1, 2, and 3 of U.S. Patent No. 6,405,704 ("the '704 Patent") (collectively, "Kruse's patents").

Kruse asserts that VW AG infringes each of the asserted claims of Kruse's patents under 35 U.S.C. § 271(a), § 271(b), and § 271(c).

**<u>N.D. Cal. Patent L.R. 3-1(b)</u>**

Kruse asserts that VW AG performs the methods recited in each of the asserted claims of Kruse's patents when VW AG operates its 2.0L TDI and 3.0L TDI diesel engines (collectively, the "Accused Engines").

The asserted claims are method claims, and VW AG directly infringes Kruse's patents when it (or others on VW AG's behalf) operates the Accused Engines under one or more engine speed and load conditions through operational testing of the engines or operation of vehicles equipped with the

- 1 -

1    engines, and through that operation, performs the claimed methods.

2        Kruse understands that the Accused Engines are certified by the United
3    States Environmental Protection Agency ("EPA") to allow the engines to be
4    sold and operated in the United States.   The following chart identifies the
5    Accused Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV02.035N | 2009 |
| _VWXV02.0U5N | 2009-2011 |
| _VWXV02.0234 | 2004-2005 |
| _ADXT03.03LD | 2009-2010 |
| _ADXT03.02UG | 2011 |
| _ADXT03.03UG | 2011 |

14        Kruse further contends that VW AG is likely to infringe Kruse's patents
15   by operating (and inducing and/or contributing others to operate) additional
16   engines, as well.   Kruse is taking discovery from VW AG regarding the
17   operation of these additional engines, including but not limited to non-public
18   information on the timing and quantities of fuel injections for these engines.
19   Specifically, Kruse is taking discovery of at least the following additional VW
20   AG engine families: 1.9L TDI, and 4.9L/5.0L TDI.

21        The following chart identifies these engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV01.9233 | 2004-2005 |
| _VWXV01.9236 | 2004-2006 |
| _VWXV01.9238 | 2006 |
| _VWXT05.0235 | 2004 |
| _VWXT05.0375 | 2006-2008 |

- 2 -

1    Discovery is in its early stages and Kruse's investigation is ongoing.

2    Kruse reserves the right to amend these contentions and disclosures as new facts

3    are learned in discovery.

4    **N.D. Cal. Patent L.R. 3-1(c)**

5    Exhibits A and B provide claim charts and exemplary dynamometer test

6    results that relate the limitations of the asserted method claims to the operation

7    of the Accused Engines.  Exhibit A provides exemplary test results for 2.0L TDI

8    diesel engines (as incorporated in a 2009 Volkswagen Jetta).   Exhibit B

9    provides exemplary test results for 3.0L TDI diesel engines (as incorporated in a

10   2010 Audi Q7).

11   The test results were obtained using an AVL IndiModul and IndiCom

12   software.   Fuel injection timing was detected electronically and exemplary

13   injection timing signal plots are provided in Exhibits A and B.   Cylinder

14   pressure was measured using an in-cylinder pressure sensor (AVL Model No.

15   GH13P), and exemplary cylinder pressure versus crank angle plots are provided

16   in Exhibits A and B.  Heat release plots (heat release per degree crank angle

17   over crank angle) were generated by the IndiCom software, and exemplary heat

18   release plots are provided in Exhibits A and B.  Plots of Cylinder Pressure

19   versus Volume and (calculated) Average Cylinder Temperature versus Volume

20   were generated, and exemplary P-V plots and T-V plots are provided in Exhibits

21   A and B.

22   Kruse contends that each of the Accused Engines operates under one or

23   more speed and load conditions that infringe the asserted method claims as

24   presented in Exhibit A and B.

25   **N.D. Cal. Patent L.R. 3-1(d)**

26   Vehicle dealers and vehicle customers who purchase vehicles equipped

27   with VW AG Accused Engines directly infringe Kruse's patents when they

28   perform the claimed methods during operation of the Accused Engines under

- 3 -

speed and load conditions that practice the claimed methods.

### 1. Inducement (35 U.S.C. § 271(b))

VW AG actively induces vehicle manufacturers, dealers, and vehicle customers to infringe the asserted claims by inducing them to operate the Accused Engines at speed and load conditions that practice the claimed methods. VW AG knows, or should know, that its actions directed towards vehicle dealers, and vehicle customers, results in direct infringement of the asserted claims. VW AG's intent is demonstrated by its active steps to encourage operation of the Accused Engines by others, including, for example, providing dealers and customers with vehicles having the Accused Engines that practice the claimed methods when used under normal operating conditions.

### 2. Contributory Infringement (35 U.S.C. § 271(c))

The Accused Engines are specially designed and manufactured to perform the claimed methods under one or more engine speed and load conditions. As so designed and manufactured, the Accused Engines do not have a substantially non-infringing use, which would require avoiding use of the claimed methods under normal operating conditions. Indeed, users of the Accused Engines in the U.S. (such as vehicle customers) have no ability to avoid infringing the asserted claims when the Accused Engines are operated at speed and load conditions that practice the claimed methods.

### N.D. Cal. Patent L.R. 3-1(e)

Kruse asserts that each limitation of each of the asserted claims is literally present in the Accused Engines. To the extent that any claim element or step is not literally present, any differences between the Accused Engines and that claim element or step are insubstantial and, therefore, equivalent.

### N.D Cal. Patent L.R. 3-1(f)

All the asserted claims of Kruse's patents are entitled to the priority date of July 27, 1992—the filing date of U.S. Application No. 919,916, now U.S.

- 4 -

Patent No. 5,265,562.

**N.D. Cal. Patent L.R. 3-1(g)**

    Not applicable.

**N.D. Cal. Patent L.R. 3-1(h)**

    Not applicable.

**II.  DOCUMENT PRODUCTION (N.D. CAL. PATENT L.R. 3-2)**

    Kruse reserves the right to supplement this disclosure as other documents become available and/or are identified.

**A.    N.D. Cal. Patent L.R. 3-2(a)**

    Kruse identifies the following document: KTP004545–4559.

**B.    N.D. Cal. Patent L.R. 3-2(b)**

    Kruse identifies the following documents: KTP004069–4086, KTP004105–4122, KTP004123–4127, KTP004138–4156, KTP004260–4275, KTP004278–4292, KTP004459, KTP004545–4559, KTP004584–4596, KTP004606–4615, KTP006569–6603, KTP006609–6614, KTP007618, KTP007620, KTP007621, KTP007622, KTP007624, KTP007628, KTP007629, KTP007630, KTP008011–8033, KTP008034–8047, KTP008666, KTP010122–10124, KTP010125–10126, KTP013842, KTP018092-18105, KTP020860, KTP023546–23567, KTP059460–59465, KTP059586–59583, KTP059660–59667, KTP059768–59780, KTP059801–59815, and KTP059825–59854.

**C.    N.D. Cal. Patent L.R. 3-2(c)**

    Kruse identifies the following documents: KTP060298–60514 (certified file history for the '562 patent), KTP060515–60986, (certified file history for the '904 patent), and KTP060987–61454 (certified file history for the '704 patent).

**D.    N.D. Cal. Patent L.R. 3-2(d)**

    Kruse identifies the following documents: KTP020974–77.

/ / /

- 5 -

**E.     N.D. Cal. Patent L.R. 3-2(e)**

Not applicable.

**III.  CERTIFICATION OF COMPLIANCE WITH N.D. CAL. PATENT L.R. 2-3**

Pursuant to N.D. Cal. Patent L.R. 2-3, counsel attests that to the best of his knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the information contained in this disclosure and accompanying exhibits is complete and correct at the time it is made.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  November 15, 2010     By:  */s/ David G. Jankowski*
                                        John B. Sganga, Jr.
                                        Karen Vogel Weil
                                        Jon W. Gurka
                                        David G. Jankowski
                                        Marko R. Zoretic

                                        Attorneys for Plaintiff/Counterdefendant
                                        KRUSE TECHNOLOGY PARTNERSHIP

- 6 -

**Page 1237**                                    **Exhibit 14**

# PAGES 1238 THROUGH 1291

# FILED UNDER SEAL

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On November 15, 2010, I served the within **KRUSE TECHNOLOGY PARTNERSHIP'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS TO DEFENDANT VOLKSWAGEN AG** on the parties or their counsel shown below as follows:

Defendant Volkswagen AG

**VIA EMAIL:**

John F. Sweeney
Steven F. Meyer
LOCKE LORD BISSELL & LIDDELL, LLP
3 World Financial Center, 21st Floor
New York, NY 10281
Telephone: (212)415-8600
Fax: (212)303-2754
jsweeney@lockelord.com
smeyer@lockelord.com

Stephen A. Tuggy
LOCKE LORD BISSELL & LIDDELL, LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: (213)485-1500
Fax: (213)485-1200
Stuggy@lockelord.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2010, at Irvine, California.

Linda Ponce de Leon

9997338

**Page 1292**                                          **Exhibit 14**

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On May 23, 2011, I served the within **DECLARATION OF DAVID G. JANKOWSKI IN SUPPORT OF KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** on the parties or their counsel shown below as follows:

| | |
|---|---|
| Defendants<br>Detroit Diesel Corporation, Daimler Trucks North America LLC and Western Star Trucks Sales, Inc.<br><br>**VIA EMAIL** | Boyd Cloern<br>BINGHAM MCCUTCHEN LLP<br>2020 K Street NW<br>Washington, DC 20006-1806<br>Telephone: (202)373-6000<br>Fax: (202)373-6001<br>Boyd.cloern@bingham.com<br><br>William Abrams<br>Patrick Weston<br>Peter Vogel<br>BINGHAM MCCUTCHEN LLP<br>1900 University Avenue<br>East Palo Alto, CA 94303<br>Telephone: (650)849-4400<br>Fax: (650)849-4800<br>William.abrams@bingham.com<br>Patrick.weston@bingham.com<br>Peter.vogel@bingham.com<br><br>Jeffrey Rosenfeld<br>BINGHAM MCCUTCHEN LLP<br>1620 26th Street<br>Santa Monica, CA 90404<br>Telephone: (310)907-1000<br>Fax: (310)9072000<br>Jeffrey.rosenfeld@bingham.com |

| | |
|---|---|
| Defendants Mercedes-Benz USA, LLC and Daimler AG<br><br>**VIA EMAIL** | Ben M. Davidson<br>Heather H. Fan<br>DAVIDSON LAW GROUP<br>11377 W. Olympic Blvd.<br>Los Angeles, CA 90064<br>Telephone: (310)473-2300<br>Fax: (310)473-2941<br>bdavidson@davidson-lawfirm.com<br>hfan@davidson-lawfirm.com |
| Defendants Volkswagen Group of America, Inc. and Volkswagen AG<br><br>**VIA EMAIL** | John F. Sweeney<br>Steven F. Meyer<br>LOCKE LORD BISSELL & LIDDELL, LLP<br>3 World Financial Center, 21st Floor<br>New York, NY 10281<br>Telephone: (212)415-8600<br>Fax: (212)303-2754<br>jsweeney@lockelord.com<br>smeyer@lockelord.com<br><br>Stephen A. Tuggy<br>LOCKE LORD BISSELL & LIDDELL, LLP<br>300 S. Grand Avenue, Suite 2600<br>Los Angeles, California 90071<br>Telephone: (213)485-1500<br>Fax: (213)485-1200<br>Stuggy@lockelord.com |

| Defendants Mercedes-Benz U.S. International, Inc. and Daimler Vans Manufacturing LLC<br><br>**VIA EMAIL** | Michael D. Bednarek<br>Scott W. Doyle<br>Jonathan R. DeFosse<br>SHEARMAN & STERLING LLP<br>801 Pennsylvania Ave., N.W., Suite 900<br>Washington, DC 20004<br>Telephone: (202) 508-8030<br>Fax: (202) 661-7329<br>michael.bednarek@shearman.com<br>scott.doyle@shearman.com<br>jonathan.defosse@shearman.com<br><br>Vicki S. Veenker<br>SHEARMAN & STERLING LLP<br>1080 Marsh Road<br>Menlo Park, CA 94025<br>Telephone: (650) 838-3600<br>Fax: (650) 838-3699<br>vveenker@shearman.com |
|---|---|

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 23, 2011, at Irvine, California.

Linda Ponce de Leon

11275972