John F. Sweeney (*Pro Hac Vice*)
jsweeney@lockelord.com
Steven F. Meyer (*Pro Hac Vice*)
smeyer@lockelord.com
LOCKE LORD BISSELL & LIDDELL, LLP
3 World Financial Center, 21st Floor
New York, NY  10281
Phone: 212-415-8600
Fax: 212-303-2754

Stephen A. Tuggy
Stuggy@lockelord.com
LOCKE LORD BISSELL & LIDDELL LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071
Phone:  213-485-1500
Fax:  213-485-1200

Attorneys for Defendants

VOLKSWAGEN GROUP OF AMERICA, INC.

AND VOLKSWAGEN AG

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRUSE TECHNOLOGY PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>DAIMLER AG; MERCEDES-BENZ USA, LLC; DETROIT DIESEL CORP.; WESTERN STAR TRUCK SALES, INC.; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; CHRYSLER GROUP LLC; DAIMLER TRUCKS NORTH AMERICA LLC; MERCEDES-BENZ, U.S. INTERNATIONAL, INC.; and DAIMLER VANS MANUFACTURING LLC,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Civil Action No.<br>SACV 10-1066 JVS (RNBx)<br><br>**DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>Date:  December 5, 2011<br>Time:  1:30 p.m.<br>Location:  Courtroom 10C<br><br>Hon. James V. Selna |

DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS

LA 700187

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION AND FACTUAL BACKGROUND ...............................1

II.     ARGUMENT .................................................................................3

        A.      Legal Standard.................................................................3

        B.      There Is No Good Cause For Permitting Kruse To File Its
                Tenth Amended Infringement Contentions ...........................4

                1.      There Is No Good Cause For Adding A Newly
                        Accused Engine At This Late Date ...........................4

                2.      There Is No Good Cause For The New Infringement
                        Theory Presented In Exhibit A of Kruse's Proposed
                        Tenth Amended Infringement Contentions ...............6

                3.      There Is No Good Cause For The New, Unexplained
                        Infringement Theories Of Kruse's Proposed Tenth
                        Amended Infringement Contentions .......................12

        C.      Permitting Kruse To File Its Tenth Amended Infringement
                Contentions Will Cause Specific And Substantial Prejudice
                To VW And Its Trial Preparation........................................16

III.    CONCLUSION .........................................................................19

1

# TABLE OF AUTHORITIES

2

**Page No(s)**

3

**Cases**

4

Atmel Corp. v. Info Storage Devices, Inc.,

5

    No. C95-1987 FMS, 1998 WL 775115  (N.D. Cal. Nov. 5, 1998) ................. 4

6

Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.,

7

    No. C05-04158 MHP, 2008 WL 624771 (N.D. Cal. Mar. 4, 2008) ............... 4

8

Intamin, Ltd. v. Magnetar Techs. Corp.,

9

    483 F.3d 1328 (Fed. Cir. 2007) .................................................................... 11

10

Integrated Circuit Sys., Inc. v. Realtek,

11

    308 F. Supp. 2d 1106 (N.D. Cal. 2004) .......................................................... 4

12

LG Elecs. Inc. v. Q-Lity Computer Inc.,

13

    211 F.R.D. 360 (N.D. Cal. 2002) .................................................................... 4

14

O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,

15

    467 F.3d 1355 (Fed. Cir. 2006) ......................................................... 3, 12, 13

16

Sunpower Corp. Sys. v. Sunlink Corp.,

17

    No. C-08-2807 SBA, 2009 WL 1657987 (N.D. Cal. June 12, 2009) ...... 11, 12

18

West v. Jewelry Innovations, Inc.,

19

    No. C 07-1812 JF(HRL), 2008 WL 4532558 (N.D. Cal. Oct. 8, 2008) ........ 12

20

Zilog, Inc. v. Quicklogic Corp.,

21

    No. C03-03725 JW, 2006 WL 563057 (N.D. Cal. Mar. 6, 2006) ................. 13

22

23

24

25

26

27

28

# I.      INTRODUCTION AND FACTUAL BACKGROUND

Nearly a year and a half after filing its complaint, and 30 days prior to the end of fact discovery, Plaintiff Kruse Technology ("Kruse") now seeks to amend its infringement contentions so as to file its Proposed Tenth Amended Infringement Contentions against Volkswagen AG and Volkswagen Group Of America, Inc. (collectively "VW").  Kruse seeks to amend its Ninth Amended Infringement Contentions in four ways: (1) dropping the Model Year ("MY") 2004-2005 2.0L TDI and the MY 2009-2011 3.0L TDI as Accused Instrumentalities; (2) adding a newly accused engine, the "pre-production" 2.0L TDI engine; (3) modifying its infringement contentions against MY 2009-2012 2.0L TDI previously presented in Exhibit A by changing its previously identified "second fraction"; and (4) introducing brand new infringement theories for the MY 2009-2012 2.0L TDI now presented in Exhibits B-F of Kruse's Tenth Amended Infringement Contentions.

VW consents to the dropping of the MY 2004-2005 2.0L TDI and MY 2009-2011 3.0L TDI, but opposes the motion in all other respects.[1]

In its Proposed Tenth Amended Infringement Contentions, Kruse includes the "pre-production" (i.e., the pre-commercialized prototype) 2.0L TDI engine as an accused engine for the very first time.  See Jankowski Decl., Ex. 1 at p.1.  In its Ninth Amended Infringement Contentions (which was entered in

---

[1] Kruse's decision to drop its infringement contentions against the 3.0L TDI engine undermines Kruse's damages theory.  Kruse has previously told this Court that the practice of Kruse's patented combustion method is necessary for any VW diesel-powered vehicle to be saleable in the United States, in view of the United States Environmental Protection Agency's ("EPA") NOx emissions standards.  See Dkt. No. 356 at p. 3.  By dropping the MY 2009 2011 3.0L TDI as an accused instrumentality, Kruse has now fatally undercut that premise.  That is, the MY 2009-2011 3.0L TDI engines, which are used in the VW Touareg and Audi Q7, comply with the EPA's NOx emissions standards, and Kruse has conceded that they do not infringe the asserted patents.

1

**DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

part by the Court on June 17, 2011), Kruse accused the commercialized MY 2004-05 and 2009-2011 2.0L TDI of infringing the asserted Kruse patents.  See Jankowski Decl., Ex. 9 at pp. 1-2.  The "pre-production" 2.0L TDI engine is mentioned nowhere in Kruse's Ninth Amended Infringement Contentions.  More importantly, nowhere in its present motion does Kruse even acknowledge that it is seeking to introduce a newly accused engine at this very late date.

The asserted claims of Kruse's '562 and '904 patents require, inter alia: (1) the injection of a "*first*" fuel fraction, the combustion of which is a substantially constant volume process; and (2) the injection of a "*second*" fuel fraction, the combustion of which "results in average cylinder temperature that remains substantially constant from the beginning until the end of that combustion."   In Exhibit A of Kruse's Ninth Amended Infringement Contentions, the depicted fuel cycle for the MY 2009 2.0L TDI has four (4) separate fuel injections, with the last two injections expressly identified as being the recited "*second*" fuel fraction.  See Jankowski Decl. Ex. 9 at Exhibit A, pp. 34-40 (label "[C]").   In Exhibit A of Kruse's Proposed Tenth Amended Infringement Contentions, Kruse now proposes to correlate just the last of the four (4) separate fuel injections with the recited "*second*" fuel fraction.  See Jankowski Decl. Ex. 1 at Exhibit A, pp. 23-32 (label "[C]").   Kruse has not changed, at all, the portion of the temperature versus crank angle curve that is said to "remain substantially constant."

Because the Court's Markman ruling on the claim term "second" was the same as that proposed by Kruse, there is no "good cause" for Kruse's amendment presented in Exhibit A.   See Patent L.R. 3-6(a).   Interestingly, Kruse's Rule 30(b)(6) deponent, the inventor Douglas Kruse, testified that Kruse's prior contention with the recited "second" fuel fraction correlating with the combination of VW's main injection and post-injection is still "an infringing mode of operation" under this Court's recent Markman ruling.  See Farco Decl.,

Ex. A (11/03/2011 Kruse Dep. Tr. 469-470).   In other words, according to Mr. Kruse, the new contentions presented in Exhibit A of Kruse's Proposed Tenth Amended Infringement Contentions are not necessary as a result of the Court's Markman ruling.

The new testing depicted in Exhibits B-F of Kruse's proposed Tenth Amended Infringement Contentions (see Jankowski Decl., Ex. 1) is based on a new infringement theory which Kruse has not explained.  As described above, in Exhibit A of Kruse's Ninth Amended Infringement Contentions, the depicted fuel cycles for the MY 2009 2.0L TDI all have four (4) separate fuel injections.  On the other hand, in Exhibits B-F of Kruse's Proposed Tenth Amended Infringement Contentions, the depicted fuel cycles all have three (3) separate fuel injections, except for one fuel cycle which has five (5) separate fuel injections.  Despite the requirement of Patent Local Rule 3-1(c), Kruse has failed to identify which of these injections correlate with the recited "second" fuel fraction.

VW opposes Kruse's motion because Kruse cannot make the showing of "diligence" and "good cause" required by Patent Local Rule ("PLR") 3-6 and because permitting Kruse to file its Proposed Tenth Amended Infringement Contentions as fact discovery is closing would cause severe prejudice to VW.

## II.   ARGUMENT

### A.   Legal Standard

The Patent Local Rules of the Northern District of California, which the Court has adopted for this case, were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).  In particular, Patent Local Rule 3-6 provides that "[a]mendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely

3

**DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

showing of good cause."  PLR 3-6.  "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction."  <u>LG Elecs. Inc. v. Q-Lity Computer Inc.</u>, 211 F.R.D. 360, 367 (N.D. Cal. 2002).

The Northern District revised the Patent Local Rules in 2009 to further the oft-repeated goal of preventing litigants from dealing with a "moving target" in patent litigation.  <u>See</u> <u>Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.</u>, No. C05-04158 MHP, 2008 WL 624771, at *2 (N.D. Cal. Mar. 4, 2008) (citing <u>Integrated Circuit Sys., Inc. v. Realtek</u>, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)).  The Patent Local Rules Advisory Subcommittee explained in 2008 that the prior rule allowing an automatic opportunity to amend contentions following claim construction was "viewed by many as not tying litigants sufficiently to their positions" and thus the new rules included "the elimination of the concept of 'preliminary' contentions in favor of a single round of contentions which can be modified only for good cause." Patent Local Rules Advisory Subcommittee Report, United States District Court Northern District of California, at 2 (Jan. 2008) .

In <u>Atmel Corp. v. Info Storage Devices, Inc.</u>, No. C95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998) , the District Court held that "[t]he patent local rules were adopted by this district in order to give claim charts more 'bite.'"  The court noted that the rules' purpose is advanced by "making it difficult subsequently to revise claim charts through eleventh-hour 'discovery' of facts." <u>Id.</u>

**B.      There Is No Good Cause For Permitting Kruse To File Its Tenth Amended Infringement Contentions**

  **1.      There Is No Good Cause For Adding A Newly Accused Engine At This Late Date**

About six months ago, Kruse previously moved to amend its infringement contentions to add VW's 1.9L TDI diesel engine as a newly accused engine. See Dkt. No. 228 at pp. 1, 7-9.  This Court denied Kruse's motion to belatedly introduce the 1.9L TDI diesel engine into this case.

> Given that opening claims construction briefs are due in a month and a half, adding new accused engines at this date would likely prejudice … Volkswagen owing to additional discovery obligations as well as developing responsive non-infringement and invalidity contentions.

Dkt. No. 265 at p. 7 [June 17, 2011 Order of Judge Selna].  Now, just days from the close of fact discovery, Kruse seeks to sneak in another, newly accused engine into this case - - the "pre-production" 2.0L TDI engine.

In its Proposed Tenth Amended Infringement Contentions, Kruse asserts that VW "performs the methods recited in each of the asserted claims of Kruse's patents through operation of ***pre-production*** and production Model Year 2009-2012 2.0L TDI diesel engines (the "Accused Engines")."  Jankowski Decl., Ex. 1 at p. 1 (emphasis added).  That is, Kruse is now defining the Accused Engines to include, for the first time, "pre-production" 2.0L TDI diesel engines.  The term "pre-production" refers to a prototype, non-commercialized engine.  The term "pre-production" appears nowhere at all in Kruse's previous Ninth Amended Infringement Contentions.  See Jankowski Decl., Ex. 9.

More specifically, in its Ninth Amended Infringement Contentions, Kruse provided the following chart that identifies the Accused Engines by EPA Engine Family:

| EPA Engine Family | Model Year |
|---|---|
| _VWXV02.035N | 2009 |
| _VWXV02.0U5N | 2009–2011 |
| _VWXV02.0234 | 2004–2005 |
| _ADXT03.03LD | 2009–2010 |
| _ADXT03.02UG | 2011 |
| _ADXT03.03UG | 2011 |
| _VWXV01.9233 | 2004–2005 |
| _VWXV01.9236 | 2004–2006 |
| _VWXV01.9238 | 2006 |

Jankowski Decl., Ex. 9 at p. 2.  The 2.0L TDI engines identified in the above chart as being "Accused Engines" are all commercialized, production engines. Prior to the Proposed Tenth Amended Infringement Contentions, Kruse had not accused the operation of the "pre-production" version of any engine as an infringement.

Despite the fact that Kruse's most recent Proposed Tenth Amended Infringement Contentions identifies the "pre-production" 2.0L TDI engine as a newly accused engine, Kruse expressly told this Court that "Kruse's amended contentions do not include any new engines."  Dkt. No. 383 at p. 2.  Consistent with Kruse's representation in its motion, this Court should not permit the "pre-production" 2.0L TDI engine as a newly accused engine in Kruse's Proposed Tenth Amended Infringement Contentions.

**2.**      **There Is No Good Cause For The New Infringement Theory Presented In Exhibit A of Kruse's Proposed Tenth Amended Infringement Contentions**

The asserted claims of Kruse's '562 and '904 patents require, <u>inter alia</u>: (1) the injection of a "***first***" fuel fraction, the combustion of which is a

substantially constant volume process; and (2) the injection of a "*second*" fuel fraction, the combustion of which "results in average cylinder temperature that remains substantially constant from the beginning until the end of that combustion"   Reproduced below is the dynamometer test results for the MY 2009 2.0L TDI (at 2000 RPM & 50% load), as presented in Kruse's previous Ninth Amended Infringement Contentions.



Exhibit A-1a

2.0L TDI - 2000 RPM 50% Load

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY INFORMATION                    Page 34                    Exhibit A

Jankowski Decl., Ex. 9 at Exhibit A, page 34.  The top-most figure depicts that there will be four (4) separate fuel injections per cycle: a first pilot injection commencing at about -20° crank angle (labeled "[A]"); a second pilot injection commencing at about -10° crank angle; a main injection commencing at about 0° crank angle; and a post-injection commencing at about 20° crank angle.

Prior to this Court's Markman Order, Kruse correlated the first pilot injection (labeled "[A]") with the recited "first" fuel fraction and correlated the combination of the main injection and post-injection (collectively labeled "[C]") with the recited "*second*" fuel fraction.  See Jankowski Decl. Ex. 9 at Exhibit A, pages 2-6.  Kruse also expressly stated the average cylinder temperature remains substantially constant from about 18° crank angle to about 38° crank angle, as depicted in the second figure from the top.  See Jankowski Decl., Ex. 9 at Exhibit A at pages 8-9.

During the Markman proceedings, VW argued that the "second" fuel fraction had to immediately follow the first fuel injection (labeled "[A]") and had to precede all other fuel injections, such as those collectively labeled "[C]".  See Farco Decl. Ex. B, 9/26/2011 Hearing Tr. 64-67 ("Markman Hearing").  On the other hand, Kruse argued that the "second" fuel fraction could be any other fuel injection after the first fuel injection.  See id. at Tr. 67-69.  The Court adopted the construction urged by Kruse, not VW.  See Dkt. No. 359 at pp. 7-9. (Claim Construction Order).

"Good cause" necessary for amending infringement contentions includes "a claim construction by the Court different from that proposed by the party seeking amendment."  Patent L.R. 3-6 (a).  Here, Kruse's proposed amendments to its infringement contentions detailed in Exhibit A are predicated on the Court's adoption of the claim construction of "second" that was proposed by Kruse.  Reproduced below is the dynamometer test results for the MY 2009 2.0L TDI (at 2000 RPM & 50 % load), as presented in Kruse's Proposed Tenth Amended Infringement Contentions.

Exhibit A-1a

2.0L TDI - 2000 RPM 50% Load

Page 23                                                    Exhibit A

Now, Kruse is correlating the recited "second" fuel fraction with just the post injection alone (labeled "[C]"), rather than the combination of the preceding main injection and post-injection.  See Jankowski Decl., Ex. 1 at Exhibit A, pages 4-5.

The dynamometer test results depicted in Exhibit A were not re-done by Kruse.[2]  Thus, the measured temperature versus crank angle data depicted in Exhibit A of Kruse's Ninth Amended Infringement Contentions is *identical* to the measured temperature versus crank angle data depicted in Exhibit A of Kruse's Proposed Tenth Amended Infringement Contentions.  Simply put, the duration of the relatively flat portion of the average cylinder profile (second

---

[2] The results of the dynamometer tests recently performed by Kruse in September 2011 are presented in Exhibits B-F of Kruse's Proposed Tenth Amended Infringement Contentions.  See Dkt. No. 383 at pp. 5-7; Jankowski Decl., Ex. 1 at pp. 6-7.

9

1    figure from the top) in the two charts reproduced above is identical.  In order to
2    obfuscate this fact, Kruse has omitted the express identification of the duration
3    of substantially isothermal combustion, in crank angle degrees, found in the
4    Ninth Amended Infringement Contentions (see Jankowski Decl., Ex. 9 at
5    Exhibit A, pages 8-10) from its Proposed Tenth Amended Infringement
6    Contentions (cf. Jankowski Decl., Ex. 1 at Exhibit A, pages 6-7).

7        Kruse's proposed tenth amended infringement contentions introduce a
8    totally new theory of infringement.  In its original contentions and in each of the
9    proposed nine successive amendments, Kruse asserted that in the accused VW
10   2.0L TDI engine it was the combustions of the main and post injections together
11   that comprised the combustion of the "second" fuel fraction which was
12   "substantially isothermal".  For nearly a year, VW has relied upon these Kruse
13   contentions in developing its own invalidity contentions and its noninfringement
14   positions.    More recently, VW has relied upon Kruse's long-standing
15   infringement contentions concerning the accused "second" combustion in
16   preparing for the finalization and service of its expert reports, which must be
17   exchanged beginning on December 15, 2011, in accordance with the Court's
18   Amended Scheduling Order.  At this late date, Kruse wants to change its whole
19   theory of infringement by accusing only the post injection as the "second"
20   substantially isothermal combustion.  If Kruse is permitted to file its Proposed
21   Tenth Amended Infringement Contentions at this late date, fairness will require
22   that VW be permitted to develop revised invalidity contentions and have a
23   substantial additional amount of time to prepare its expert reports.  Otherwise,
24   there will obviously be grave prejudice to VW.

25       Kruse attempts to justify its lengthy delay in developing its Proposed
26   Tenth Amended Infringement Contentions by pointing to the Court's Markman
27   construction of the claim term:

28

1         "wherein the combustion as a result of the

2         introduction of the second fraction is a

3         substantially isothermal process" (Claim 1 of the

4         '562 Patent; Claim 9 of the '904 Patent)

5 Specifically, Kruse asserts that it is justified in changing its theory of

6 infringement, even this late in the litigation, and as fact discovery closes,

7 because it just became aware of the Court's construction of the "substantially

8 isothermal process" claim term as requiring:

9         "the combustion resulting from the second fuel

10        fraction results in average cylinder temperature

11        that remains substantially constant from the

12        beginning until the end of that combustion."

13 However, the Court's construction of the "substantially isothermal" claim term

14 should have been anticipated by Kruse from the inception of this case since it

15 was based on a straightforward application of the binding precedent of the

16 Federal Circuit including Intamin, Ltd. v. Magnetar Techs. Corp., 483 F.3d

17 1328 (Fed. Cir. 2007).  The holding of Intamin and its potential impact on the

18 "substantially isothermal process" claim term was known to counsel for Kruse

19 since the outset of this case since they were also counsel in the Intamin case and

20 advocated a similar claim construction position in that matter as VW did with

21 respect to the "substantially isothermal process" claim term in this case.  The

22 holding in Sunpower Corp. Sys. v. Sunlink Corp., No. C-08-2807 SBA,

23 2009 WL 1657987 (N.D. Cal. June 12, 2009) is applicable:

24        Pat. L.R. 3-6.  In the instant case, Defendant argues that

25        there is good cause to amend its invalidity contentions –

26        more specifically, to add eleven pieces of prior art –

27        based on (1) the claim construction given by the

28

presiding judge and (2) the recent discovery of the prior art.

The Court does not find the first argument persuasive. The risk of the construction rendered by the presiding judge was well known and anticipated by Defendant.

Id. at *1.

### 3. There Is No Good Cause For The New, Unexplained Infringement Theories Of Kruse's Proposed Tenth Amended Infringement Contentions

On September 13-14, 2011, Kruse performed another set of dynamometer tests on the MY 2009 2.0L TDI, while operating the engine in accordance with the EPA's standardized tests (i.e., FTP-72, FTP-75, US06, SC03, and HWFET) that must be satisfied by any diesel engine commercialized in the United States. The obtained dynamometer test results were presented to VW for the first time in Exhibits B-F in Kruse's Proposed Tenth Amended Infringement Contentions. See Dkt. No. 383 at pp. 5-7.  These new dynamometer tests were performed on the same MY 2009 2.0L TDI diesel engine that Kruse has possessed since at least November 2010.  See Dkt. No. 383 at p. 7.

The "good cause" required by Patent Local Rule ("PLR") 3-6 requires a showing of diligence.  The burden is on Kruse to establish diligence, rather than on VW to establish a lack of diligence.  O2 Micro, 467 F.3d at 1366.  Kruse must establish that it "was diligent in discovering the basis for the proposed amendment."   Acer, Inc. v. Technology Props Ltd., Nos. 5:08-cv-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010); see also West v. Jewelry Innovations, Inc., No. C 07-1812 JF(HRL), 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008).  Kruse has failed to do this.

Here, Kruse did not act diligently by waiting until September 13-14, 2011 to conduct the new round of dynamometer testing.  In its present motion, Kruse

contends that "[d]uring discovery of Defendants, Kruse has learned that the accused 2.0L TDI and OM642 engines are operated in the U.S. in accordance with standardized Federal tests used in the industry to establish fuel economy and/or to satisfy Federal compliance guidelines."   Dkt. No. 383 at p. 5. However, Kruse neglects to mention that Kruse learned this fact at least as early as March 24, 2011.   More particularly, in its Proposed Sixth Amended Infringement Contentions, (dated March 24, 2011), Kruse stated:

> VW AG works in conjunction with its subsidiary Volkswagen Group of America ("VWGoA") to operationally test and certify the Accused Engines with the appropriate U.S. government regulatory agencies. VWGoA tests engines for EPA compliance at a facility in Westlake Village, California.  Testing is performed under VW AG's supervision and control, as evidenced by EPA Applications for Certification for the Accused Engines, which list representatives from VW AG.

Farco Decl., Ex. C at p. 2.  This testing performed at VW's Westlake facility is the very same EPA standardized testing reflected in Kruse's new Exhibit B-F. Moreover, as it is widely known that all VW diesel engines sold in the United States must have been shown to comply with the EPA's standard tests, Kruse should have known of such EPA standardized testing since the filing of the Complaint in July 2010.

A delay of more than three (3) months in moving to amend the infringement contentions establishes a lack of diligence, compelling the denial of the motion.  O2 Micro, 467 F.3d at 1367-68; cf. Zilog, Inc. v. Quicklogic Corp., No. C03-03725 JW, 2006 WL 563057, at *1 (N.D. Cal. Mar. 6, 2006) (acknowledging the three-month cut-off for diligence).  Here, at the very least, Kruse delayed about six (6) months, from at least March 24, 2011 to

13

September 13, 2011, to test the MY 2009 2.0L TDI, which Kruse already possessed, when operated under the EPA's standardized tests. Kruse's motion, with respect to Exhibits B-F, should be denied for this separate and alternative reason alone.

Additionally, Patent Local Rule 3-1(c) requires "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality…." While Kruse has provided the required chart for the infringement theory presented in Exhibit A (see Jankowski Decl., Ex. 1 at Exhibit A, pages 1-22), Kruse did not do so for the new infringement theories presented in Exhibits B-F. The new testing depicted in Exhibits B-F necessarily implicates a new infringement theory because the number of fuel injections per cycle are different, and Kruse has not identified the "*second*" fuel fraction.

Reproduced below in the new dynamometer test results for the MY 2009 2.0L TDI while operated in accordance with the FTP-72 (Federal Test Procedure) cycle:



Jankowski Decl., Ex. 1, at Exhibit B, page B-4.  The top-most figure depicts that there will be a pilot injection commencing at about -20° crank angle; a main injection commencing at about 0° crank angle; and a post-injection commencing at about 20° crank angle.  In Exhibits B-F, the depicted fuel cycles all have three such separate fuel injections, except for one fuel cycle which has five separate fuel injections.

Despite the requirement of Patent Local Rule 3-1(c), Kruse has failed to identify which of these injections correlate with the recited "*second*" fuel fraction.  There is no labeling of "[A]" and "[C]" on any of the Exhibit B-F figures indicating the recited "first" and "second" fuel fractions.  The above-reproduced test results was placed before Kruse's Rule 30(b)(6) deponent, the inventor Douglas Kruse, who was asked to identify the VW fuel injections that correlate with the recited "*second*" fuel fraction.  Mr. Kruse could not say whether the recited "*second*" fuel fraction would include VW's main injection.  See Farco Decl., Ex. A (11/03/2011 Kruse Dep. Tr. 459-62).  Moreover, Kruse has not explicitly identified the range of isothermal combustion said by Kruse to occur in the dynamometer test results presented in Exhibits B-F.

Reproduced below is the new dynamometer test results for the MY 2009 2.0L TDI while operated in accordance with the HWFET test.



F-6                                                                              Exhibit F

Jankowski Decl., Ex. 1 at Exhibit F, page F-6.  The top-most figure depicts that there will be five (5) separate fuel injections per fuel cycle.  During the Rule 30(b)(6) deposition, Mr. Kruse could not even attempt to identify the VW fuel injections that are alleged to correlate with the recited "second" fuel fraction.  See Farco Decl., Ex. A (11/03/2011 Kruse Dep. Tr. 459-62).

**C.  Permitting Kruse To File Its Tenth Amended Infringement Contentions Will Cause Specific And Substantial Prejudice To VW And Its Trial Preparation**

Previously in this litigation, Kruse moved to amend its contentions to accuse VW's 1.9L TDI engine, as well as the Mercedes PM647 engine, as infringements of its patents.  The Court denied this Kruse motion to amend on the ground that:

16

DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS

> "Given that opening claims construction briefs are
> due in a month and a half, adding new accused
> engines at this date would likely prejudice Daimler
> and Volkswagen owing to additional discovery
> obligations as well as developing responsive
> non-infringement and invalidity contentions.

Dkt. No. 265 at p. 7.  Significantly, Kruse argued that its proposed amendment of its contentions to accuse the new engines did not undermine PLR 3-6 because that proposed amendment did not alter Kruse's theory of infringement.  See Dkt. No. 228 at 2-3 [Kruse's Memorandum in Support of its Motion to File its Ninth Amended Infringement Contentions].  But here the very purpose of Kruse's motion to amend is to radically alter its theory of infringement to accuse a different step in VW's combustion methods causing surprise and prejudice to VW.

Fact discovery is now nearly over and will, in fact, be completed prior to the hearing on this Kruse motion.  Opening expert reports are due to be served on December 15, 2011, just ten days after the hearing on Kruse's present motion.  Kruse's proposed amendments introduce a totally new theory of infringement which will require VW to develop new contentions of invalidity and non-infringement and necessitate reopening the depositions of Douglas Kruse and other Kruse Technology partners and consultants.  During the recent Rule 30(b)(6) deposition, Mr. Kruse repeatedly could not answer VW's questions and deferred to Michael Leshner, who is Kruse's technical expert who both performed the dynamometer testing and prepared the Infringement Contentions.  See Farco Decl. Ex. A (11/03/2011 Kruse Dep. Tr. 454-462); Dkt. No. 383 at p. 5.

The amendments will also require additional very substantial analysis by VW's experts in advance of the exchange of opening expert reports.   Kruse's

new infringement theory, if permitted, may also require construction of additional claim terms by the Court, such as the phrase "as a result of" in connection with the "substantially isothermal" requirement.   Moreover, permitting Kruse to change its theory of infringement so late in the case will lead to confusion and prejudice to VW as a result of VW's stated positions with respect to Kruse's original contentions of infringement and its previous nine amendments, including, for example, its concession that the "second fuel fraction" in VW's accused products was introduced at the beginning of the expansion stroke.  Kruse has already tried to apply this concession made as a result of Kruse's definition of the "second fraction" as including the main fuel fraction to its new proposed definition of "second fraction" as comprising only the post fuel fraction.

As to the construction of the claim term "second fraction", Kruse prevailed and, therefore, it provides no justification for Kruse now accusing only VW's post combustion as the "second" "substantially isothermal" combustion since Kruse could have done so from the beginning of the case. Kruse's eleventh-hour shift in its infringement theory, if permitted, will cause real prejudice to VW and its trial preparation and should not be condoned.

The potential prejudice to VW as a result of Kruse's 11th-hour shift in its infringement theory is illustrated by Kruse's own proposed claim charts submitted as part of its motion.  With respect to the claim language in the '562 and '904 patents "introducing substantially at the beginning of the expansion stroke, a second fraction of the total fuel required for complete combustion", Kruse asserts in its claim charts that:

> "Defendants have not contended that this claim element is not literally present under the Court's Claim Construction."

See Jankowski Decl. Ex. 1 at Exhibit A, page 5.

Kruse fails to mention that the reason defendants did not assert that the Accused Engines lacked the element of introducing the second fraction substantially at the beginning of the expansion stroke, is that Kruse has contended since the beginning of the case that the "second fraction" is either the main fuel fraction which produces the main combustion or a combination of the main and post first fuel fraction taken together.  VW has relied on Kruse's original contentions of infringement and its nine previous amendments to develop its own positions with respect to invalidity and non-infringement. Allowing Kruse to amend its infringement contentions now, particularly concerning the identification of the "second fraction", would inevitably lead to confusion and prejudice to VW as a result of positions VW has previously taken with respect to Kruse's long-standing contentions of infringement.

The severe prejudice to VW and the substantial delay which will inevitably follow from the amendment Kruse seeks cannot be justified by the Court's construction of the claim term "second" on which Kruse prevailed or on its construction of the claim term "substantially isothermal process" as to which the Court followed the binding Federal Circuit precedent long known to counsel for Kruse.

## III.  **CONCLUSION**

For any of the foregoing reasons, Kruse's motion to amend its infringement contentions so as to file its tenth amended infringement contentions against Volkswagen AG and Volkswagen Group Of America, Inc. should be denied.

LOCKE LORD LLP

Dated:  November 14, 2011    By:  /s/ *Steven F. Meyer*

John F. Sweeney (*Pro Hac Vice*)
Steven F. Meyer (*Pro Hac Vice*)
Attorneys for Defendants VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AG

19

## PROOF OF SERVICE

I am employed by Locke Lord LLP, in New York, New York.  I am over the age of 18 and not a party to the action.  My business address is 3 World Financial Center, New York, NY 10281-2101.

On November 14, 2011, I served the document entitled:

**DEFENDANTS VOLKSWAGEN AG AND VOLKSWAGEN GROUP OF AMERICA, INC.'S OPPOSITION TO KRUSE TECHNOLOGY PARTNERSHIP'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

by sending the document to the following counsel for Plaintiffs at the e-mail address indicated below:

> John B. Sganga, Jr.
> Karen Vogel Weil
> John W. Gurka
> David G. Jankowski
> Marko R. Zoretic
> KNOBBE, MARTENS, OLSON & BEAR, LLP
> 2040 Main Street, Fourteenth Street
> Irvine, CA 92614
> Telephone: (949) 760-0404
> Facsimile (949) 760-9502
>
> jsganga@kmob.com
> kweil@kmob.com
> jgurka@kmob.com
> djankowski@kmob.com
> mzoretic@kmob.com

Executed on November 14, 2011, in New York, New York.

> By: _/s/ Joseph Farco_____
> Joseph Farco
> Attorney for Defendants
> Volkswagen AG and
> Volkswagen Group of America, Inc.